UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Stephen M. Packman, Esquire
Douglas G. Leney, Esquire
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (215) 963-3300
Facsimile: (215) 963-9999
Email: spackman@archerlaw.com
       dleney@archerlaw.com
*Proposed Attorneys for Debtors*

| | |
|---|---|
| In re:<br><br>PLASTIC SUPPLIERS, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 24-22549<br>(Joint Administration Requested)<br><br>**Hearing Date: TBD – Shortened Notice Requested** |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING
OR DISCONTINUING SERVICE TO DEBTOR, (II) DEEMING
UTILITY COMPANIES ADEQUATELY ASSURED OF FUTURE PAYMENT,
(III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR
ADDITIONAL ADEQUATE ASSURANCE, AND (IV) RELATED RELIEF**

Plastic Suppliers, Inc., the above-captioned debtor and debtor in possession ("PSI" or the "Debtor"), hereby files this motion (the "Motion") for entry of an interim order (the "Interim Order") and final order (the "Final Order" and together with the Interim Order, the "Orders"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Plastic Suppliers, Inc. (9518); Sidaplax, Inc. (4275); and Specialty Films, Inc. (4273). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2400-2450 Marilyn Pk. Ln., Columbus, OH 43219.

pursuant to 11 U.S.C. § 366, (i) prohibiting utility companies from altering, refusing or discontinuing service to the Debtor, (ii) deeming utility companies adequately assured of future payment, (iii) establishing procedures for determining requests for additional adequate assurance, and (iv) for related relief. In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELEVANT FACTUAL BACKGROUND[2]

4. On December 22, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Court") (the "Bankruptcy Case").

5. No request has been made for the appointment of a trustee or examiner. As of the filing of this Motion, no official committee of unsecured creditors or statutory committee has been appointed in this Bankruptcy Case.

---

[2] The background facts regarding the Debtor's pre-petition business, events precipitating the filing of the Bankruptcy Case, and details surrounding the proposed sale of substantially all of the Debtor's assets are more fully set forth in the accompanying First Day Declaration of Michael DuFrayne (the "First Day Declaration"), which is incorporated herein by reference. Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the First Day Declaration.

2

6. As detailed in the First Day Declaration, the Debtor is a leading global manufacturer of innovative, environmentally friendly thin-gauged, bio-based material using distinctive biopolymers such as Polylactic Acid ("PLA") and Polyhydroxyalkanoates ("PHA"). It also produces petrochemical-based films. It develops highly engineered application-specific solutions for a wide range of companies in the "Consumer Packaged Goods" and industrial markets. The Debtor provides its sustainable film solutions to customers in the Americas, EMEA region, and Asia. The Debtor's primary markets include food and beverage packaging, architecture products, medical equipment, personal care, office, industrial and laminated films for SME digital printers. The Debtor's products are compostable and recyclable and are utilized for, among other things, single-purpose bags, mailers, shrink sleeves, window packaging, envelopes, flow wraps, filters, transparent sealants, barrier sealants, print webs, adhesive labels, thermoforming films and laminates.

7. Recently, the Debtor has faced financial difficulties as a direct result of a combination of (i) US and EU sanctions, (ii) the impact of COVID-19 on sales, and (iii) market headwinds encountered by the strategic shift from fossil fuel-based films to bio-based films.

8. While these setbacks have had a devastating impact on the Debtor's liquidity, the Debtor continues to work with its customers to develop bio-resin compostable flexible packaging and industrial solutions. The Debtor's consolidated opportunity pipeline has an estimated $95 million value. The Debtor believes that a going concern sale of its business will maximize value for creditors and provide the opportunity for its projects to be realized and carry on with its sustainability mission.

9. In the ordinary course of its business operations, the Debtor uses certain utility services, including electricity (the "Utility Services") from the following utility companies (the "Utility Companies"):

