UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esquire
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
Email: jeffrey.m.sponder@usdoj.gov

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| Plastic Suppliers, Inc., *et al.*,[1] | : | Case No. 24-22549 (ABA) |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | Hearing Date: January 10, 2025 at 10:00 a.m. |
| | : | |

**UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS' MOTION FOR
ENTRY OF ORDERS (I) (A) ESTABLISHING BID PROCEDURES RELATING TO
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B)
APPROVING BID PROTECTIONS FOR THE STALKING HORSE PURCHASER,
INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (C)
ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (D) SCHEDULING A HEARING TO CONSIDER THE PROPOSED
SALE AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND
(II) (A) APPROVING THE PROPOSED SALE; (B) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES;
AND (C) GRANTING RELATED RELIEF**

     Andrew R. Vara, the United States Trustee for Regions Three and Nine (the "U.S.

Trustee"), through his undersigned counsel, files this objection (the "Objection") to the *Debtors'*

*Motion for an Order (i) Approving the Proposed Bidding Procedures by Which the Debtor Shall*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Plastic Suppliers, Inc. (9518); Sidaplax, Inc. (4275); and Specialty Films, Inc. (4273).

*Solicit and Select the Highest or Otherwise Best Offer for the Assets; (ii) Approving the Bid*

*Protections, Including the Break-Up Fee and Expense Reimbursement, for the Stalking Horse*

*Purchaser; (iii) Approving Certain Notice Procedures With Respect to the Sale; (iv) Establishing*

*Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases,*

*Including Notice of Proposed Cure Amounts; (v) Scheduling Sale Hearing to Approve a Sale of*

*the Assets and Assumption and Assignment of Executory Contracts and Unexpired Leases and*

*Approving the Form and Manner of Notice Thereof; and (vi) Granting Bidding Procedures Relief*

(the "Bidding Procedures Motion") (Dkt. 21), and respectfully states:

## I.    JURISDICTION, VENUE AND STANDING

1.    This Court has jurisdiction to hear and determine this Objection.

2.    Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District

Court for the District of New Jersey issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. §

157(b)(2), this Court has jurisdiction to hear and determine the Debtor's request for approval of

the relief requested in the Motion and the matters raised in this Objection.

3.    The U.S. Trustee is charged with overseeing the administration of chapter 11 cases

filed in this judicial district, pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's

overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted

by the courts to guard against abuse and over-reaching to assure fairness in the process and

adherence to the provisions of the Bankruptcy Code. *See In re United Artists Theatre Co.*, 315

F.3d 217, 225 (3d Cir. 2003) ("U.S. Trustees are officers of the Department of Justice who protect

the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy

proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),*

33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the U.S. Trustee duties

to protect the public interest . . . that the Trustee has standing to attempt to prevent circumvention

of that responsibility."); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498,

499 (6th Cir. 1990) ("As Congress has stated, the U.S. trustees are responsible for protecting the

public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

4.    Under Section 307 of title 11 of the United States Code (the "Bankruptcy Code" or

"Code"), the U.S. Trustee has standing to be heard on the Debtors' request for approval of the

relief in the Motion.

## II.    FACTUAL BACKGROUND

### General Case Background

5.    On December 22, 2024 (the "Petition Date"), Plastic Suppliers, Inc. ("PSI"),

Specialty Films, Inc. ("SFI"), and Sidaplax, Inc. ("Sidalax" and together with PSI and SFI, the

"Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code,

11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). *See,* for example, Case No. 24-22549, at Dkt.

1.

6.    The Debtors continue to operate their business(es) as debtors in possession pursuant

to 11 U.S.C. §§ 1107 and 1108.

7.    According to the docket, "[t]he Debtor is a leading global manufacturer of

innovative, environmentally friendly thin-gauged, bio-based material using distinctive

biopolymers such as Polylactic Acid ("PLA") and polyhydroxyalkanoates ("PHA"). It also

produces petrochemical-based films. It develops highly engineered application-specific solutions

for a wide range of companies in the "Consumer Packaged Goods" and industrial markets. The

Debtor provides its sustainable film solutions to customers in the Americas, EMEA region, and

Asia. The Debtor's primary markets include food and beverage packaging, architecture products,

medical equipment, personal care, office, industrial and laminated films for SME digital printers. The Debtor's products are compostable and recyclable and are utilized for, among other things, single-purpose bags, mailers, shrink sleeves, window packaging, envelopes, flow wraps, filters, transparent sealants, barrier sealants, print webs, adhesive labels, thermoforming films and laminates." *See* Dkt. 21-1 at pages 3 and 4 of 26.