| Provider | Account Number | Service | Average Monthly Bill | Current Balance | Proposed Deposit | Location of Services |
|---|---|---|---|---|---|---|
| American Electric Power | 106-272-320-1-9 | Electricity | $25,000 | $22,666.64 | | 2400 Marilyn Lane, Columbus, OH 43219-1721 |
| American Electric Power | 100-799-053-0-2 | Electricity | $16,000 | $15,836.17 | | 2450 Marilyn Lane, Columbus, OH 43219-1721 |
| Constellation New Energy | 7553469-0 | Electricity | $36,000 | $29,651.33 | | 2400 Marilyn Lane, Columbus, OH 43219-1721 |
| Constellation New Energy | 7553469-1 | Electricity | $26,000 | $23,535.58 | | 2450 Marilyn Lane, Columbus, OH 43219-1721 |
| Columbus City | 238501-1142338 | Water/Sewer | $3,200 | $0 | | 2450 Marilyn Lane, Columbus, OH 43219-1721 |
| Columbus City | 238501-1260928 | Water/Sewer | $1,500 | $0 | | 2400 Marilyn Lane, Columbus, OH 43219-1721 |
| Columbia Gas | '00013540 | Gas | $500 | $600 | | 2400 Marilyn Lane, Columbus, OH 43219-1721 |
| Columbia Gas | '00013540 | Gas | $300 | $300 | | 2450 Marilyn Lane, Columbus, OH 43219-1721 |
| Local Waste Services | '01-0202110 | Trash | $5,000 | $4,500 | | 2400-2450 Marilyn Lane, Columbus, OH 43219-1721 |

10. As set forth above, the Debtor estimates its average monthly obligations to the Utility Companies on account of services rendered totals approximately $113,500.

11. The Debtor estimates that the total amount due to the Utility Companies as of the Petition Date is approximately $97,089.72.

12. The services provided by the Utility Companies are critical to the ongoing operations of the Debtor as it pursues a sale of substantially all of its assets in this Bankruptcy Case. If the Utility Companies are permitted to terminate services, even for a brief period of time, the Debtor could be forced to cease operations. That would irreparably harm the Debtor's business and its value as a going concern to the detriment of creditors and other parties in interest. Accordingly, it is imperative that the Utility Services continue uninterrupted during the period between the Petition Date and the sale closing.

229801175 v3

**RELIEF REQUESTED**

13.     By this Motion, the Debtor seeks the entry of the Interim Order and the Final Order (i) prohibiting the Utility Companies from altering, refusing or discontinuing the Utility Services to the Debtor, (ii) deeming the Utility Companies adequately assured of future payment, and (iii) establishing procedures for determining requests for additional adequate assurance.

**A.     The Proposed Adequate Assurance**

14.     The Debtor intends to continue operating its business post-petition in a manner consistent with its pre-petition practices. The Debtor intends to pay post-petition obligations to the Utility Companies in a timely manner and the Debtor anticipates that, upon approval of its first day motion seeking authority to, among other things, obtain post-petition debtor-in-possession financing from the DIP Lender (as defined therein) and the use of cash collateral on the terms and conditions more fully set forth therein (the "DIP Financing Motion"), it will have sufficient cash flow to pay such obligations in the ordinary course of business.

15.     Out of an abundance of caution, to ensure that the Utility Companies are adequately assured of payment pursuant to section 366 of the Bankruptcy Code, the Debtor proposes to deposit and reserve, as adequate assurance, approximately 50% of the estimated cost of monthly Utility Services for each Utility Company (the "Adequate Assurance Deposits"), in the Debtor's existing bank account. The aggregate amount of the proposed Adequate Assurance Deposit is $56,750. The Debtor proposes that the Adequate Assurance Deposit be made within twenty (20) days after the entry of the Interim Order. Upon the Debtor's deposit of the Adequate Assurance Deposit, the Utility Companies will be deemed adequately assured of the Debtor's future performance under section 366 of the Bankruptcy Code.

229801175 v3

16. The Debtor further requests that the obligation to maintain the Adequate Assurance Deposit shall terminate upon the earliest of (i) the Debtor's termination of services from the Utility Company, (ii) confirmation of a chapter 11 plan, (iii) conversion of this chapter 11 Bankruptcy Case to a case under chapter 7, or (iv) further order of the Court.

**B.    The Debtor's Proposed Adequate Assurance Procedures**

17. The Debtor seeks to establish reasonable procedures (the "Adequate Assurance Procedures") by which a Utility Company may request additional adequate assurance of future payment, in the event that such Utility Company believes that its Adequate Assurance Deposit does not provide it with satisfactory adequate assurance. The Debtor submits that the Adequate Assurance Deposit, in conjunction with the Debtor's ability to pay for future utility services in the ordinary course of business upon approval of the DIP Financing Motion, constitutes adequate assurance of payment for each of the Utility Companies. Further, the Debtor proposes the following procedures:

   a. In the event that a Utility Company is omitted from the list of Utilities Companies filed with the Motion, the Debtor shall have the right to amend the list, and revise the Adequate Assurance Deposit amount accordingly to reflect 50% of one month's average of Utility Services for the subsequently identified Utility Company (the "Subsequently Identified Utility Provider"). The Debtor shall promptly serve a copy of the Interim Order or Final Order, as applicable, upon such Subsequently Identified Utility Provider.