8.    PSI was incorporated in the State of New Jersey and its offices and manufacturing facilities are located at 2400-2450 Marilyn Lane, Columbus, Ohio, 43219. *See* Dkt. 13 at page 3 of 16. PSI has, from time to time, traded under the following names: "Plastic Supplier, Inc.", "PSI," "Earthfirst Films," "Earthfirst Films by PSI," "Earthfirst Biopolymer Films by PSI," and "Earthfirst Compostable Solutions." *See id.* PSI currently has approximately 56 full-time employees and two (2) parttime employees. Of these, 28 employees are salaried, and 30 are hourly. *See id.*

**The Bidding Procedures Motion and Requested Bid Protections**

9.    On October 24, 2024, the Debtors filed the Bidding Procedures Motion. *See* Dkt. 21.

10.    Through the Bidding Procedures Motion, the Debtors seek to sell substantially all of their assets to API Industries, Inc. d/b/a Aluf Plastics ("API") for consideration that would include cash of not less $13,000,000.00, as well as the assumption of certain liabilities. *See* Dkt. 21-1 at page 4 of 26.

11.    Other terms require that bids for the Debtors' assets would be required by January 20, 2025, and an auction would be scheduled for January 27, 2025. *See id.* at page 7 of 26. The proposed Sale Notice and Bidding Procedures Order provides that the Order will be served within two business days of its entry by the Court. *See id.* As a result, if the Bidding Procedures Order

is entered on January 10, 2025, it does not have to be served until January 14, 2025, a mere six (6) days prior to the bid deadline.  In addition, the Debtors propose a Sale Objection Deadline of 12:00 p.m. on January 28, 2025, which is hours after the auction is conducted.  As such, it does not appear that there is sufficient time for creditors to object to the sale especially where someone outbids the Stalking Horse Purchaser.

12.    The Debtors also seek approval of the Bid Protections, without any further order of the Court, that would award a 3% break-up fee and an expense reimbursement not to exceed $200,000.  *See id.* at page 11 of 26.  As support for the Bid Protections, the Debtors provide that the amounts are "reasonable in relation to the substantial investment of time and money Stalking Horse Purchaser made **prepetition** and Stalking Horse Purchaser's lost opportunities resulting from the time and money spent pursuing such transaction."  *See id.* at page 12 of 26 (emphasis added).

**The Debtors' Privacy Policy**

13.    The Debtors' Privacy Policy contains contradictory statements concerning the sale of personally identifiable information ("PII").  The Privacy Policy first provides that PII will not be sold or provided to anyone - and on the other hand it states that PII will be disclosed or transferred pursuant to a sale or because of a bankruptcy.  Specifically, the Privacy Policy provides that:  (i) *"Plastic Supplies never sells or gives your contact information to anyone"*; and (ii) "We may disclose and transfer Personal Information to a third party in the event that a merger, acquisition, debt financing transaction, sale of our assets, other similar transaction, or if a bankruptcy, insolvency, or receivership occurs."  *See* Privacy Policy attached as Exhibit A.

5

### III.   LAW ANALYSIS AND ARGUMENT

**A.   *The Stalking Horse Bid Protections Should Not Be Approved***

14.   The expense reimbursement requested in the Bidding Procedures Motion, including any due diligence, should be denied because the record in these cases clearly indicates that API performed its due diligence pre-petition in connection with its negotiations with the Debtors concerning the purchase of the Assets.  In addition, the break-up fee should be denied at this time as there is insufficient information contained in the Bidding Procedures Motion concerning the relationship, if any, between the Debtors and API other than API providing "substantial unsecured loans that preserved the going concern value of the Debtor's business, assisting the Debtor prepetition with operating costs, conducting due diligence, assisting the Debtor with understanding and collecting information about its financial status and improving the Debtor's accounting practices, and entering into the Stalking Horse APA."  *See id.* at page 24 of 26.

15.   Bid protections must be sought pursuant to, and analyzed under, Section 503(b) of the Bankruptcy Code.  *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]") (citing *Calpine Corp. v. O'Brien Envt'l Energy* (*In re O'Brien Envt'l Energy, Inc.*), 181 F.3d 527 (3d Cir. 1999)).  Section 105(a) is not a basis to award an administrative expense.  *See In re Woman First Healthcare, Inc.,* 332 B.R. 115, 120-21 (Bankr. D. Del. 2005).

16.   The analysis of bid protections under Section 503(b) "must be made in reference to general administrative expense jurisprudence.  In other words, the allowability of bid protections, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535; *see In re Energy Future Holdings Corp. ("EFH I")*, 904 F.3d 298, 313 (3d Cir. 2018) ("[T]ermination

fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]”).