   b. If a Utility Company and/or a Subsequently Identified Utility Provider are not satisfied with the assurance of future payment provided by the Debtor or are seeking additional assurances of payment in the form of deposits, prepayments or otherwise, the Utility Company must serve a written request (the "Additional Assurance Request") no later than fourteen (14) days after the date such Utility Company or Subsequently Identified Utility Provider receives notice (the "Additional Assurance Request Deadline") so that it is actually received by the following parties: (i) proposed counsel to the Debtor, Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ, 08043, *Attn:* Stephen M. Packman (spackman@archerlaw.com); (ii) counsel to the DIP Lender, Blank Rome LLP, 130 N 18th St., Philadelphia,

229801175 v3

        PA, 19103, *Attn:* Regina Kelbon (regina.kelbon@blankrome.com); and (iii) the Office of the United States Trustee.

c. Any Additional Assurance Request must be made (i) in writing, (ii) set forth the location for which Utility Services are provided, (iii) include a summary of the Debtor's payment history relevant to the effected account(s), including the amount of any security deposits, (iv) explain why the requesting Utility Company or Subsequently Identified Utility Provider believes the Proposed Adequate Assurance Deposit is not sufficient adequate assurance of future payment; and (v) include a proposal for what would constitute adequate assurance from the Debtor, along with an explanation of why such proposal is reasonable.

d. In consultation with the DIP Lender, the Debtor shall be able to resolve any timely Additional Assurance Request by mutual agreement with the requesting Utility Company or Subsequently Identified Utility Provider without further order of the Court and may, in connection with any such agreement, in the Debtor's discretion, provide additional or different assurance of future payment, which may include, but shall not be limited to, cash deposits, payments of any outstanding prepetition balance due to the Utility Company or Subsequently Identified Utility Provider, prepayments or other forms of security in each case, without further order of the court, if Debtor believes such additional assurance is reasonable.

e. If the Debtor determines an Additional Assurance Request is not reasonable and the parties are not able to resolve such request consensually, the Debtor will schedule a hearing pursuant to section 366(c) of the Bankruptcy Code seeking a determination by the Court.

f. Pending the resolution of any Additional Assurance Request dispute by the Court, the relevant Utility Company or Subsequently Identified Utility Provider shall be prohibited from discontinuing, altering, or refusing service to the Debtor on account of unpaid charges for prepetition services or an alleged lack of adequate assurance payment.

g. If a Utility Company or Subsequently Identified Utility Provider fails to serve an Additional Assurance Request as set forth above, and in advance of the Additional Assurance Request Deadline it shall be: (i) deemed to have received adequate assurance payment "satisfactory" to such Utility Company or Subsequently Identified Utility Provider in compliance with section 366 of the Bankruptcy Code; (ii) prohibited from discontinuing, altering, or refusing service to, or discriminating against, the Debtor on account of any unpaid prepetition charges, or require additional assurance of payment; and (iii) waived its right to make an Additional Assurance Request.

**C.    Subsequent Modifications to List of Utility Companies**

18.    The Debtor has made a good-faith effort to identify the Utility Companies listed above. To the extent that any Subsequently Identified Utility Provider contacts the Debtor, the Debtor requests that it be authorized to amend the list and to revise the Adequate Assurance Deposit to include such Subsequently Identified Utility Provider. The Debtor also seeks authority, in its discretion, to amend the list of Utility Companies to add or remove any Utility Company and revise the Adequate Assurance Deposit accordingly. The Debtor further requests that the Interim Order or Final Order, as applicable, be deemed to apply to any Subsequently Identified Utility Provider, regardless of when added to the list. If the Debtor supplements the list of Utility Companies subsequent to the entry of the Interim Order or Final Order, the Debtor will serve a copy of this Motion and such order upon such Utility Company and will promptly supplement the Adequate Assurance Deposit.

## BASIS FOR RELIEF REQUESTED

19.    Section 366 of the Bankruptcy Code provides in pertinent part:

> (a)    Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b)    Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
>
> * * *
>
> (c)(2)    Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may

229801175 v3

>     alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

11 U.S.C. § 366.

20. Section 366(c)(2) of the Bankruptcy Code provides that a utility company may alter, refuse, or discontinue service, if within thirty (30) days after a chapter 11 filing, such utility company has not received adequate "assurance of payment" that is satisfactory to the utility. *See* 11 U.S.C. § 366(c)(2). Specifically enumerated among the possible forms for providing "assurance of payment" is the option to provide a "cash deposit." See, 11 U.S.C. § 366(c)(1)(A)(i). While multiple forms for assurance of payment are enumerated in the Bankruptcy Code, bankruptcy courts have the authority to determine what constitutes adequate assurance for payment of post-petition utility charges in a particular case. See, 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment."); see also, e.g., In re Marion Steel Co., 35 B.R. 188, 195 (Bankr. D. Ohio 1983) (determinations of adequate assurance under § 366 are fully within the bankruptcy court's discretion); In re Great Atlantic & Pacific Tea Co., Inc., 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) ("As an initial matter, bankruptcy courts have historically been afforded reasonable discretion in determining what constitutes adequate assurance of payment for continuing utility services.").