17.     The benefit to the estate of an administrative expense “must be *actual*, not hypothetical.” *In re Energy Future Holdings Corp.* (“*EFH II*”), No. 19-3492, 2021 WL 957301 at *10 (3d Cir. Mar. 15, 2021) (emphasis in original) (citing *In re Continental Airlines, Inc.*, 146 B.R. 520, 526 (Bankr. D. Del. 1992)).

18.     A break-up fee may provide a benefit to the estate where (1) assurance of the break-up fee promotes more competitive bidding, such as by inducing a bid that otherwise wouldn’t have been made, (2) availability of the break-up fee induces a buyer to perform diligence and set a floor price.  *See EFH I*, 904 F.3d at 313-14 (citing *O’Brien*, 181 F.3d at 537).

19.     Even if a break-up fee would benefit the estate, the Court is not required to approve it.  *See EFH I*, 904 F.3d at 313-14 (“We have never held that bankruptcy courts must allow fees whenever they find that [a break-up fee confers a benefit on the estate.]”).  The Court must determine, based on the totality of the circumstances of the case, “whether the proposed fee’s potential benefits to the estate outweigh any potential harms, such that the fee is actually necessary to preserve the value of the estate.”  *Id.* (citing *O’Brien*, 181 F.3d at 535) (quotation marks omitted).

20.     The party requesting bid protections has the burden of showing that the fee is actually necessary to preserve the value of the estate.  *See O’Brien*, 181 F.3d at 535.

21.     In *EFH II*, the United States Court of Appeals for the Third Circuit considered, in the context of a motion to dismiss based upon the sufficiency of the pleading, an administrative expense application submitted by an unsuccessful bidder.  Initially, the unsuccessful bidder argued that the lower courts erred in measuring whether its bid had conferred a benefit using hindsight (as

7

opposed to measuring the benefit at the time the bid was submitted).  *See EFH II* at \*12.  The Third Circuit rejected that argument and concluded that, consistent with the well-established Bankruptcy Code policy of limiting administrative expenses, it was "entirely appropriate to consider" the asserted benefit "through the rearview mirror."  *Id.*

22.    The unsuccessful bidder in *EFH II* also asserted two potential benefits to the process:  that it served as a stalking horse bidder, and that its unsuccessful efforts provided a "roadmap" for other viable bids that were later submitted, including the successful bid.  *Id.*   The Third Circuit rejected the argument that the unsuccessful bidder had stated a plausible argument for allowance of an administrative expense on a theory that its bid served as a catalyst for the submission of other bids, as it was the only bid at the time it was submitted.  *Id.*  While the bid did not technically establish a "floor" because the estates ultimately accepted a substantially lower offer after the unsuccessful bid fell through, the Third Circuit found that the argument that the bid had provided a "roadmap" for other bids post-termination was a plausible argument in favor of benefit to the estate.  *Id.* at \*12-13.  The Third Circuit remanded the matter in *EFH II* so that a sufficient record could be developed to enable the bankruptcy court to determine, in hindsight, the extent to which the unsuccessful bidder's participation had actually benefitted the estate more than it had harmed the estate.  *Id.* at \*15.

23.    To receive bid protections as an administrative claim under Section 503(b) of the Bankruptcy Code, it must be shown that such bid protections conferred a benefit to the estate, which could only be discerned after the sale to another bidder at a price more beneficial to the estate.  Here, the expenses were accrued prepetition, and the Debtors have not provided any evidence to support a record that API's activities created benefit for these estates.

24. Consistent with the Third Circuit's latest guidance, the Court should not consider bid protections until there is a sufficient evidentiary record on which to make the legal determinations outlined in *O'Brien* and subsequent Circuit cases.

25. In sum, the Debtors' request for authority to award bid protections should be denied as it undermines this Court's control of administrative expenses.

**B.     Under Sections 363(b)(1) and 332 of the Bankruptcy Code, a Consumer Privacy Ombudsman Should Be Required**

26. Because the Debtors are seeking authority of this Court to approve the bidding procedures for the sale of its business – they have the burden to establish that the proposed sale is consistent with the Debtor's Privacy Policy, or, only after the appointment of a consumer privacy ombudsman can the Court consider the facts, circumstances, and conditions of such proposed sale. *See* 11 U.S.C. § 363(b)(1).

27. The Bankruptcy Code contains provisions designed to protect certain PII of consumers in connection with the sale of assets under Section 363(b). Section 363(b)(1) provides that:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of commencement of the case, then the trustee may not sell or lease the personally identifiable information to any person unless –
>
> (A) such sale or lease is consistent with such policy; or
>
> (B) After appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease –
>
>> i.    giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

9

ii.   finding that no showing was made that such sale or such lease would violate applicable non-bankruptcy law.