21. Courts have long recognized that adequate assurance of performance does not require an absolute guarantee of a debtor's ability to pay and is not synonymous with "adequate payment." See, e.g., In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company

9

the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services."); In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance ... all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment ..."). Moreover, courts have also recognized that, in determining the amount of adequate assurance, the focus should be "upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Va. Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646, 650 (2d Cir. 1997) (quoting In re Penn Jersey Corp., 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)).

22. Here, the Debtor has satisfied the requirements of 11 U.S.C. § 366(c)(1) by providing the Adequate Assurance Deposit. Importantly, the rights of the Utility Companies will ***not*** be prejudiced should the relief requested herein be granted because the Utility Companies' right to seek additional relief is not eliminated. Rather, the Utility Companies are provided with an opportunity to come before the Court and request additional assurance under the Adequate Assurance Procedures proposed above. In contrast, the Debtor's ability to continuing operating would be severely prejudiced if the relief requested herein is not granted, as it would open the possibility that a Utility Company could terminate service that is critical to the Debtor's operations, thereby undermining the Debtor's efforts to preserve the going concern value of its business for the benefit of all parties in interest.

23. Courts routinely grant relief similar to the relief requested in this Motion in other cases. See, e.g., In re L'Occitane, Inc., Case No. 21-10632 (MBK) (Bankr. D.N.J. February 25, 2021); In re SLT Holdco, Inc. et al., Case No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020); In re The Bon-Ton Stores, Inc., Case No. 18-10248 (MFW) (Bankr. D. Del. Mar. 12, 2018); In re

10

Rue21, Inc., Case No. 17-22045 (GLT) (Bankr. W.D. Pa. June 12, 2017); In re PTC Seamless Tube Corp., Case No. 15-21445 (TPA) (Bankr. W.D. Pa. May 29, 2015).

24.     Based on the foregoing, the Debtor submits that granting the relief requested herein is both necessary and appropriate and should be approved.

**RESERVATION OF RIGHTS**

25.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party-in-interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's right to dispute such claim subsequently.

**IMMEDIATE RELIEF REQUESTED**

26.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to use property of the estate if such relief is necessary to avoid immediate and irreparable harm.  For the reasons already set forth herein, the Debtor submits that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, its estate and its creditors.  Most particularly, the uninterrupted access to and use of the Debtor's various utilities are vital for the Debtor's continued operations as it transitions into this Bankruptcy Case and proceeds towards the contemplated sale of its Assets.

**WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

27.     The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale,

11

229801175 v3

or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Accordingly, because any such stay would significantly disrupt Debtor's business, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable. Further, the Debtor respectfully requests a finding that the notice requirements under Bankruptcy Rule 6004(a) are met.

## NO PRIOR REQUEST

28. No prior motion for the relief requested herein has been made to this or any other court.

## NOTICE

29. The Debtor has provided Notice of this Motion to: (i) the Office of the United States Trustee for the District of New Jersey; (ii) counsel for the DIP Lender; (iii) counsel for the Stalking Horse Purchaser; (iv) the Debtor's top twenty (20) unsecured creditors; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the District of Jersey; (vii) the financial institutions at which the Debtor maintains its bank accounts; (viii) the Utility Companies; and (ix) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-5. The Debtor submits that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice be provided.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (a) enter the Interim Order in the form attached hereto as Exhibit A: (i) prohibiting the Utility Companies from altering, refusing or discontinuing service to the Debtor; (ii) deeming the Utility Companies adequately assured of future payment; and (iii) establishing procedures for determining requests for additional

12

adequate assurance; (b) schedule a hearing to consider approval of the relief requested in this Motion on a final basis and entry of the Final Order; and (c) granting the Debtor such other and further relief as the Court deems appropriate.

Dated:  December 22, 2024                                              **ARCHER & GREINER, P.C.**

*/s/ Stephen M. Packman*
Stephen M. Packman
Douglas G. Leney
1025 Laurel Oak Road
Voorhees, NJ  08043
(215) 963-3300
(215) 963-9999 (fax)
spackman@archerlaw.com
dleney@archerlaw.com

*Proposed Counsel to the Debtor*

229801175 v3