*See* 11 U.S.C. § 363.

28.   Section 332 of the Bankruptcy Code states as follows:

(a) If a hearing is required under section 363(b)(1)(B), the court shall order the United States trustee to appoint, not later than 7 days before the commencement of the hearing, 1 disinterested person (other than the United States trustee) to serve as the consumer privacy ombudsman in the case and shall require that notice of such hearing be timely given to such ombudsman.

(b) The consumer privacy ombudsman may appear and be heard at such hearing and shall provide to the court information to assist the court in its consideration of the facts, circumstances, and conditions of the proposed sale or lease of such personally identifiable information under section 363(b)(1)(B). Such information may include presentation of-

(1) the debtor's privacy policy;

(2) the potential losses or gains of privacy to consumers if such sale or lease is approved by the court;

(3) the potential costs or benefits to consumers if such sale or such lease is approved by the court; and

(4) the potential alternatives that would mitigate potential privacy losses or potential costs to consumers.

(c) A consumer privacy ombudsman shall not disclose any personally identifiable information obtained by the ombudsman under this title.

*See* 11 U.S.C. § 332.

29.   PII is defined in Section 101(41A), and includes, among other things, "the first name (or initial) and last name of such individual", "the geographic address of a physical place of residence", and "an electronic address (including an e-mail address) of such individual." *See* 11 U.S.C § 101(41A).

30.    Federal Rule of Bankruptcy Procedure 6004(g) requires that any motion for authority to sell or lease PII under Section 363(b)(1)(B), shall include a request for an order directing the United States Trustee to appoint a consumer privacy ombudsman. *See* Fed. R. Bankr. P. 6004(g). The motion must, at a minimum, be served on any committee appointed under Section 1102 of the Bankruptcy Code, the twenty largest unsecured creditors and such other entities as the court may direct. *See id.* If an ombudsman is appointed, the United States Trustee must file, no later than seven days before the hearing under Section 363(b)(1)(B), a notice of appointment. *See id.*

31.    The Bidding Procedures Motion anticipates the sale of PII because the proposed Asset Purchase Agreement includes the sale of "all customer lists." *See* Dkt. 21, Exhibit A at page 4 of 36. The Privacy Policy effective as of July 1, 2020 provides: "[w]e sometimes collect Personal Information to provide information and Services that you request, and to better understand our customer's wants and needs. Personal Information is information that specifically identifies an individual. Personal Information can include, but is not limited to, your name, address, e-mail address, and phone number. Personal Information also includes the specific types of information defined under locally applicable law." As such, it appears that the Privacy Policy effects individuals and their information.

32.    As discussed under paragraph 13 above, the Debtors' Privacy Policy contains contradictory statements about its intended treatment of individual's PII. It first states that PII will not be sold or provided to anyone at all while another term allows such information to be disclosed or transferred pursuant to a sale or as a result of a bankruptcy. *See* Privacy Policy attached as Exhibit A.

33.     The goal here must be the proper treatment of PII and safeguarding consumers' rights amid a sale of assets in bankruptcy.  In pursuit of these objectives, Section 332 provides for the appointment of a consumer privacy ombudsman, who is tasked with the review of a debtor's privacy policy as it applies to the information that the debtor has collected from consumers. Thereafter, the ombudsman would provide a report to the court, so it may assess the facts, circumstances and conditions of the proposed sale of PII under Section 363(b)(1)(B).  It may be that the transfer of customers' PII to a purchaser is advantageous to both the purchaser and the customer, but to that end, the Bankruptcy Code provides a resource to ensure the proper treatment of customers' PII in making the transfer.

34.     Here, the Privacy Policy includes contrary statements as to whether PII can be sold. As there are questions concerning whether the Privacy Policy prohibits the transfer of PII, a consumer privacy ombudsman should be appointed pursuant to Sections 363(b)(1) and 332 of the Bankruptcy Code.

35.     The Bidding Procedures should allow any committee appointed by the United States Trustee in these cases to appear at the auction and to be considered a consultation party in all respects concerning the sale of the Assets.

## **CONCLUSION**

WHEREFORE, the United States Trustee respectfully submits that the Court deny the

Bidding Procedures Motion and grant such other relief as the Court deems just and necessary.

Respectfully Submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**


By:      _/s/ Jeffrey M. Sponder_
Jeffrey M. Sponder
Trial Attorney

Dated: January 3, 2025