UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Stephen M. Packman, Esquire
Douglas G. Leney, Esquire
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (215) 963-3300
Facsimile: (215) 963-9999
Email: spackman@archerlaw.com
        dleney@archerlaw.com
*Attorneys for the Debtors*

**Order Filed on January 31, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

In re:

PLASTIC SUPPLIERS, INC., *et al.*,[1]

Debtors.

Chapter 11

Case No. 24-22549 (ABA)
(Jointly Administered)

Hearing Date:  January 29, 2025

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS,
(III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through thirty-two (32) is

hereby **ORDERED.**

**DATED: January 31, 2025**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are:  Plastic Suppliers, Inc. (9518); Sidaplax, Inc. (4275); and Specialty Films, Inc. (4273).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  2400-2450 Marilyn Pk. Ln., Columbus, OH 43219.

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

This matter is before the Court upon the motion (the "Motion")[2] of the debtors and debtors in possession (the "Debtors")  in the above-captioned chapter 11 case (the "Chapter 11 Cases") for entry of one or more orders pursuant to sections 105, 363, and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, 6006-1, 9006-1(b), and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for  the  District of New Jersey (the "Local Rules"):  (i) approving the form of asset purchase agreement (the "Stalking Horse APA") between the Debtor and API Industries, Inc. d/b/a Aluf Plastics, for itself and any designees (the "Stalking Horse Purchaser") and proposed bidding procedures (the "Bid Procedures") in connection with the Debtors' proposed sale (the "Sale") of the Purchased Assets, including bid protections, (ii) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider final approval of the Sale and assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") to the successful bidder, (iii) approving form and manner of the notice thereof, including the notice of potential assumption and assignment of the Assumed Contracts; (iv) authorizing the Debtors to sell, and approving the Debtors' Sale of, the Purchased Assets and assumption and assignment of Assumed Contracts; and (v) granting related relief [D.I. 21] (the "Motion"); and the Court having entered on January 10, 2025 that certain *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding Procedures, Including Bid*

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the APA (as defined below), or to the extent not defined therein, the Bidding Procedures Order (as defined below).

Debtors:     Plastic Suppliers, Inc., *et al.*

Case No:   24-22549 (ABA) (Jointly Administered)

Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

*Protections, (B) Scheduling Auction and Hearing to Consider Final Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting Related Relief* [D.I. 81] (the "<u>Bidding Procedures Order</u>"); and the Debtors now seeking entry of an order, pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, 6006-1, 9006-1(b), and 9013-1:  (i) authorizing and approving the Stalking Horse APA, as amended, modified, and/or supplemented after the Auction, a copy of which is attached hereto as **<u>Exhibit 1</u>** (the "<u>APA</u>"), by and between the Debtors and the Stalking Horse Purchaser, for itself and any designees (the "<u>Purchaser</u>"), (ii) approving the Sale of the Purchased Assets free and clear of all Liens (as defined in the Motion), claims, encumbrances, pledges, interests, and liabilities  ("<u>Encumbrances</u>"), (iii) approving the assumption and assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code in connection with the Sale, (iv) authorizing the Debtors to consummate the transactions related to the APA, and (v) granting other related relief; and this Court having reviewed the Motion, the First Day Declaration of Michael DuFrayne [D.I. 13], the Notice of Selection of Successful Bid and Backup Bid [D.I. 118], and Declaration of Michael DuFrayne in Support of the Motion [D.I. 123] (collectively, the "<u>DuFrayne Declarations</u>"), and all other evidence adduced, and arguments of counsel presented, at the Sale Hearing held on January 29, 2025; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:  24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

amended on September 18, 2012 (Simandle, C.J.) (the "Standing Reference Order"); and this

Court having determined that just cause exists for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

## HEREBY ORDERED THAT:[3]

A.       To the extent that any of the following findings of fact constitute conclusions of

law, they are adopted as such.  To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

B.       This Court has jurisdiction over the Motion and the relief requested therein

pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Reference Order, and this matter is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue of the Chapter 11

Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.       The statutory predicates for the relief sought in the Motion are sections 105(a),

363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014,

and Local Rules 2002-1, 6004-1, 6006-1, 9006-1(b), and 9013-1, and the *Guidelines for the

Conduct of Asset Sales* established and adopted by the Court.

D.       This Sale Order constitutes a final order within the meaning of 28 U.S.C.

§ 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary

under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Sale Order, and directs entry of judgment as set forth herein.

E.      The Purchased Assets constitute property of the Debtor's bankruptcy estate and title thereto is vested in the Debtor's bankruptcy estate within the meaning of section 541(a) of the Bankruptcy Code.

F.      On December 22, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to maintain its business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

G.      This Court previously entered the Bidding Procedures Order, among other things: (i) establishing certain bidding and auction procedures; (ii) scheduling the Auction (if necessary) and the Sale Hearing to consider the sale of the Purchased Assets; (iii) establishing certain procedures for noticing and determining Cure Claims related to the Debtor's executory contracts and unexpired leases; (iv) approving the form and manner of notice of certain procedures, dates and deadlines in connection with the Bid Procedures and the Sale; and (v) granting other related relief.

H.      As evidenced by the certificates of service previously filed with the Court [D.I. 19, 26, 106, 107, 108], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, entry of the Bidding Procedures Order, the Auction, the Sale, and the potential assumption and assignment to the Purchaser of the executory contracts and unexpired leases listed on **Exhibit 2** to this Sale

5

Debtors:   Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

Order (collectively, the "Assumed and Assigned Contracts") has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9014, and in compliance with the Bidding Procedures Order, to each party entitled to such notice. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale, the Sale Hearing, or the entry of this Order is, or shall be, required.

      I.      In addition to the bid of the Stalking Horse Purchaser, one (1) additional qualified bid was received for the Purchased Assets in accordance with the Bidding Procedures Order, with such bid submitted on January 21, 2025 by Licaflex Packaging USA, Inc. ("Licaflex"). No other bids were received by the Debtors.

      J.      Pursuant to the Bidding Procedures Order, the Auction with respect to the Purchased Assets was held on January 27, 2025 at 10:00 a.m. (ET). At the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, determined that the Stalking Horse Purchaser's final bid, having a total gross bid value of $16,401,000.00 (inclusive of the Bid Protections which the Stalking Horse Purchaser credit bid against its total purchase price), was the highest and best offer for the Purchased Assets. The Debtors declared the Stalking Horse Purchaser's final bid as the Successful Bid, and declared Licaflex's final bid, having a total bid value of $16,301,000.00, as the Backup Bid.

      K.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion.

160562.01001/152480689v.2

Debtors:     Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of
Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and
Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts
and Unexpired Leases, and (IV) Granting Related Relief*

L.    The Sale Notice provided all interested parties with timely and proper notice of
the Sale, the Sale Hearing, and the Auction.

M.    The disclosures made by the Debtors in the Motion, the Sale Notice, and related
documents filed with the Court concerning the APA, the Auction, the Sale, and the Sale Hearing
were good, complete, and adequate.

N.    The Bid Procedures set forth in the Bidding Procedures Order are non-collusive,
proposed and executed in good faith as a result of arms'-length negotiations, designed to
maximize the value of the Purchased Assets, and substantively and procedurally fair to all
parties.

O.    The Debtors conducted the process with respect to the Sale in accordance with,
and have otherwise complied in all respects with, the Bidding Procedures Order.  The sale
process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity
for any entity to make a higher or otherwise better offer to purchase the Purchased Assets.

P.    The APA and the Sale contemplated thereby represent a fair and reasonable offer
to purchase the Purchased Assets.  No other entity or group of entities has presented a higher or
otherwise better offer to the Debtors to purchase the Purchased Assets for greater economic value
to the Debtors' bankruptcy estates than the Purchaser.

Q.    Approval of the Motion and the APA and the consummation of the Sale
contemplated thereby is in the best interests of the Debtors, their bankruptcy estates and
creditors, and other parties in interest in the Chapter 11 Cases.

160562.01001/152480689v.2

Debtors:     Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

R.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Purchased Assets because, among other reasons, (i) the APA constitutes the highest and best offer for the Purchased Assets, (ii) the APA and Closing thereon present the best opportunity to realize the value of the Purchased Assets, and (iii) no other transaction would not have yielded as favorable an economic result.

S.     The Purchaser is purchasing the Purchased Assets in good faith and is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, therefore, is entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with the Sale.

T.     The APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  The Debtors, the Purchaser and their respective agents, representatives, and affiliates have not engaged in any conduct that would cause or permit the APA or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

U.     The consideration provided by the Purchaser pursuant to the APA:  (i) is fair and adequate, and constitutes reasonably equivalent value and fair consideration and value, under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act); and (ii) will provide a greater recovery for the Debtors' bankruptcy estates and creditors than would be provided by any other reasonably practicable available alternative.  The APA was not entered into, and the Sale is

8

Debtors:   Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

not consummated, for the purpose of hindering, delaying, or defrauding any creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  Neither the Debtors nor the Purchaser has entered into the APA or are consummating the Sale with any fraudulent or otherwise improper purpose.

V.      By consummating the Sale, the Purchaser is not a mere continuation of the Debtors or their bankruptcy estates, and there is no continuity, no common identity, and no continuity of enterprise between the Debtors and the Purchaser.  The Purchaser is not holding itself out to the public as a continuation of the Debtors.  The Purchaser is not a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de facto merger of the Purchaser and the Debtors.  Neither the Purchaser nor any of its agents, representatives, or affiliates shall assume or in any way be responsible for any obligation or liability of the Debtors and their bankruptcy estates except as expressly provided in this Sale Order or the APA.  None of the transactions contemplated by the APA, including, without limitation, the Sale or the assumption and assignment of any Assumed and Assigned Contracts, is being undertaken for the purpose of hindering, delaying, or defrauding any creditors of the Debtors under the Bankruptcy Code, under the laws of the United States, or under the laws of any state, territory, possession, or the District of Columbia.

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

W.     The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a plan of reorganization of the Debtors.  Therefore, the Sale does not constitute a *sub rosa* plan.

X.     The Debtors, acting by and through their authorized agents, representatives, directors, and officers, (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) have full corporate power and authority necessary to consummate the transactions contemplated by the APA, (iii) the Debtors have taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby, and (iv) the Debtors require no further consents or approvals to consummate the Sale contemplated by the APA, except as otherwise set forth in the APA.

Y.     The Debtors are the lawful owner of the Purchased Assets.  The transfer of each of the Purchased Assets to the Purchaser will be, as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Purchaser with all right, title, and interest to the Purchased Assets free and clear of all Encumbrances other than any Permitted Encumbrances upon receipt by MidCap Business Credit, LLC ("MidCap") of proceeds from the Sale sufficient to indefeasibly satisfy in full in cash all Obligations[4] directly at Closing as provided in Paragraph 9 below.

Z.     The Debtors may sell the Purchased Assets free and clear of all Encumbrances other than any Permitted Encumbrances because, in each case, one or more of the standards set

---

[4] "Obligations" as used herein shall collectively refer to all DIP Obligations and all Pre-Prepetition Obligations, as defined in the Order (i) Authorizing the Debtors, on a Final Basis, to (a) Obtain Post-Petition Financing and (b) Use Cash Collateral, (ii) Granting Liens and Providing Superpriority Administrative Expense Claims, (iii) Granting Adequate Protection, (iv) Modifying the Automatic Stay, and (v) Granting Related Relief [D.I. 82].

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances against the Debtors, their bankruptcy estates, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, in each instance against the Debtors, their bankruptcy estates, or any of the Purchased Assets, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an Encumbrance only after Sale proceeds are paid to MidCap as provided in Paragraph 9, subject to any claims and defenses that the Debtors and their bankruptcy estates may possess with respect thereto. All other holders of Encumbrances could be compelled in a legal or equitable proceeding to accept money satisfaction of such claim or interest, or otherwise falls within section 363(f) of the Bankruptcy Code.

AA.    If the Sale were not free and clear of all Encumbrances, or if the Purchaser would, or in the future could, be liable for any Encumbrances, the Purchaser would not have entered into the APA and would not consummate the Sale, thus adversely affecting the Debtors, their bankruptcy estates and creditors. Except as otherwise provided in the APA, the Purchaser shall not be responsible for any Encumbrances, other than Assumed Liabilities and any Permitted Encumbrances. A sale of the Purchased Assets other than one free and clear of all Encumbrances (other than any Permitted Encumbrances) would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated.

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

BB.    The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed and Assigned Contracts to the Purchaser pursuant to the terms of this Sale Order and the APA, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Assumed and Assigned Contracts is in the best interests of the Debtors, their bankruptcy estates and creditors and other parties in interest in the Chapter 11 Cases.  The Assumed and Assigned Contracts being assigned to the Purchaser under the APA are an integral part of the APA and the Sale and, accordingly, such assumption and assignment is reasonable and enhance the value of the Debtors' bankruptcy estates.  Any non-Debtor counterparty to any Assumed and Assigned Contract that has not actually filed with the Court an objection to such assumption and assignment (including with respect to any cure payments) as of the date hereof is deemed to have consented to such assumption and assignment.

CC.    The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Assumed and Assigned Contracts to the extent provided under this Sale Order and the APA in that:  (i) the Purchaser will cure at Closing or as soon thereafter as is practicable any default existing prior to the date hereof under any of the Assumed and Assigned Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; and (ii) the Purchaser will provide at Closing or as soon thereafter as is practicable compensation or has provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed and Assigned

12

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser has provided adequate assurance of future performance with respect to the Assumed and Assigned Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  The Assumed and Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.

DD.    The APA and Sale must be approved and the Closing must occur promptly to preserve the value of the Purchased Assets and the Debtors' bankruptcy estates.

EE.    Given the adequacy and fair value of the consideration provided by the Purchaser under the APA, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, and should be approved.

FF.    The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

GG.    Time is of the essence in effectuating the APA and proceeding with the transactions contemplated therein without interruption.  Accordingly, cause exists to waive the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), 6004(h), and 6006(d) to permit the immediate effectiveness of this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The relief requested in the Motion is granted as set forth herein.

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

2.    Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.    Notice of the Motion, the Auction, entry of the Bidding Procedures Order, the Sale Hearing, the Sale, and the Assumed and Assigned Contracts was fair and equitable under the circumstances, and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and the Local Rules.

### Approval of the Sale of the Purchased Assets

4.    The APA, including all documents executed in connection therewith (collectively, the "Transaction Documents"), and all of the terms and conditions thereof, and the Sale contemplated thereby, are hereby approved in all respects.

5.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their authorized agents, representatives, directors and officers, are authorized and empowered to take any and all actions necessary or appropriate to:  (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the APA (including, but not limited to, execute and deliver the APA and Transaction Documents to the Purchaser); (b) transfer and assign all right, title, and interest to all property, permits, licenses, and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the APA; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the APA and all additional instruments and documents (including the Transaction Documents) that may be reasonably necessary or desirable to implement this Sale Order, the APA

14

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

and the Sale, including any Transaction Documents, or as may be reasonably necessary or

appropriate to the performance of the obligations as contemplated by this Sale Order, the APA

and any Transaction Documents.

6.      This Sale Order shall be binding in all respects upon the Debtors, their bankruptcy

estates, all creditors of the Debtors, all holders of equity interests in the Debtors, all holders of

any Encumbrances against the Debtors, any holders of Encumbrances against or on all or any

portion of the Purchased Assets, all counterparties to any Assumed and Assigned Contracts, the

Purchaser and all agents, representatives, affiliates, and permitted successors and assigns of the

Purchaser, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy

Code, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7

under the Bankruptcy Code of the Chapter 11Cases.  The terms and provisions of the APA and

this Sale Order shall inure to the benefit of the Debtors, their bankruptcy estates and creditors,

the Purchaser and all agents, representatives, affiliates, and permitted successors and assigns of

the Purchaser, and any other affected third-parties, including all persons asserting any

Encumbrances in the Purchased Assets to be sold to the Purchaser pursuant to the APA,

notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary

under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or

other fiduciary such terms and provisions likewise shall be binding.

7.      The consideration provided by the Purchaser for the Purchased Assets under the

APA shall be deemed for all purposes to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

avoided, or costs or damages imposed or awarded under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar state laws.

8.      The consummation of the Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtor sand the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates.  The Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of Closing.  The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Purchased Assets.

### Sale and Transfer of Purchased Assets

9.      At Closing, the net proceeds from the Sale in an amount sufficient to indefeasibly satisfy in full in cash all Obligations shall be paid by wire transfer directly to MidCap pursuant to a payoff letter in form and substance acceptable to MidCap.

10.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon the Closing Date, the Purchased Assets shall be transferred to the Purchaser free and clear of all Encumbrances (other than any Permitted Encumbrances), with all such Encumbrances to attach to the proceeds of the Sale only after Sale proceeds are paid to MidCap as provided in Paragraph 9, subject to any claims and defenses the Debtors and their bankruptcy

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of
Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and
Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts
and Unexpired Leases, and (IV) Granting Related Relief*

estates may possess with respect thereto.  Except as otherwise provided in the APA, the

Purchaser shall not be responsible for any Encumbrances, other than Assumed Liabilities or any

Permitted Encumbrances.

11.    On the Closing Date, and upon receipt by MidCap of Sale proceeds sufficient to

indefeasibly satisfy in full in cash all Obligations as provided in Paragraph 9, this Sale Order

shall be construed and shall constitute for any and all purposes a full and complete general

assignment, conveyance, and transfer of all of the Purchased Assets or a bill of sale transferring

good and marketable title in such Purchased Assets to the Purchaser pursuant to the terms set

forth in this Sale Order and the APA.  For the avoidance of doubt, the Excluded Assets set forth

in the APA are not included in the Purchased Assets, and the Excluded Liabilities set forth in the

APA are not Assumed Liabilities.

12.    Subject to the terms and conditions of this Sale Order, and upon receipt by

MidCap of Sale proceeds sufficient to indefeasibly satisfy in full in cash all Obligations as

provided in Paragraph 9, the transfer of the Purchased Assets to the Purchaser pursuant to the

APA and the consummation of the Sale and any related actions contemplated thereby do not

require any consents other than as specifically provided for in this Sale Order and the APA,

constitute a legal, valid, and effective transfer of the Purchased Assets, and shall vest the

Purchaser with right, title, and interest in and to the Purchased Assets as set forth in this Sale

Order and the APA, as applicable, free and clear of all Encumbrances (other than any Permitted

Encumbrances).

Debtors:   Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

13.     All entities that are presently, or on the Closing may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed (wherever located) to the Purchaser pursuant to this Sale Order and the APA are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

14.     Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances (other than any Permitted Encumbrances) against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Encumbrances (other than any Permitted Encumbrances) that the person or entity has with respect to the Purchased Assets (and with respect to MidCap upon receipt at Closing of an amount sufficient to satisfy in full in cash all Obligations as provided in Paragraph 9), then (a) the Purchaser is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against or in the Purchased Assets of any kind or nature (other than any Permitted Encumbrances).  For the avoidance of doubt, upon consummation of the Sale (and with respect to MidCap upon receipt at Closing of an amount sufficient to satisfy in full in cash all Obligations as provided in Paragraph 9), the Purchaser is authorized to file termination statements, lien terminations, or other amendments in any

18

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

jurisdiction required to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Encumbrances that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code.

15.    Except to the extent included in Assumed Liabilities or Permitted Encumbrances, or to enforce the APA, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to contracts and leases, customers, employees and former employees, dealers and sale representatives, and trade or other creditors holding Encumbrances against or in the Debtors and their bankruptcy estates or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the transfer of the Purchased Assets to the Purchaser, or any entities or individuals asserting any interests in the Purchased Assets, hereby are forever barred, estopped, and permanently enjoined from asserting any Encumbrances against the Purchaser, the permitted successors and assigns of the Purchaser, the property of the Purchaser or its permitted successors and assigns, or the Purchased Assets conveyed in accordance with the APA, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien, claim, Encumbrance or interest against the Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any business operated with the Purchased Assets.

16.    As of and after the Closing:  (a) each of the Debtors' creditors is hereby authorized and directed to execute such documents and take all other actions as may be necessary to release its Encumbrances (other than any Permitted Encumbrances) in the Purchased Assets (if any) as such Encumbrances may have been recorded or may otherwise exist; and (b) any Asset that may be subject to a statutory lien, mechanic's lien or the like (other than any Permitted Encumbrances) shall be turned over and such liens shall attach to the proceeds of the Sale in the same priority they currently enjoy with respect to the Acquired Assets.

17.    The Purchaser or its affiliates, successors, and assigns shall not have or incur any liability to, or be subject to any action by the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA, the Transaction Documents, and the entry into and consummation of the Sale, except as expressly provided in the APA and this Order.

## Contracts to be Assumed and Assigned

18.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtors' assumption and

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of
Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and
Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts
and Unexpired Leases, and (IV) Granting Related Relief*

assignment to the Purchaser, and the Purchaser's assumption, on the terms set forth in this Sale

Order and the APA, of the Assumed and Assigned Contracts, is hereby approved in its entirety,

and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby

deemed satisfied.

19.    Each Assumed and Assigned Contract is an executory contract or unexpired lease

under Bankruptcy Code section 365 and the Debtors are hereby authorized in accordance with

sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Purchaser,

effective upon the Closing Date, the Assumed and Assigned Contracts free and clear of all

Encumbrances other than Assumed Liabilities and to execute and deliver to the Purchaser such

documents or other instruments as may be necessary to assign and transfer the Assumed and

Assigned Contracts to the Purchaser.

20.    Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy

Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest in and of

each Assumed and Assigned Contract.

21.    The Assumed and Assigned Contracts shall be transferred to, and remain in full

force and effect for the benefit of, the Purchaser in accordance with their respective terms,

notwithstanding any provision in any such Assumed and Assigned Contract (including those of

the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts,

or conditions such assignment or transfer.

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

22.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, at the Closing or as soon thereafter as is practicable, the Purchaser shall pay to the respective counterparty the Cure Claims relating to any Assumed and Assigned Contract.

23.     Except as otherwise agreed in writing between the Debtors and the non-Debtor parties to the Assumed and Assigned Contracts or stated on the record of the Sale Hearing, the Cure Claims to be paid by the Purchaser for the Assumed and Assigned Contracts are hereby fixed at the amounts set forth on **Exhibit 2** attached to this Sale Order, and the non-Debtor parties to such Assumed and Assigned Contracts are forever bound by such Cure Claims and, upon payment of such Cure Claims, are hereby enjoined from taking any action against the Debtors and their bankruptcy estates, the Purchaser and all agents, representatives, affiliates, and permitted successors and assigns of the Purchaser, or the Acquired Assets with respect to any claim for cure under any Assumed and Assigned Contract.  Notwithstanding anything to the contrary herein, inclusion of a contract or lease on **Exhibit 2** does not require the Purchaser to assume and assign any listed contract or lease, and the Purchaser shall have the right, at any time prior to Closing, to (a) remove any Assumed and Assigned Contract from the list of Assumed and Assigned Contracts attached hereto as **Exhibit 2**, in which event such contract or lease shall not constitute an Assumed and Assigned Contract and shall constitute an Excluded Contract, Excluded Liability, and Excluded Asset under the APA or (b) add any executory contract or lease listed in the Notices of Potential Assumption and Assignment filed by the Debtors at Docket No. 92 to the list of Assumed and Assigned Contracts attached hereto as **Exhibit 2** (any such added executory contract or lease being referred to as an "Additional Assumed and Assigned

22

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

Contract"), in which event such contract or lease shall constitute an Assumed and Assigned

Contract hereunder and an Assumed and Assigned Contract as defined in the APA.  The Debtors

and Purchaser shall file a final list of Assumed and Assigned Contracts with this Court within

three (3) business days after Closing on the Sale.

24.    The payment of the applicable Cure Claims (if any) shall effect a cure of all

defaults existing as of the date that such executory contracts or unexpired leases are assumed and

compensate for any actual pecuniary loss to such non-Debtor party resulting from such default.

25.    The Purchaser shall have assumed the Assumed and Assigned Contracts, and

pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such

Assumed and Assigned Contracts shall not be a default thereunder.  After payment of the relevant

Cure Claims, neither the Debtor and its bankruptcy estate nor the Purchaser shall have any

further liabilities to the non-Debtor counterparties to the Assumed and Assigned Contracts, other

than the Purchaser's obligations under the Assumed and Assigned Contracts that accrue after the

date that such Assumed and Assigned Contracts are assumed and/or assigned, as the case may be.

26.    Any provisions in any Assumed and Assigned Contracts that prohibit or condition

the assignment of such Assumed and Assigned Contract or allow the party to such Assumed and

Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or

extension or modify any term or condition upon the assignment of such Assumed and Assigned

Contract constitute unenforceable anti-assignment provisions that are void and of no force and

effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

Code for the assumption by the Debtors and assignment to the Purchaser of the Assumed and Assigned Contracts have been satisfied.

27.    Any party having the right to consent to the assumption or assignment of any Assumed and Assigned Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

28.    The Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assumed and Assigned Contracts, and the applicable Debtor and its bankruptcy estate shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed and Assigned Contracts.

29.    The Purchaser has provided adequate assurance of future performance under the Assumed and Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

30.    There shall be no assignment fees, increases, rent-acceleration, or any other fees charged to the Purchaser or the Debtors and their bankruptcy estates as a result of the assumption and assignment of the Assumed and Assigned Contracts.

31.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed and Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors and their bankruptcy estates or the Purchaser any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment,

24

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

arising under or related to the Assumed and Assigned Contracts, existing as of the date that such

Assumed and Assigned Contracts are assumed or arising by reason of the Closing.

32.    The failure of the Debtors or the Purchaser to enforce at any time one or more

terms or conditions of any Assumed and Assigned Contract shall not be a waiver of such terms or

conditions, or of the applicable Debtor's and the Purchaser's rights to enforce every term and

condition of the Assumed and Assigned Contracts.

33.    Neither the Purchaser nor any permitted successor or assign of the Purchaser shall

be responsible for or have any Encumbrances or obligations arising out of any of the Excluded

Contracts.

34.    The effectiveness of the provisions of paragraphs 18 through 33 of this Sale Order

with respect to a particular Assumed and Assigned Contract shall be subject only to any

subsequent ruling of the Court on any timely filed Assignment Objection, to the extent such

Assignment Objection was not ruled upon at the Sale Hearing or subsequently resolved without

the need for a further hearing.  If any Assignment Objection is resolved by the Court in a manner

that is not satisfactory to the Purchaser, the Purchaser shall retain the right to remove the contract

or lease subject to such objection from the Cure Notice, and such contract or lease shall not

constitute an Assumed and Assigned Contract.

35.    For clarity, notwithstanding Section 1.1 of the APA, the term "Assumed

Contracts" in the APA shall be limited to those contracts that are set forth on **Exhibit 2** of this

Sale Order, together with any Additional Assumed and Assigned Contract.

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

36.     Any non-Debtor counterparty to a contract or lease listed on the Notices of Potential Assumption and Assignment filed by the Debtors [D.I. 92], and whose contract or lease is not being assumed and assigned to the Purchaser and wishes to assert a claim against the Debtors must file a proof of claim by the general Proof of Claim deadline of March 3, 2025, as set forth in the Notice of Chapter 11 Bankruptcy Case [D.I. 76].  If a proof of claim has already been filed by such non-Debtor counterparty, there is no need to file an additional claim. Additionally, within five (5) days of entry of this Order, the Debtors shall serve by regular first-class mail, a notice (i) advising that the subject contract/lease was not assumed/assigned, (ii) advising that if such non-Debtor counterparty believes it holds any claim against the Debtors, then a Proof of Claim should be filed no later than March 3, 2025, and (iii) including a blank Proof of Claim form, upon the parties and to the addresses listed in **Exhibit 3** hereof.

**Information Systems Access**

37.     **Sidaplax Access**.

(i)     Purchaser shall provide Seller and Sidaplax VOF ("Sidaplax") with access to the ERP and Adaptive Planning module and other financial applications, including files on network shares, related to the IT systems (collectively, the "IT Systems") through the date on which Sidaplax commences an insolvency proceeding in Belgium.  Thereafter, and for a period that is 90 days from the appointment of a trustee or other representative over Sidaplax (the "Trustee"), or such longer time as the parties might agree, the Trustee will have reasonable access to the information stored/contained on the IT Systems, but only through a written request (the "Sidaplax Information Request") made by the Seller or Trustee to one or more designated

26

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of*
*Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and*
*Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts*
*and Unexpired Leases, and (IV) Granting Related Relief*

Purchaser employee (the "Designated Purchaser Employee") upon no less than three (3) business

days' notice.

(ii)    Seller, on behalf of itself (including any subsequently appointed

Chapter 11 or 7 trustee), Sidaplax and Sidaplax's estate and creditors (collectively, the "Seller

Entities"), agrees that neither Purchaser nor any of its officers, directors, employees, agents, or

representatives (collectively, the "Purchaser Entities") shall have any liability to the Seller

Entities for any information provided or not provided in response to the Sidaplax Information

Request.

38.    **Seller Access**.

(i)    Purchaser agrees that, for a period that is one (1) year from the

Closing Date or such longer period of time as the parties may agree, the Sellers, through a

designated representative (the "Seller Designated Representative"), will have reasonable access

to the information stored/contained on the IT Systems related to the Sellers' pre-Closing books

and records, but only through a written request (the "Seller Information Request") made by the

Seller to the Designated Purchaser Employee upon no less than three (3) business days' notice.

Purchaser's response to the Seller Information Request will be uploaded to, and stored in, a

OneDrive/Sharepoint dataroom. Only the Seller Designated Representative will have access to

the dataroom. A new email account "PSIdatarequest" will be created to which a Seller

Information Request should be sent.

(ii)    Seller agrees to consult with the Committee in advance of any

Seller Information Request unless otherwise agreed to in advance by the Seller and Committee.

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

(iii)    Seller agrees that none of the Purchaser Entities shall have any liability to the Seller or its estate and creditors (including any subsequently appointed Chapter 11 or 7 trustee) for any information provided or not provided in response to the Seller Information Request.

(iv)    Purchaser agrees that Michael DuFrayne or his successor will continue to have access to his laptop computer and earthfirst email account until the Debtors are liquidated or he is no longer affiliated with the Debtors; provided, however, neither he nor his successor shall have any access to the network or VPN (including the IT Systems) directly.

39.    **Reimbursement**.

(i)    To the extent the Sidaplax Trustee makes a Sidaplax Information Request, the Sidaplax Trustee and Purchaser shall make arrangements for same, including reimbursement for the Designated Purchaser Employee's time to respond to said request.

(ii)    Seller agrees to reimburse Purchaser at the rate of $200 per hour for the Designated Purchaser Employee's time to comply with the Seller Information Request (collectively, the "Access Services").

(iii)    The Designated Purchaser Employee shall maintain accurate time records, in one-half hour increments, for the Access Services rendered.

(iv)    At Closing, Seller shall provide Purchaser with a retainer in the amount of $12,500 for the Access Services. If the retainer is depleted prior to the conclusion of the Access Services, Seller (or its successor) shall replenish the retainer in an amount agreed to by the parties.  If the retainer is not replenished, Purchaser shall have no obligation to provide

28

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

Access Services. If any funds remain in the retainer at the conclusion of the Access Services, they shall be returned to Seller (or its successor).

### **Additional Provisions**

40.    Purchaser shall pay the cash portion of the Purchase Price by wire transfer to the Debtors of immediately available funds in accordance with the wire transfer instructions to be provided by the Debtors prior to Closing.

41.    The Debtors and the Purchaser hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

42.    Following the Closing, no holder of an Encumbrance in or against the Debtors and their bankruptcy estates or the Acquired Assets shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Encumbrance or any actions that the Debtors and their bankruptcy estates may take in the Chapter 11 Cases or any successor bankruptcy cases.

43.    The Debtors, including their respective directors, managers, officers, employees, and agents, is hereby authorized to execute such documents (including the Transaction Documents) and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the APA and this Sale Order.  The Debtors shall be, and hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order and the relief granted pursuant to this Sale Order.

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

44.    Notwithstanding anything in the APA or this Order to the contrary, Purchaser shall provide the Debtors and Sidaplax VOF with unencumbered access to the ERP and Adaptive Planning modules and other financial applications, including files existing on network shares, related to the information systems (the "IT Systems") and the Debtors' computers for (i) Michael DuFrayne and (ii) Harvi Basko, for a period of 90 days after Closing, subject to extension upon such reasonable terms as Purchaser and the Debtors may agree.

45.    The Sale is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed and Assigned Contracts by the Purchaser and the sale free and clear of all Encumbrances other than Assumed Liabilities and Permitted Encumbrances) unless such authorization and consummation of such Sale are duly stayed pending such appeal.  The Purchaser is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and as such is entitled to the full benefits and protections of such section.

46.    As a good-faith purchaser of the Acquired Assets, the Purchaser has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Acquired Assets, and therefore the sale of the Acquired Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

47.    The failure specifically to include any particular provisions of the APA including any of the Transaction Documents, agreements, or instruments executed in connection therewith

Debtors:     Plastic Suppliers, Inc., *et al.*
Case No:   24-22549 (ABA) (Jointly Administered)
Caption:   *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of
Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and
Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts
and Unexpired Leases, and (IV) Granting Related Relief*

in this Sale Order shall not diminish or impair the efficacy of such provision, Transaction

Document, agreement, or instrument, it being the intent of this Court that the APA and each

Transaction Document, agreement or instrument be authorized and approved in its entirety.

48.     All time periods set forth in this Sale Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

49.     To the extent there are any inconsistencies between the terms of this Sale Order

and the APA (including all Transaction Documents executed in connection therewith), the terms

of this Sale Order shall govern.

50.     The APA and any related agreements, Transaction Documents or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of this Court.

51.     Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases or

any order confirming any such plan or in any other order in the Chapter 11Cases (including any

order dismissing the Chapter 11Cases or any order entered after any conversion of any of the

Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding

subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions

of the APA or this Sale Order unless otherwise agreed to by the Debtors and the Purchaser.

52.     Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or

any applicable provisions of the Local Rules, this Sale Order shall not be stayed after the entry

hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day

160562.01001/152480689v.2

Debtors:    Plastic Suppliers, Inc., *et al.*
Case No:    24-22549 (ABA) (Jointly Administered)
Caption:    *Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of Substantailly All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*

stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not

apply.

      53.    This Court shall retain jurisdiction to, among other things, interpret, implement,

and enforce the terms and provisions of this Sale Order, the APA and all Transaction Documents,

and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

160562.01001/152480689v.2

## EXHIBIT 1

[FORM OF FINAL EXECUTED APA]

## EXHIBIT 2

**Assumed and Assigned Contracts**

## EXHIBIT 3

**Andrew Hult**
**10 Kensington Road**
**Garden City, NY 11530**

**Dawn Riegert**
**2 Brookwood Drive**
**Medford, NJ**

**Dennis Cerny**
**207 Dunstans Pass**
**Marietta, GA 30066**

**Edward Tweed**
**214 Camrose Court**
**Gahanna, OH 43230**

**James Allen**
**132 Wake Valley Court**
**Conroe, TX 77304**

**Lisa Horvath**
**1520 Douglas Lane**
**Crete, IL 60417**

**Patricia Scholz**
**102 Wendell Road SW**
**Reynoldsburg, OH 43068**

**Philip Ludwig**
**10018 Lions Bay Court**
**Naples, FL 34120**

**Steve Dudley**
**1550 Dream Court**
**Reynoldsburg, OH 43068**

**Theodore Riegert**
**2 Brookwood Drive**
**Medford, NJ 08055**

**Walter Smith**
**351 Maple Street**
**Crown Point, IN 46307**

229822741 v7

160562.01001/152480689v.2

## EXHIBIT 1

[FORM OF FINAL EXECUTED APA]

## SECOND AMENDED ASSET PURCHASE AGREEMENT

**THIS SECOND AMENDED ASSET PURCHASE AGREEMENT** ("Agreement"), dated as of January 29, 2025 (the "Effective Date"), is made by and between PLASTIC SUPPLIERS, INC., a New Jersey corporation (as "Seller"), and API INDUSTRIES, INC. d/b/a ALUF PLASTICS, a Delaware corporation, for itself and any designees (collectively, the "Buyer" and, together with Seller, collectively, the "Parties" and, individually, a "Party"). Capitalized terms used in this Agreement are as defined herein or in Article 10.

## RECITALS

**WHEREAS**, Seller is engaged in the business of, *inter alia*, the manufacture of compostable sealant and barrier sealant films for various commercial applications (the "Business").

**WHEREAS**, Seller is the fee owner of that certain real property and improvements located at 2400-2450 Marilyn Park Lane, Columbus, Ohio 43219, consisting of approximately 10.030 acres, which property is more particularly described in **Exhibit A** attached hereto (the "Real Property").

**WHEREAS**, on December 22, 2024 (the "Petition Date"), Seller commenced a voluntary case under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") (the "Bankruptcy Case").

**WHEREAS**, subject to Seller's receipt of any higher and better offer for the Acquired Assets (as defined herein) in accordance with the Bidding Procedures and Bidding Procedures Order, Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, the Acquired Assets in accordance with this Agreement and sections 105, 363, and 365 of the Bankruptcy Code.

**WHEREAS**, the execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth in this Agreement, are subject to entry of the Sale Approval Order.

**NOW THEREFORE,** in consideration of the mutual covenants, representations, warranties, and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereto agree as follows:

## ARTICLE I
## SALE OF ASSETS AND REAL PROPERTY

**1.1**    Sale of Purchased Assets.

**(a)**    On the Closing Date and subject to the terms and conditions and exclusions contained in this Agreement (including but not limited to Section 1.3), Seller will sell, transfer,

convey, assign, and deliver all of Seller's right, title, and interest in and to all of its assets, properties, and rights of every kind, nature, and description, whether tangible or intangible, wherever located and by whomever possessed relating to the Business and the Real Property, except for the Excluded Assets (collectively, the "Purchased Assets"), free and clear of any and all interests, obligations, rights, encumbrances, pledges, liens (including without limitation, mechanics', materialmens' and other consensual and nonconsensual liens and statutory liens), mortgages, deeds of trust, security interests, Claims, liabilities, debt obligations, losses, penalties, leases, charges, offsets, contracts, options, rights of first refusal, rights of first offer, rights of first sale, rights of notice, easements, servitudes, proxies, voting trusts or agreements, transfer restrictions under any agreement, conditional sale or other title retention agreements, judgments, hypothecations, demands, licenses, sublicenses, assignments, indentures, loan agreements, instruments, debts, rights of recovery, guaranties, contractual commitments, restrictions, rights of setoff, recoupment, employee benefit agreements and obligations, collective bargaining agreements and obligations, claims based on reimbursement, contribution, indemnity, exoneration, products liability, tortious conduct, property damage, personal injury, alter-ego or taxes, claims based on pension plan contributions and related liabilities, environmental liabilities and options to purchase, in each case of whatever kind, nature, or description in, against or with respect to any of the Purchased Assets or Seller having arisen, existed or accrued prior to and through the Closing Date, whether direct or indirect, absolute or contingent, choate or inchoate, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise and whether arising prior to, on or after the petition sate, including claims or liabilities otherwise arising under doctrines of successor liability, *de facto* merger or substantial continuity or liabilities or obligations arising under any Law or Orders (collectively, "Liens"). The Purchased Assets shall include, without limitation, the following assets of Seller:

(i)     all inventory, supplies, and other miscellaneous assets owned by Seller, and used in the course of the Business, including, without limitation, compostable sealant and barrier sealant films production materials (collectively, "Inventory");

(ii)     the Real Property;

(iii)     all furnishings, fixtures, and equipment, and other tangible personal property, listed on the finalized schedule of assets provided by Seller (the "Final Schedule of Assets") and attached hereto as Schedule 1.1(a)(iii);

(iv)     all rights under those executory contracts (the "Contracts") and unexpired personal property and commercial real property leases (the "Leases") set forth on Schedule 1.1(a)(iv) attached hereto (including to any corresponding deposits, retainers, rebates, refunds, and prepaid expenses, and open orders for the purchase and sale of products and services related to the Business). The Contracts and Leases are herein, at times, collectively referred to as the "Assumed Contracts" and, individually, as an "Assumed Contract"; provided however, that Buyer may at any time prior to Closing remove any Assumed Contracts from Schedule 1.1(a)(iv) and upon removal, such Contracts or Leases shall no longer be an Assumed Contract;

(v)    all registered and unregistered intellectual property and digital presence, including all of the Business's: (1) brands, trademarks, service marks, trade names, trade dress, corporate names, and business names (including, without limitation, the name "Plastic Suppliers"), logos, slogans, and designs; (2) copyrights; (3) patents;  (4) proprietary information; (5) digital profiles, including, without limitation, social media and/or online directory profiles that Seller can access or control; (6) websites, URLs, and domain names; (7) information, labels, pictures, and detail contained in the back-end to any website; (8) code written for any web applications; (8) databases used to power all web applications; (9) hosting accounts and relationships; and (10) telephone, fax numbers, passwords, and email addresses used in connection with the foregoing; and (11) computer software and related documentation or similar licenses and trade secrets owned by and used in the Business, and all goodwill associated therewith, including the items listed and described in Schedule 1.1(a)(v) (collectively, the "IP Assets");

(vi)    all computer hardware and software owned by Seller and used in the Business;

(vii)    all rights, causes of action (other than (i) Avoidance Actions under Chapter 5 of the Bankruptcy Code, and (ii) any rights, claims or causes of action under or relating to the Excluded Assets, including, but not limited to, any claims or causes of action relating to insider claims, D&O claims, or any other claims relating to the Debtors that do not relate to the Purchased Assets), and claims, known or unknown, matured or unmatured, accrued or contingent, against third parties (including all rights under warranties, indemnities, and other contractual claims, whether express, implied. or otherwise), to the extent related to any Purchased Assets;

(viii)    all customer lists;

(ix)    all claims under existing insurance policies to the extent such policies may provide coverage or a defense with respect to the Purchased Assets;

(x)    any and all transferable federal, state, local and foreign governmental Permits, authorizations, and approvals of Seller related to the Business;

(xi)    all goodwill associated with the Business, telephone numbers, facsimile numbers, and other intangible property;

(xii)    any and all books, records, files, correspondence, and financial information related to the Business (the "Books and Records"); and

(xiii)    all other assets of any kind and nature used by Seller in the operation of the Business or which relate to the Purchased Assets, except for the Excluded Assets.

### 1.2    Instruments of Conveyance and Transfer

     **(a)**    Upon the Closing, Seller shall make available to Buyer possession of the Purchase Assets, and title to all of the Purchased Assets shall pass to Buyer.

     **(b)**    At the Closing, Seller shall execute and deliver to Buyer a bill of sale and such endorsements, assignments, and other good and sufficient instruments of conveyance and transfer as Buyer reasonably deems desirable to transfer, convey, and assign good and marketable title to Buyer of the Purchased Assets other than the Real Property, free and clear of any and all Liens.

     **(c)**    At the Closing, Seller shall convey the Real Property to Buyer pursuant to a "drop-down LLC transaction" or by Trustee's Deed in the form customarily used in similar transactions in Ohio and approved and prepared by Buyer and such endorsements, assignments, and other good and sufficient instruments of conveyance and transfer as Buyer reasonably deems desirable to transfer, convey, and assign good and marketable title to the Real Property to Buyer, free and clear of any and all Liens.

### 1.3    Excluded Assets.

     **(a)**    Notwithstanding anything contained in Section 1.1 or elsewhere in this Agreement to the contrary, the Purchased Assets shall exclude any of the following assets, properties, rights, or interests of Seller (collectively, the "Excluded Assets"):

     **(i)**    all cash and cash equivalents wherever located;

     **(ii)**    all pre-paid expenses, deposits, and retainers unrelated to the Purchased Assets;

     **(iii)**    all accounts including account receivables;

     **(iv)**    all of Seller's rights, interests, claims, demands, and causes of action under all contracts and leases other than the Assumed Contracts;

     **(v)**    all Avoidance Actions;

     **(vi)**    all claims for and rights to receive tax refunds with respect to taxable periods (or portions thereof) on or prior to the Closing Date;

     **(vii)**    all the minute books and ownership record books of Seller and copies of all other Books and Records necessary for Seller to administer its Bankruptcy Case, but not for any other purpose, including operating the Business; and

     **(viii)**    all rights of Seller under this Agreement.

    **1.4**    **Assumed Liabilities**. As of the Closing, Buyer shall assume, and pay when due, all Cure Costs which are Contracts, and Seller shall pay all Cure Costs for Assumed Contracts

which are Leases.  Seller shall pay when due, all obligations under Assumed Contracts from and after the Closing (collectively, the "<u>Assumed Liabilities</u>").

      **1.5**   <u>**Excluded Liabilities**</u>. Notwithstanding anything to the contrary in this Agreement, except for the Assumed Liabilities set forth in Section 1.4 above, Buyer shall not assume, or become obligated in any way to pay, any of Seller's liabilities, obligations, or debts of any kind whatsoever, whether accrued, absolute, contingent, or otherwise, whether known or unknown, whether due or to become due, and regardless of when or by whom asserted, including, without limitation, to the following (collectively, the "<u>Excluded Liabilities</u>"):

      **(a)**   any of Seller's liabilities under this Agreement, and any other agreements (written or oral) entered into by Seller other than the Assumed Contracts set forth in 1.1(iv);

      **(b)**   any liabilities from the Business that took place prior to the Closing;

      **(c)**   any note payable in favor of, or any other amount owed to, any of Seller's lenders or creditors;

      **(d)**   any liability of Seller with respect to any Taxes;

      **(e)**   any of Seller's liabilities (i) arising by reason of any violation or alleged violation of any federal, state, or foreign law, or any requirement of any Governmental Entity, (ii) arising by reason of any breach or alleged breach by Seller of any contract, agreement, license, commitment, instrument, judgment, order, or decree, (iii) arising under any environmental, health, and safety laws, regulations, and/or requirements;

      **(f)**   any liability of Seller arising out of the injury to or death of any individual, or damage to or destruction of any property, whether based on negligence, breach of warranty, strict liability, enterprise liability, or any other legal or equitable theory, and arising from or related to products (or parts or components thereof) distributed or otherwise disposed of or for services performed by Seller, to the extent any of such Liabilities result from or arise out of events, facts, or circumstances occurring or existing on or prior to the Closing, notwithstanding that the date on which any Proceeding or Claim therefor is commenced or made after the Closing;

      **(g)**   any of Seller's liabilities, including legal fees and expenses, for vacation pay, sick pay, holiday pay, salary, bonuses, severance pay, workers' compensation, benefits, fringe benefits or other payments or liabilities of any kind to any current or former employee of, or any party who was hired or engaged by, Seller, or under any employee benefit or Employee Benefit Plan, resulting from Seller's conduct before the Closing Date;

      **(h)**   any of Seller's liability for any expenses or fees related to the negotiation, preparation, approval, or execution of this Agreement or its transactions (including attorneys', accountants', and brokerage fees incurred by or charged to Seller);

      **(i)**   any of Seller's liabilities arising from conduct before the Closing, or the actions of its officers, directors, shareholders, employees, consultants, contractors, agents, or advisors; and

    **(j)**    any of Seller's other liabilities other than the Assumed Liabilities.

Seller acknowledges that it retains the Excluded Liabilities.

**1.6**   **Purchase Price**. The purchase price to be paid by Buyer to Seller for the Purchased Assets shall be Fifteen Million Seven Hundred Fifteen Thousand Seven Hundred Forty-Seven and 17/100 Dollars ($15,715,747.17) (the "Purchase Price"). The Purchase Price shall be paid as follows:

    **(a)**    A deposit of the Purchase Price in the amount of One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00) shall be paid by Buyer to Seller upon signing this Agreement ("Good Faith Deposit"), to be held in escrow by Seller's counsel (the "Escrow Agent") until Closing; and

    **(b)**    The balance of the Purchase Price of Fourteen Million Four Hundred Fifteen Thousand Seven Hundred Forty-Seven and 17/100 ($14,415,747.17) shall be paid by Buyer to Seller at Closing (the "Closing Payment").

The Good Faith Deposit shall be fully refundable as set forth in Article IX herein. The Parties acknowledge and agree that the Good Faith Deposit shall not be deemed to constitute property of the Estate under the Bankruptcy Code, that Seller's Estate shall have no interest of any kind under Chapter 5 of the Bankruptcy Code or applicable law (equitable or otherwise) in and to the Good Faith Deposit and that the Escrow Agent expressly shall hold the Good Faith Deposit in trust in accordance with this Agreement. In the event that Buyer purchases the Purchased Assets and the sale closes, then all Good Faith Deposit payments made by Buyer pursuant to the terms of this Agreement shall be credited to and offset against the Purchase Price and paid to the credit of Seller at the Closing.

**1.7**   **Allocation of Purchase Price**. The Allocation of the Purchase Price shall be determined by the Buyer as soon as commercially practicable, but no later than one hundred and eighty (180) days after the Closing. The Parties hereby agree that they shall file all federal, state, and local Tax Returns and reports in a manner consistent with such allocation, and that neither Party will assert or maintain a position inconsistent with such allocation in any administrative or judicial proceeding, including any tax audit or tax proceeding.

**1.8**   **Transfer Taxes**. The Party that is required by applicable Law to pay any and all bulk sale, stamp, documentary, filing, recording, registration, sales, use, transfer, added-value or other non-income Tax, fee, or governmental charge imposed under applicable Law in connection with the transactions contemplated hereby (the "Transfer Taxes") shall be responsible for paying that Party's Transfer Taxes. The Party that is required by applicable Law to file any Tax Returns in connection with Transfer Taxes described in the immediately preceding sentence shall prepare and timely file such Tax Returns. Buyer shall be entitled to receive such Tax Returns and other documentation reasonably in advance of filing by the Seller, but not less than ten (10) Business Days prior to the due date of such Tax Returns, and such Tax Returns and other documentation shall be subject to Buyer's approval, which shall not be unreasonably withheld, delayed, or conditioned.  Buyer and Seller shall cooperate in making, in a timely manner, all Tax Returns, filings, reports, forms and other documentation as are necessary or appropriate to comply with all

applicable Laws in connection with the payment of Transfer Taxes and shall cooperate in good faith to minimize, to the fullest extent possible under such Laws, the amount of any such Transfer Taxes.

**1.9** **Proration**. All monthly payments (the "Prorated Charges") for the month in which the Closing occurs (including utility charges) shall be apportioned and prorated between Seller and Buyer as of the Closing Date with (i) Buyer bearing the expense of Buyer's proportionate share of such Prorated Charges that shall be equal to the product obtained by multiplying (A) a fraction, the numerator being the amount of the Prorated Charges and the denominator being the total number of days in the month in which the Closing occurs, times (B) the number of days in such lease following the day that immediately precedes the Closing Date and paying such amount to Seller to the extent payment for such Prorated Charges has been made by Seller prior to the Closing, and (ii) Seller bearing the remaining portion of such Prorated Charges (and paying the amounts thereof to Buyer to the extent payment for such Prorated Charges has not been previously made by Seller). Seller shall be responsible for any and all taxes and assessments, including any interest, penalties or fees, incurred prior to the Closing and any transfer taxes associated with the transfer of the Real Property to Buyer. Buyer shall be responsible for all taxes and assessments accruing after the Closing. The Closing statement to be prepared by Buyer's title company (the "Title Company") shall reflect such proration based on the most recent and available tax rate and valuation. Any other costs or expenses, if any, shall be allocated between and charged to Buyer and Seller in accordance with the Title Company's usual practices. Seller shall be responsible for the cost of the preparation and delivery of all documents to be furnished by Seller. Buyer shall be responsible for the cost of recording the deed and the cost of purchasing a title insurance policy. The Closing fee of the Title Company will be split equally between Buyer and Seller. Except as set forth in this Section 1.9, no amounts paid or payable under or in respect of any Purchased Asset or group of Purchased Assets shall be apportioned and prorated between Seller and Buyer.

**1.10** **Sales Tax**. Buyer shall be responsible for and pay any and all sales tax due and payable in connection with the transactions contemplated by this Agreement.

## ARTICLE II
## CLOSING

**2.1** **Closing**. The consummation of the transactions contemplated hereby (the "Closing") shall take place on or before January 31, 2025, pursuant to the Sale Approval Order (or on such other date as may be agreed by the Parties and/or ordered by the Court (conditioned, if applicable, upon the Bankruptcy Court making a finding under Fed. R. Bankr. P. 6004(h)) (the "Closing Date")).

**2.2** **Deliveries to be Made by Seller at Closing**. At the Closing, Seller shall deliver the following to Buyer or the Title Company, as the case may be, all of which shall be properly authorized and executed by Seller and acceptable to Buyer in its sole and absolute discretion:

    **(a)**    possession of the Purchased Assets;

    **(b)**    a bill of sale and/or such endorsements, assignments, and other good and sufficient instruments of conveyance and transfer as Buyer may deem desirable in a form

reasonably satisfactory to Buyer, conveying title from Seller to Buyer to the Purchased Assets other than the Real Property, free and clear of any and all Liens;

(c)    the Trustee's Deed or such other instruments customarily utilized to effectuate a "drop-down LLC transaction;

(d)    a Closing statement;

(e)    such affidavits, certifications and other documentation evidencing the authority of the person executing the Trustee's Deed and other documents on behalf of Seller in a form acceptable to Buyer;

(f)    such affidavits and certificates satisfactory to Buyer which address whether any taxes are due or should be withheld under the laws of the state in which the Real Property is located upon the sale of the Real Property;

(g)    such additional affidavits, documents and instruments as the Title Company may require to transfer Seller's interest in the Real Property pursuant to the terms of this Agreement, each of which shall be in form and substance reasonably satisfactory to the Title Company and Buyer;

(h)    if the Sale Approval Order does not authorize a sale free and clear of all Liens (other than any liens for *ad valorem* taxes falling due after Closing or any additional exceptions approved by Buyer in writing or otherwise required by law (collectively, "Permitted Liens")) affecting the Real Property to the maximum extent permitted by Section 363 of the Bankruptcy Code, then to Buyer, releases and termination statements with respect to all Liens (other than Permitted Liens) on the Purchased Assets; provided, however, nothing in this Section 2.2(h) shall obligate Buyer to proceed to Closing if the Sale Approval Order does not authorize a sale free and clear of all Liens (other than Permitted Liens) to the maximum extent permitted by Section 363 of the Bankruptcy Code;

(i)    such other documents of assignment and transfer as may be reasonably required to vest all right, title, and interest of Seller in and to the Purchased Assets in Buyer;

(j)    an assignment and assumption agreement relating to the Assumed Contracts in a form reasonably satisfactory to Buyer (the "Assignment and Assumption Agreement") duly executed by Seller;

(k)    resolution of the board of directors of Seller authorizing the execution and delivery of this Agreement and all documents contemplated hereby and consummation of the transaction contemplated herein;

(l)    an executed certificate of Seller to the effect that, as of the Closing Date, all representations and warranties of Seller contained in this Agreement are true and correct in all respects and that all of the covenants and agreements of Seller contained in this Agreement to be performed or satisfied before the Closing Date have been performed or satisfied before the Closing Date;

8

**(m)**    an information reporting form for purposes of preparing an IRS Form 1099-S; and

**(n)**    such other documents as shall be reasonably requested by Buyer or its counsel in connection with the transactions contemplated by this Agreement.

**2.3**    **Deliveries to be Made by Buyer at the Closing**. At the Closing, Buyer shall deliver the following to Seller:

**(a)**    the Closing Payment;

**(b)**    the Assignment and Assumption Agreement;

**(c)**    resolutions of the Buyer authorizing the execution and delivery of this Agreement and of all documents contemplated hereby and consummation of the transaction contemplated herein;

**(d)**    an executed certificate of Buyer to the effect that, as of the Closing Date, all representations and warranties of Buyer contained in this Agreement are true and correct in all respects and that all of the covenants and agreements of Buyer contained in this Agreement to be performed or satisfied before the Closing Date have been performed or satisfied before the Closing Date; and

**(e)**    such other documents as shall be reasonably requested by Seller or its counsel in connection with the transactions contemplated by this Agreement.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

As an inducement to Buyer to enter into this Agreement, Seller hereby represents and warrants to Buyer as of the Effective Date and as of the Closing Date, as if such representations and warranties had been made at the Closing Date, as follows:

**3.1**    **Organization and Authority**. Seller is a corporation duly organized, validly existing, and in good standing under the laws of the State of New Jersey. This Agreement and Seller's execution thereof has been duly authorized by all necessary corporate action. Seller has obtained and currently maintains all qualifications to do business as a foreign entity in all other jurisdictions in which the character of Seller's properties or the nature of Seller's activities require it to be so qualified. Subject to entry of the Sale Approval Order by the Bankruptcy Court, Seller has the full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated herein. Subject to entry of the Sale Approval Order by the Bankruptcy Court, this Agreement constitutes a legal, valid, and binding agreement of Seller that is enforceable in accordance with its terms.

**3.2**    **Governmental Authorization**. The execution, delivery, and performance by Seller of this Agreement requires no action by, or filing with, any governmental body, agency, or official, other than approvals of authorization by the Bankruptcy Court.

9

**3.3**     **Sufficiency of and Title to the Purchased Assets**. Seller has and, pursuant to the Sale Approval Order and upon Closing, Buyer shall acquire good, valid and marketable title in and to the Purchased Assets and the Real Property, free and clear of all Liens.

**3.4**     **Required Consents**. Except for consents, approvals or authorizations of, or declarations or filings with the Bankruptcy Court, there is no agreement or other instrument binding upon Seller requiring any consent, approval, notification, filing, registration, authorization, permission, license, requirement, or action by any third-party resulting from the execution, delivery, and performance of this Agreement.

**3.5**     **Assumed Contracts**. Seller has made available to Buyer a copy of all Assumed Contracts, together with all amendments, exhibits, attachments, waivers, or other changes thereto. Seller makes no representation or warranty with respect to the future performance of any parties to the Assumed Contracts. Seller makes no representation or warranty as to whether any Assumed Contracts can be assumed and assigned under applicable law, the terms of such Assumed Contract, or otherwise. Buyer acknowledges that the Bankruptcy Court may not approve assumption and assignment of all contracts designated by the Buyer hereunder and agrees to close on the sale notwithstanding such risk.

**3.6**     **Litigation**. Except for the litigations listed in Schedule 3.6, there is no action, suit, investigation or proceeding pending, against or, to the knowledge of Seller, threatened against or affecting Seller before any court or arbitrator or any governmental body, agency, or official, which in any manner challenges or seeks to prevent, enjoin, alter, or materially delay any transactions contemplated by this Agreement.

**3.7**     **Certain Fees**. Other than SSG Capital Advisors LLC, Seller has not employed any broker, finder, investment banker, or other intermediary or has not incurred any liability for any investment banking fees, financial advisory fees, brokerage fees, finders' fees, or other similar fees in connection with this Agreement or any transactions contemplated by this Agreement or the transactions this Agreement contemplates.

**3.8**     **Environmental Matters**. Seller is in compliance with all applicable Environmental Laws, Seller is not subject to any pending or threatened claim, action, suit, inquiry, investigation or proceeding under any Environmental Law and there has been no release of Hazardous Materials by Seller or otherwise arising in connection with the Business at any of the properties currently owned, operated or leased by the Business, including the Real Property.

**3.9**     **Tax Matters**. Except as would not reasonably be expected to be material to the Purchased Assets and the Business, taken as a whole:

**(a)**     Seller has timely paid or caused to be paid all taxes required to be paid by it through the date hereof.

**(b)**     Seller has timely filed or caused to be filed in a timely manner all tax returns (within any applicable extension periods) required to be filed by it with the appropriate governmental entities in all jurisdictions in which such tax returns are required to be filed.

**(c)**     Seller has not requested or caused to be requested any extension of time

within which to file any Tax Return and failed to file such Tax Return within the time allowed, other than for 2023.

(d)    All Tax Returns of Seller were complete in all material respects and correctly reflected in all material respects the information required to be shown therein. All Taxes shown to be due on such Tax Returns timely have been paid in full (except as prohibited by the Bankruptcy Code).

(e)    Seller has not been notified by any taxing authority that any issues have been raised or are pending before any taxing authority in connection with any Tax Return of Seller and no waivers of any statutes of limitations have been given or requested with respect to Seller.

(f)    There are no pending Tax audits of any Tax Returns of Seller.

(g)    There are no Tax liens on any of the Purchased Assets other than liens for Taxes not yet due, and no deficiency or addition to Taxes, interest, or penalties for any Taxes has been proposed, asserted, or assessed against Seller or any member of any affiliated or combined group of which Seller was or is a member.

(h)    Seller has complied in all material respects with all applicable Laws related to the collection or withholding of Taxes (such as sales Taxes or withholding of Taxes from the wages of employees), and Seller has not been and is not liable for any Taxes for failure to comply with Such Laws.

**3.10**    **Notices of Certain Events**. Seller shall promptly notify Buyer of:

(a)    Any notice or other written communication from any third-party alleging that the consent of such third-party is or may be required in connection with the consummation of the transactions contemplated by this Agreement; and

(b)    Any material written communication from any governmental or regulatory agency or authority in connection with or relating to the transactions contemplated by this Agreement.

**3.11**    **Intellectual Property**. Seller owns or possesses sufficient legal rights to the IP Assets set forth in Section 1.1(a)(v) necessary for the conduct of the Business as presently conducted and as proposed to be conducted, without any known infringement of the rights of others. Other than as set forth on Exhibit 3.11, there are no outstanding options, licenses, or agreements of any kind relating to the foregoing proprietary rights, nor is Seller bound by or a party to any options, licenses, or agreements of any kind with respect to the IP Assets of any other third-party, other than such licenses or agreements arising from the purchase of currently-available, off-the-shelf software programs. There is no pending or, to the best of Seller's knowledge, threatened opposition, interference, or cancellation proceeding before any Governmental Entity or registration authority in any jurisdiction against any of the IP Assets, including, without limitation, the Intellectual Property Rights. Seller has at all times complied in all material respects with all applicable Laws, as well as its own rules, policies and procedures (including any self-imposed industry regulations to which the Business has represented its compliance), related to privacy, data protection and the collection and use of personal information

collected, used or held for use by Seller in connection with the Business. No Claims are pending or, to the best of Seller's knowledge, threatened against Seller alleging a violation of any person's privacy or personal information or data rights in connection with the Business, and the consummation of the transactions contemplated hereby will not breach or otherwise cause any material violation of any Law, policy or procedure related to privacy, data protection or the collection and use of personal information collected, used or held for use by Seller in connection with the Business.

      **3.12**   **Inventory**. All Inventory is owned by Seller and, when conveyed by Seller to Buyer, will be owned by Buyer free and clear of all Liens.

      **3.13**   **Real Property**.

      **(a)**   The Real Property abuts or has a right of access to a public road;

      **(b)**   Seller is the sole owner of the Real Property and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this Agreement;

      **(c)**   Seller is not a "foreign person", as that term is defined for purposes of the FIRPTA;

      **(d)**   Seller has been known by no other name for the past ten years, except Plastic Suppliers, Inc.;

      **(e)**   There are no known outstanding violations of (i) any building, fire, safety, or health codes; (ii) Americans with Disabilities Act, disabled persons, or handicappers' rights laws; or (iii) zoning ordinances; or licensing laws of any municipal or governmental authority whatsoever, and the Real Property is properly zoned for operation of manufacturing facility of the type and size located on the Real Property and does not constitute a nonconforming use. To the extent any of the representations in this subsection are not true as of the Closing Date, Seller will correct any known violations as a condition to Closing. If required, on the Closing Date, Seller will have all current licenses and certificates of occupancy necessary to operate the Subject Premises, and all of them will be in good standing without special notations. If any state or local governmental authority requires inspections of the Real Property before transfer, including but not limited to environmental investigations, Buyer will arrange for any inspections provided Seller will be solely responsible for the costs associated with completing any work required by the governmental authority;

      **(f)**   The Real Property is serviced by municipal sewer and water systems, and both systems, together with all electrical and other mechanical and utility systems serving the Real Property, are, to the best of Seller's reasonable knowledge, in sound operating condition;

      **(g)**   There are no assessments, charges, paybacks, or obligations for improvements or services affecting the Real Property;

      **(h)**   All of Seller's leases, financial information, books and records, and tax returns provided to Buyer or otherwise are true, correct, and accurate in all material respects;

**(i)**        Seller has not received any written notice of any lawsuits, tax appeals, condemnation proceedings, or environmental investigations pending or, to Seller's best knowledge, affecting the Real Property or Seller's ability to convey same. Seller has not received any written notice of any pending or threatened condemnation or similar proceeding or pending public improvements to or adjoining the Real Property which will in any manner affect the Real Property;

**(j)**        There is no illegal chemical, radioactive, toxic, or otherwise hazardous material, substance, or waste, whether liquid, solid, gaseous, or otherwise, stored or disposed of in, on, under, the Real Property (including buildings on the Real Property);

**(k)**        The improvements located on the Real Property, are free from molds and water infiltration;

**(l)**        The Real Property do not contain any insulation or fire-retardant material that consists, in whole or in part, of asbestos or urea-formaldehyde or any electrical transformers containing PCBs;

**(m)**        Seller has not been painted with lead-based paint. Seller has no knowledge of the current or prior existence on the Real Property of any underground storage tank of any kind or size; and

**(n)**        Seller, including its partners, members, principal stockholders and any other constituent entities (i) has not been designated as a "specifically designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at its official website, http://www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf or at any replacement website or other replacement official publication of such list and (ii) is currently in compliance with and will at all times during the term of this Agreement (including any extension thereof) remain in compliance with the regulations of the Office of Foreign Asset Control of the Department of the Treasury and any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action relating thereto.

Seller covenants and warrants that all of the representations and warranties set forth in this Agreement shall be true and correct at Closing.

**3.14    Compliance with Law; Permits**. Seller has conducted the Business in compliance in all material respects with, and is in material compliance with, all applicable Laws, Orders, and Permits in all jurisdictions in which it carries on the Business. Seller has not received notice of any investigation with respect to any alleged default under, or any violation or nonconformity with any Law with respect to the Business. Seller has all Permits which are required for the ownership of the Purchased Assets or the conduct of the Business as presently conducted. Seller is not in violation of any material term or provision or requirement of any of such Permits, such Permits are in full force and effect and no Person has threatened to revoke, amend, or impose conditions in respect of any of such Permits.

**3.15** <u>**No Written Employment Agreements**</u>. Seller has written employment agreements with certain of its officers or employees; those agreements may be assumed, at Buyer's sole and absolute discretion, as Assumed Contracts.

**3.16** <u>**No Collective Bargaining Agreements**</u>. Seller is not a party to any collective bargaining or other labor union contracts with respect to the Seller's employees, no collective bargaining agreement is being negotiated by the Company, and no campaign or other attempt for recognition has been made by any labor organization with respect to the Seller's employees.

**3.17** <u>**No Other Representations or Warranties**</u>. **The Purchased Assets are being sold "as is," "where is," and "with all faults," and Buyer, or any ultimate highest bidder pursuant to any Auction or order of the Bankruptcy Court, hereby acknowledges and agrees that, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Purchased Assets.  Buyer will accept the Purchased Assets "as is" and "where is" at closing.**

**3.18** <u>**Conduct of Business**</u>. From the Effective Date through the Closing Date, Seller shall (i) carry on the Business and use the Purchased Assets in the usual and normal course consistent with its past business practices, including, without limitation, to maintaining the Purchased Assets in the usual and normal course consistent with its past business practices (including by replenishing any inventory utilized or sold to fulfill customer orders) and (ii) use its commercially reasonable efforts to preserve the present (A) business operations, organization, and goodwill of the Business, and (B) relationships with material vendors and suppliers of the Business.  Prior to the Closing, Seller shall not: (i) other than in the ordinary course of business or as required by applicable Law or pursuant to any contract or policy in effect as of the date of this Agreement, (A) materially increase the annual level of compensation of any employee or (B) materially increase the coverage or benefits available under any (or create any new) employee benefit plan; (ii) subject any of the Purchased Assets to any Lien not in existence as of the Effective Date; (iii) other than in the ordinary course of business, sell, transfer, assign, license, sub-license, otherwise dispose of, or cause to be suffered any damage to any Purchased Asset; or (iv) terminate any employee without the Buyer's consent (not to be unreasonably withheld) on five (5) days' prior written notice.

**3.19** <u>**General Warranty**</u>. None of the representations or warranties contained herein by Seller, nor any exhibit, schedule, statement, or certificate furnished to or to be furnished by Seller to Buyer pursuant to the terms hereof or in connection with the transactions contemplated herein, contains or will contain any knowingly untrue statement of a material fact or knowingly omits or will omit to state a material fact necessary to make the statements contained or incorporated herein or therein not misleading.

**ARTICLE IV**
<u>**REPRESENTATIONS AND WARRANTIES OF BUYER**</u>

**4.1** <u>**Organization and Authority**</u>. Buyer is a corporation duly organized, validly existing, and in good standing under the laws of the State of Delaware. Buyer has the full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated herein and have been duly authorized by all necessary action on the part of Buyer.

Subject to entry of the Sale Approval Order by the Bankruptcy Court, this Agreement constitutes a legal, valid, and binding agreement of Buyer that is enforceable in accordance with its terms.

**4.2** **No Conflicts**. The execution, delivery, and performance of this Agreement by Buyer will not (i) violate any provision of any existing law, statute, rule, regulation, or ordinance, or (ii) conflict with, result in a breach of, or constitute a default under (a) any certificate or articles of incorporation or by-laws of Buyer, (b) any order, judgment, award or decree of any court, governmental authority, bureau or agency, or (v) any mortgage, indenture, lease, contract or other agreement, or undertaking to which Buyer is a party or by which Buyer of any of its properties or assets may be bound.

**4.3** **Investigation by Buyer**. Buyer has conducted its own independent review and analysis of the Purchased Assets, the Assumed Liabilities, and the Assumed Contracts. In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that Seller (nor its professionals) does not make nor has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer, except for the representations and warranties contained in Section 3.1 (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that Seller shall have no liability or responsibility whatsoever to Buyer on any basis (including, without limitation, in contract or tort, under federal or state securities laws, tax laws or otherwise) based upon any information provided or made available, or statements made, to Buyer including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in Section 3.1 and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

**4.4** **Sufficient Funds; Adequate Assurance**. Buyer has and will have at the Closing immediately available funds sufficient for the satisfaction of all of its obligations under this Agreement, including payment of the Purchase Price. Buyer is capable of satisfying the conditions contained in sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Assumed Contracts and Assumed Liabilities.

**4.5** **Litigation**. As of the date hereof, there is no action, suit, investigation or proceeding pending, against or, to the knowledge of Buyer, threatened against or affecting Buyer before any court or arbitrator or any governmental body, agency, or official, which in any manner challenges or seeks to prevent, enjoin, alter, or materially delay any transactions contemplated by this Agreement.

**4.6** **Certain Fees**. Buyer has not employed any broker, finder, investment banker, or other intermediary or has not incurred any liability for any investment banking fees, financial advisory fees, brokerage fees, finders' fees, or other similar fees in connection with this Agreement or any transactions contemplated by this Agreement.

**4.7** **Required Consents**. Except for consents, approvals or authorizations of, or declarations or filings with the Bankruptcy Court, there is no agreement or other instrument binding upon Buyer requiring any consent, approval, notification, filing, registration,

authorization, permission, license, requirement, or action by any third-party resulting from the execution, delivery, and performance of this Agreement.

**4.8** **General Warranty**. None of the representations or warranties contained herein by Buyer, nor any exhibit, schedule, statement, or certificate furnished or to be furnished by Buyer to Seller pursuant to the terms hereof or in connection with the transactions contemplated herein, contains or will contain any knowingly untrue statement of a material fact or knowingly omits or will omit to state a material fact necessary to make the statements contained or incorporated herein or therein not misleading.

## ARTICLE V
## COVENANTS OF SELLER AND BUYER

**5.1** **Efforts; Further Assurances**. Seller and Buyer will use commercially reasonable efforts to take any and all actions and to do all things necessary or desirable under applicable laws and regulations to consummate the transactions contemplated in this Agreement. Seller and Buyer agree to execute and deliver such other documents, certificates, agreements, and other writings and to take such other actions as may be necessary or desirable in order to vest marketable title to the Purchased Assets in Buyer.

**5.2** **Notices**. If (i) Buyer becomes aware of any material breach by Seller of any representation, warranty, covenant, or agreement contained herein and such breach is capable of being cured by Seller, or (ii) Seller becomes aware of any material breach by Buyer of any representation, warranty, covenant, or agreement contained herein and such breach is capable of being cured by Buyer, the Party becoming aware of such breach shall promptly notify the other Party in writing, in accordance with Section 11.2 of this Agreement. Upon such notice of breach, the breaching Party shall have five (5) days to cure such breach before the exercise of any remedies in connection therewith.

**5.3** **Pre-Closing Covenants**. As material terms of this Agreement:

**(a)** Subject to Seller's covenant in Section 5.3(c) herein, Seller shall obtain for the benefit of Buyer an update of the existing Phase I/II environmental reports ("Existing Reports") relating to the Real Property (collectively, an "Inspection") within fourteen (14) days from the Effective Date"). Buyer's representative shall be entitled, at its option, to attend the Inspection and to receive a copy of the updated report ("Updated Report"). Seller acknowledges that despite the parties' reasonable best efforts, given the intervening holidays, the Updated Report may not be obtained within said fourteen (14) days. Accordingly, the date from the Effective Date until the date on which the Updated Report is obtained shall be referred to as the "Inspection Period".

**(b)** If the conclusions, opinions or recommendations set forth in the Updated Report reflect the existence of one or more significant environmental conditions which were not disclosed in the Existing Reports of Seller (even if arising prior to those Existing Reports), which reports Buyer has had the opportunity to review in the "data room," and by reason of the existence of such environmental conditions the licensed engineering firm includes in the Updated Report a recommendation for further investigation, testing or remediation, Buyer shall have the right, upon

at least two (2) business days advance written notice to Seller, after the expiration of the Inspection Period, to terminate this Agreement, and the Good Faith Deposit shall be returned promptly to Buyer and, thereafter, neither Party shall have any further rights or obligations to the other hereunder except those expressly stated to survive the termination of this Agreement. Nothing in this Section 5.3, including but not limited to any environmental report or findings, shall entitle the Buyer to a reduction of the Purchase Price.

(c)      From the Effective Date until the Closing Date, Seller shall provide reasonable access to the Seller's employees, facilities at which the Business is conducted, and the Purchased Assets (including, but not limited to, for the Inspection).

(d)      From the Effective Date until the Closing Date, Seller will operate, repair, and maintain the Real Property in the manner consistent with its standards of operation and maintenance prevailing immediately prior to the Effective Date and it will not commit or permit to be committed any waste or change in the condition or appearance of the Real Property, or convey any other right with respect to the Real Property except with the written consent and joinder of Buyer. Seller will keep all current insurance policies concerning the Real Property in full force and effect until Closing. Buyer and Seller, or its representative, shall have the right to walk the Real Property the day before the Closing Date, unless otherwise waived by Buyer in writing, exercising is sole discretion.

(e)      Seller must not transfer any of the Real Property, create any Lien on the Real Property, grant any easements or rights-of-way, or enter into any contract, which is not cancelable on and as of the Closing Date.

5.4      **Post-Closing Covenants**. As material terms of this Agreement:

(a)      Immediately upon the consummation of the Closing, the Parties agree to cooperate with one another and use all good faith efforts to take (or cause to be taken) all actions, and to do (or cause to be done) all things reasonably necessary or proper or advisable under applicable Laws to consummate and make effective the transactions contemplated by this Agreement, including, without limitation, (i) providing access and title to the Purchased Assets to Buyer; and (ii) assisting Buyer with obtaining access and control over all digital profiles associated with Seller to which Seller does not have access or control, including, without limitation, to Instagram, LinkedIn, Google, Blue Book Building & Construction Network, CIS Leads, Yelp, Yahoo Local, and Mapquest profiles.

(b)      **Use of Name**. Seller shall file an amendment to its certificate of incorporation and all other documents necessary to operate under a different name bearing no similarity to "Plastic Suppliers," including without limitation to its "doing business as" name, within five (5) business days following the Closing.

## ARTICLE VI
## BANKRUPTCY MATTERS; BIDDING PROCEDURES

6.1      **Bankruptcy Filings**. Seller shall deliver or cause to be delivered to Buyer for review and comment, as soon as commercially reasonable and in any event not less than two (2) business days prior to the filing thereof, all documents to be filed on behalf of Seller with the

Bankruptcy Court, including all motions, applications, petitions, schedules, and supporting papers prepared by Seller (including forms of orders and notices to interested parties) that relate to, or that may affect, the Purchased Assets or the transactions contemplated hereby. All motions, applications, petitions, schedules, and supporting papers prepared by Seller and relating to the transactions contemplated hereby or the Purchased Assets to be filed with the Bankruptcy Court on behalf of Seller must be reasonably satisfactory in form and substance to Buyer and Seller.

6.2    **Sale Approval Order**.  Seller and Buyer shall use commercially reasonable efforts to cooperate, assist and consult with each other to secure the entry of the Sale Order following the date hereof, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes of, among others, providing necessary assurances of performance by Buyer under this Agreement and furnishing any testimony regarding the transactions contemplated hereby, including to support the good-faith nature of the negotiations leading to this Agreement

6.3    **Breakup Fee and Expense Reimbursement**. The Breakup Fee and Expense Reimbursement shall constitute an allowed, super-priority administrative expense claim against Seller's Estate pursuant to sections 363, 503(b) and 507(a)(2) of the Bankruptcy Code.

# ARTICLE VII
# EMPLOYEE MATTERS

7.1    Buyer is not obligated to hire any employee of Seller but may accept applications from all active and full-time employees of Seller and interview same. Buyer may hire such employees (whether former employees of Seller or otherwise) as Buyer may choose in its sole and absolute discretion and may set its own initial terms and conditions of employment for such employees, including work rules, benefits, salary, and wage structure, as permitted by applicable law.

# ARTICLE VIII
# CLOSING CONDITIONS

8.1    **Conditions to Obligations of Buyer and Seller**.  The obligations of Buyer and Seller to consummate the transactions contemplated in this Agreement are subject to the satisfaction of the following conditions:

(a)    The Bankruptcy Court shall have entered the Sale Approval Order and, as of the Closing Date, the Sale Approval Order shall be in full force and effect and shall  not have been stayed, vacated, or reversed. The Sale Approval Order shall be in form and substance reasonably acceptable to Seller and Buyer and shall, *inter alia*:

(i)    Authorize the Seller's execution and delivery of this Agreement and approve the transactions contemplated herein;

(ii)    Find that the transfer of the Purchased Assets is legal, valid, and enforceable and vests Buyer with valid title to the Purchased Assets, free and clear of all Liens (except for any Permitted Liens), with Liens to attach to the proceeds of sale;

(iii)    Find that the Purchase Price and other consideration provided by Buyer hereunder constitute fair and reasonable consideration for the Purchased Assets;

(iv)    Provide that Buyer is a good faith purchaser of the Purchased Assets pursuant to Section 363(m) of the Bankruptcy Code and none of the grounds set forth in Section 363(n) exists with respect to the sale;

(v)    Authorize Buyer to file, if desired in its discretion, terminations or cancellations of any recorded Liens (except for Permitted Liens or to the extent required by law) against the Real Property and require secured parties or lienholders, where required by applicable non-bankruptcy law or requested by Buyer, to execute documents of release, cancellation or satisfaction prepared by Buyer, to be filed by Buyer to clear any Liens of record (other than Permitted Liens) from the Real Property;

(vi)    Approve the assumption and assignment of any Assumed Contracts and provide that upon payment of the applicable Cure Costs (or other such agreed amount) by the Buyer or Seller, as applicable, such counterparty shall not have any remaining claim against Seller, its Estate or creditors, or Buyer related to any pre-Closing default under any such Assumed Contract;

(vii)    Find that Buyer has not assumed, and has no responsibility or liability for any of Seller's liabilities of any description whatsoever, including any pre-Closing liabilities not included in Cure Payments, for the Assumed Contracts, whether known or unknown as of the Closing, whether fixed or contingent, or whether existing at the time of or arising after the Closing, including successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, alter ego, successor or transferee liability, *de factor* merger, mere or substantial continuation; and

(viii)    Waive any stay that would otherwise be applicable pursuant to Rules 6004(h) or 6006(d) of the Federal Rules of Bankruptcy Procedure.

(b)    No injunction, stay, or similar order or decree issued by any court, tribunal or governmental entity, shall be in effect that restrains, enjoins, stays, or prohibits the consummation of the transactions contemplated by this Agreement.

**8.2    Conditions to Obligations of Buyer**.  The obligation of Buyer to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or waiver by Buyer) of the following further conditions:

(a)    Seller shall have performed in all material respects all of its obligations hereunder required to be performed by it at, or before, the Closing Date (including those set forth in Section 2.2 hereof); and

(b)    The representations and warranties of Seller contained in this Agreement shall be true and correct at, and as of the Closing Date, as if made at, and as of, the Closing Date.

**8.3    Conditions to Obligations of Seller**. The obligations of Seller to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or waiver by Seller)

of the following further conditions:

**(a)** Buyer shall have performed in all material respects all of its obligations hereunder required to be performed by it at, or before, the Closing Date; and

**(b)** The representations and warranties of Buyer contained in this Agreement shall be true and correct at, and as of the Closing Date, as if made at, and as of, the Closing Date.

## ARTICLE IX
## TERMINATION

**9.1** <u>**Grounds for Termination**</u>. This Agreement may be terminated at any time before Closing by:

**(a)** mutual written agreement of Seller and Buyer;

**(b)** either Buyer or Seller, upon the issuance of an Order by a court of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Closing or declaring unlawful the Transactions, and such Order having become final, binding and non-appealable; provided that no Party may terminate this Agreement under this Section 9.1(b) if the issuance of such Order was caused by such Party's failure to perform any of its obligations under this Agreement;

**(c)** either Buyer or Seller, if the Closing shall not have occurred on or before February 15, 2025, or such later date that is fourteen (14) days after the Closing Date (the "<u>Outside Date</u>"); provided that a Party shall not be permitted to terminate this Agreement pursuant to this Section 9.1(c) if the failure of the Closing to have occurred by the Outside Date was caused by such Party's failure to perform any of its obligations under this Agreement;

**(d)** Buyer, if any material condition set forth in this Agreement has not been satisfied by Seller, and such condition is incapable of being satisfied, unless Buyer elects to waive such satisfaction;

**(e)** Seller, if any material condition set forth in this Agreement has not been satisfied by Buyer, and such condition is incapable of being satisfied, unless Seller elects to waive such satisfaction;

**(f)** Buyer, if Buyer is not the successful bidder or the backup bidder at the Auction and Seller enters into a Competing Transaction with the successful bidder or the backup bidder;

**(g)** Buyer, if the Bankruptcy Case is dismissed or converted to a case or cases under chapter 7 of the Bankruptcy Code, or if a trustee or examiner with expanded powers to operate or manage the financial affairs or reorganization of the Seller is appointed in the Bankruptcy Case;

**(h)** Buyer if Seller withdraws or seeks authority to withdraw the Bidding

Procedures/Sale Motion.

The Party desiring to terminate this Agreement under this Section 9.1 shall give notice of such termination to the other Party in accordance with Section 11.2.

**9.2    Effect of Termination**.

(a)    If this Agreement is terminated by Buyer in accordance with Section 9.1(d), Buyer shall be entitled to the return of the Good Faith Deposit as Buyer's sole remedy.

(b)    If this Agreement is terminated by Seller in accordance with Section 9.1(e), Buyer shall forfeit the Good Faith Deposit and the Good Faith Deposit shall become property of Seller's Estate as liquidated damages.

(c)    If this Agreement is terminated in accordance with any other subsection of Section 9.1, such termination shall be without liability of any Party to the other Party to this Agreement (except as set forth in Section 9.2(d) and (e) below), and the Good Faith Deposit will be returned to Buyer.

(d)    If this Agreement is terminated under Section 9.1(f), then the Seller shall pay to Buyer by wire transfer of immediately available funds at the Closing on the Competing Transaction, to an account designated by Purchaser in writing to Seller, (i) an amount equal to the reasonable and documented out-of-pocket costs and expenses (including fees and expenses of counsel) incurred by Buyer in connection with the negotiation, diligence, execution, performance and enforcement of this Agreement, which amount shall not exceed $200,000 (the "Expense Reimbursement"), and (ii) a break-up fee in an amount equal to three percent (3%) of the Purchase Price (the "Breakup Fee"); provided that the Expense Reimbursement and Breakup Fee shall be payable only out of the cash proceeds of a Competing Transaction.

(e)    Each of the Parties acknowledges and agrees that the agreements contained in Section 9.2(d) are an integral part of this Agreement and that the Breakup Fee and Expense Reimbursement are not a penalty, but rather represent liquidated damages in a reasonable amount that will reasonably compensate Buyer in the circumstances in which such and Breakup Fee and Expense Reimbursement, as applicable, are payable for the efforts and resources expended and opportunities foregone by Buyer while negotiating and pursuing this Agreement and in reasonable reliance on this Agreement and on the reasonable expectation of the consummation of the transactions hereunder, which amount would otherwise be impossible to calculate with precision.

# ARTICLE X
## ASSUMPTION OF EXECUTORY CONTRACTS OF THE SELLER

**10.1** **Assumed Contracts**. Seller shall be response for payment of all Cure Costs related to Assumed Contracts which are Leases of the Seller. Buyer shall be responsible for all other Cure Costs.

# ARTICLE XI
## MISCELLANEOUS

**11.1** **Further Assurances**. After the Closing Date, each Party shall execute and deliver such further documents, and perform such acts, as may be reasonably necessary to transfer and convey the Purchased Assets to Buyer on the terms contained herein, and to otherwise comply with the terms of this Agreement and to carry out the transactions provided for herein.

**11.2** **Notices**. All notices, requests, and other communications to any Party hereunder shall be in writing (including facsimile or e-mail transmission) and shall be given:

| | |
|---|---|
| If to Seller, to: | Plastic Suppliers, Inc.<br>Attn: Michael DuFrayne, CEO<br>2400 Marilyn Ln.<br>Columbus, OH 43219 |
| With a copy to (which shall not constitute notice): | Stephen M. Packman, Esq.<br>Douglas G. Leney, Esq.<br>Archer & Geiner, P.C.<br>Three Logan Square<br>1717 Arch St., Suite 3500<br>Philadelphia, PA 19103<br>spackman@archerlaw.com<br>dleney@archerlaw.com |
| If to Buyer, to: | API Industries, Inc. d/b/a Aluf Plastics<br>Attn:  Tim Fischer, CFO<br>2 Glenshaw Street<br>Orangeburg, NY 10962 |
| With a copy to (which shall not constitute notice): | Ilana Volkov, Esq.<br>McGrail & Bensinger LLP<br>888-C 8th Avenue #107<br>New York, NY 10019<br>ivolkov@mcgrailbensinger.com |

All such notices, requests, and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5:00 p.m. in the place of receipt and such day is a business day in the place of receipt. Otherwise, any such notice, request, or communication shall be deemed not to have been received until the next succeeding business day in the place of receipt.

**11.3    Bulk Sales Laws**. The Parties hereby waive compliance with the provisions of any bulk sales, bulk transfer, or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

**11.4    Expenses**.  Except as otherwise provided herein, each of the Parties shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal, accounting and other professional fees, whether or not the transactions contemplated hereby are consummated.

**11.5    Waivers**. No failure or delay by any Party in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

**11.6    Successors and Assigns**. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. Seller acknowledges that Buyer may assign its rights under this Agreement to an entity or entities to be formed, however, such assignment shall not release Buyer from its obligations hereunder. Seller may not assign, in whole or in part, this Agreement or its rights hereunder without the prior written consent of Purchaser.

**11.7    Assumption of Risk**. Seller agrees to assume the risk of loss or damage to the Real Property occurring on or before the date on which title thereof is conveyed to Buyer. If, prior to its conveyance, all or any portion of the Real Property is the subject of a pending or contemplated taking by eminent domain which has not been consummated or if the Real Property has been damaged or destroyed, Seller shall notify Buyer of such fact and Buyer shall have the option to terminate this Agreement and, in the event Buyer shall elect to terminate this Agreement, the Good Faith Deposit together with all interest earned thereon shall promptly be returned to Buyer.  If this Agreement is terminated and the Good Faith Deposit together with accrued interest is returned, as aforesaid, neither Party shall have any further rights or obligations hereunder. If, after receipt of Seller's notice, as aforesaid, Buyer does not exercise its option to terminate this Agreement, the Parties hereto shall remain bound hereunder and Seller shall assign and turn over, and Buyer shall be entitled to receive and keep, all awards for the taking by eminent domain described in said notice or all insurance proceeds payable as a result of such destruction or damage and any deductible due from Seller.

**11.8    Governing Law**. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the United States of America and the State of New Jersey (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code.  The parties hereto irrevocably

elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court and waive any right to a jury trial regarding the same.

**11.9    Entire Agreement; Amendments; Counterparts**. This Agreement sets forth the entire agreement between the Parties with respect to the subject matter hereof and may be amended only by in writing, executed by Seller and Buyer. This Agreement may be executed in counterparts, each of which shall constitute an original, and all of which together shall constitute one and the same instrument. This Agreement shall become effective when the Parties hereto shall have received a counterpart hereof signed by the other Party hereto.

**11.10    Captions; Headings; Interpretation**. The captions herein are included for convenience of reference only and shall be ignored in the construction or interpretation hereof. The headings contained in this Agreement are for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement. Whenever the words "include," "includes," or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of authorship of any provisions of this Agreement.

**11.11    Parties Bound**. The terms and conditions of this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, successors, and permitted assigns.

**11.12    Severability**. Except as otherwise provided herein, if any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable, such provision shall be automatically reformed and construed so as to be valid, operative, and enforceable to the maximum extent permitted by law or equity while preserving its original intent. The invalidity of any part or provision of this Agreement shall not render the remainder of this Agreement invalid.

**11.13    Retention of Jurisdiction**. **ANY AND ALL DISPUTES, DISAGREEMENTS, INTERPRETATIONS, OR OTHER MATTERS CONCERNING THE FINAL CONSUMMATION AND ENFORCEMENT OF THIS AGREEMENT SHALL BE AND REMAIN IN THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT AND, AS A RESULT THEREOF, ANY PLEADINGS, CAUSES OF ACTION OR OTHER REQUESTS FOR RELIEF MUST BE BROUGHT BEFORE SAID COURT BY THE PARTY SEEKING SUCH RELIEF.**

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the date first written above.

**SELLER:**
**Plastic Suppliers, Inc.**


By:_____
Name: Michael DuFrayne
Title: President and CEO


**BUYER:**
**API Industries, Inc. d/b/a Aluf Plastics**, on behalf of itself and its designees


By:_____
Name: Susan Rosenberg
Title:   President and CEO

## ANNEX I

## CERTAIN DEFINITIONS

"Auction" means an auction to be held by the Seller in the event higher and better bids are submitted in accordance with the Bidding Procedures.

"Avoidance Action" means all claims and causes of action of Seller under Chapter V of the Bankruptcy Code.

"Bidding Procedures" means the procedures governing the proposed marketing of, auction of, and bidding for the Purchased Assets pursuant, and attached, to the Bidding Procedures Order.

"Bidding Procedures/Sale Motion" means the motion seeking entry of (i) the Bidding Procedures Order and (ii) Sale Approval Order, which shall be in form and substance reasonably satisfactory to the Seller and Buyer.

"Bidding Procedures Order" means an Order of the Bankruptcy Court approving the Bidding Procedures, in the form attached as **Exhibit B** hereto, which shall include approval of the Breakup Fee and Expense Reimbursement.

"Business Day" means any day that is not a Saturday, Sunday, or a day on which banking institutions in New York, New York are not required to be open.

"Claim" means any claim, demand, assessment, judgment, order, decree, action, cause of action, litigation, suit, investigation, or other Proceeding.

"Competing Transaction" shall mean a transaction with a bidder who has offered Seller a higher and better purchase price for the Purchased Assets to that offered by Seller, which higher and better bid is approved by order of the Bankruptcy Court.

"Cure Costs" means all amounts payable in order to cure any monetary defaults required to be cured under section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by Debtor and assignment to Buyer of the Assumed Contracts.

"Environmental Laws" means any and all Laws of any Governmental Authority relating to pollution, protection of human health or safety, or the environment.

"Estate" shall mean the Seller's bankruptcy estate consisting of all assets, rights and interests of the Debtor on the Petition Date in the Bankruptcy Case.

"Final Order" means an order or judgment, the operation or effect of which is not stayed, and as to which order or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired, and as to which no appeal or petition for review or motion for re-argument has been taken or been made and is pending for argument.

"<u>Governmental Entity</u>" means any federal, state, local or foreign political subdivision, court, administrative agency, board, bureau, commission, or department or other governmental authority or instrumentality.

"<u>Hazardous Materials</u>" means: (A) any "waste," "hazardous waste," "industrial waste," "solid waste," "hazardous material," "hazardous substance," "toxic substance," "hazardous material," "pollutant," or "contaminant," as those or similar terms are defined, identified, or regulated under Environmental Laws; (B) any asbestos, polychlorinated biphenyls, or radon; (C) any petroleum, petroleum hydrocarbons, petroleum products, crude oil and any components, fractions, or derivates thereof; and (D) any substance that, whether by its nature or its use, is subject to regulation under any Environmental Law or results in any Governmental Authority requiring any environmental investigation, remediation or monitoring thereof.

"<u>Intellectual Property Rights</u>" means all intellectual property rights, including patents, trademarks, tradenames, service marks, domain names, websites, internet addresses, trade dress, logos and designs, copyrights and copyright rights, know-how, trade secrets, proprietary processes and formulae, confidential information, franchises, licenses, inventions, marketing materials and all application and registrations of the foregoing and all goodwill related thereto, and all documentation and media constituting, describing or relating to the foregoing, including software, manuals, memoranda and records.  Intellectual Property Rights shall include  compilations, work-in-progress, editorial material, text, blogs, forum content, articles, charts, manuscripts, cover designs, photographs, negatives, art work, film, materials and digital files at printers and engravers, design templates, books, brochures, files, website links or other works of authorship or literary or graphical content used or held for use in connection with the Business, in any format, including electronic, and any language, and including any metadata associated therewith, and whether or not previously published, copyrights and all applications, registrations and renewals in connection therewith.

"<u>Law</u>" means any law, statute, treaty, rule, directive, or regulation or Order of any Governmental Entity.

"<u>Liability</u>" means any liability or obligation, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, and whether due or to become due, regardless of when asserted.

"<u>Orders</u>" means judgments, writs, decrees, compliance agreements, injunctions, rules, awards, settlement agreements, or orders of any Governmental Entity or arbitrator.

"<u>Permits</u>" means all permits, licenses, authorizations, registrations, franchises, approvals, certificates, variances, and similar rights obtained, or required to be obtained, from Governmental Entities.

"<u>Person</u>" shall be construed broadly and shall include an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or another entity including a Governmental Entity (or any department, agency, or political subdivision thereof).

"<u>Sale Approval Order</u>" means an order of the Bankruptcy Court acceptable to Buyer, *inter alia*, (a) approving (i) this Agreement and the execution, delivery, and performance by Debtor of

27

this Agreement and the other instruments and agreements contemplated hereby; (ii) the sale of the Purchased Assets to Buyer free and clear of all Liens; (iii) the assumption and assignment to Buyer of the Assumed Contracts on the terms set forth herein; and (b) determining that Buyer is a good faith purchaser.

"Tax" or "Taxes" means, with respect to any Person, (i) all income taxes (including any tax on or based upon net income, gross income, income as specially defined, earnings, profits, or selected items of income, earnings or profits) and all gross receipts, sales, use, ad valorem, transfer, franchise, license, withholding, payroll, employment, excise, severance, stamp, occupation, premium, property, or windfall profits taxes, alternative or add-on minimum taxes, customs duties and other taxes, fees, assessments, or charges of any kind whatsoever, deposits related thereto, together with all interest and penalties, additions to tax and other additional amounts imposed by any taxing authority (domestic or foreign) on such Person (if any) and (ii) any Liability for the payment of any amount of the type described in clause (i) above as a result of (A) being a "transferee" (within the meaning of Section 6901 of the Internal Revenue Code of 1986, as amended, or any other applicable Law) of another Person, (B) being a member of an affiliated, combined or consolidated group, or (C) a contractual arrangement or otherwise.

"Tax Return" means any return, declaration, report, claim for refund, or information return or statement related to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

## EXHIBIT A

### Real Property Description

**EXHIBIT A**

The Land referred to herein below is situated in the County of FRANKLIN, State of OHIO, and is described as follows:

Situated in the State of Ohio, County of Franklin, City of Columbus, Quarter Township 4, Township 1, Range 17 and being out of that Original 8.842 acre tract and all that 2.842 acre tract conveyed to Plastic Suppliers, Inc. by deed of record in Instrument Number 20020207003795, (all references are to the records of the Recorder's Office, Franklin County, Ohio) and being more particularly described as follows:

Beginning, for reference, at a mag nail set in the centerline of Johnstown Road (U.S. 62), at the most northerly corner of said 8.842 acre tract, being the northwesterly corner of a 16 foot Private Lane as called in Deed Book 1188, Page 253, (from said mag nail set county monument FCGS 5739 is located; thence North 62° 00' 53" East, along said centerline, 18.80 feet and thence North 62° 15' 39" East, along said centerline, 376.95 feet);

thence South 03° 42' 20" West, with the westerly line of said Private Lane, the same being an easterly line of said 8.842 acre tract, 357.67 feet to an iron pin set at the southwesterly corner of said Private Lane, being an existing corner of said 8.842 acre tract, the True Point of Beginning:

thence South 86° 53' 37" East, with the southerly line of said Private Lane, a northerly line of said 8.842 acre tract, 575.01 feet to a 3/4 inch iron pin found at a northeasterly corner of said 8.842 acre tract, being in the westerly line of that subdivision entitled "Englewood Heights" of record in Plat Book 18, Page 60, as conveyed to the Columbus Municipal Airport Authority by deeds of record in Official Record 25525F11, 25525H12 and 25525H13, Official Record 30275H15, Official Record 28034F17, Official Record 28700G13 and 28700G14, Official Record 34935B01 and 34935B10, and Official Record 34257D05 (see Road Record 27, Page 81 for the adjoining street vacations within said subdivision);

thence South 04° 37' 26" West, with the westerly line of said "Englewood Heights", an easterly line of said 8.842 and 2.842 acre tracts, 666.59 feet to an iron pin set at the northeasterly corner of that 1.355 acre tract conveyed to Pri-Mac Company by deed of record in Official Record 26487F19, the same being the southeasterly corner of said 2.842 acre tract;

thence North 85° 39' 31" West, the northerly line of said 1.355 acre tract, a southerly line of said 2.842 acre tract, 336.11 feet to a 3/4 inch iron pin found at a northwesterly corner of said 1.355 acre tract, the same being an existing corner of said 2.842 acre tract, in the easterly line of that 1.23 acre tract conveyed to the City of Columbus by deed of record in Deed Book 3021, Page 444, the same being an easterly right-of-way line of Marilyn Park Lane;

thence with the line common to said 1.23 acre and 2.842 acre tracts, the same being said easterly right-of-way line and northerly right-of-way line of said Marilyn Park Lane, the following course and distances:

North 04° 07' 10" East, 75.00 feet to a mag nail set;

North 85° 39' 31" West, 50.00 feet to a mag nail set;

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

Form 50202839 (3-13-23)                                                                                      Page 8 of 13



OTIRB Commitment for Title Insurance
Ohio - 2021 v. 01.00 (07-01-2021)

South 04° 07' 10" West, 25.00 feet to a mag nail set;

North 85° 39' 31" West, 265.92 feet to a 3/4 inch iron pin found;

with the arc of a curve to the right, having a central angle of 89° 47' 01", a radius of 40.00 feet, an are length of 62.68 feet, a chord bearing of North 40° 46' 00" West and chord distance of 56.46 feet to an iron pin set;

thence North 04° 07' 30" East, with the common line to said 1.23 acre and 2.842 acre tracts and that 0.530 acre tract conveyed to the City of Columbus by deed of record in Deed Book 3021, Page 447 and said 8.842 acre tract, the same being the easterly right-of-way line of said Marilyn Park Lane, 535.60 feet to an iron pin set;

thence North 81° 09' 20" East, across said 8.842 acre tract, 125.98 feet to the True Point of

Beginning. Containing 10.030 acres, more or less.

Iron pins set, where indicated, are iron pipes, thirteen sixteenths (13/16) inch inside diameter, thirty (30) inches long with a plastic plug placed in the top bearing the initials EMHT INC.

The bearings herein are based on the Ohio State Plane Coordinate System South Zone, NAD83 (1986 Adjustment). A bearing of North 62° 00' 53" East was held for the centerline of Johnstown Road fronting the 8.842 acre tract of record in Instrument Number 200202070035795.

**Schedule 1.1(a)(iii)**

**Schedule of Assets**

## PLASTIC SUPPLIERS, INC
### File Listing Report

Book = Internal
FYE Month = October

| A<br>Sys No Ext C Co Asset No | Location | CI | G/L Asset Acct | In Svc<br>Date | P Depr<br>T Meth | Departme | Vendor/Mfg | Disposal Date | Acquired<br>Value |
|---|---|---|---|---|---|---|---|---|---|
| **G/L Asset Acct No = 1700-1620** | | | | | | | | | |
| 002820 COLUMN PROTECTORS | | | | | | | | | |
| 000 A 700021 | | B | 1700-1620 | 06/01/01 | R SLMM | | SENTRY PR | | $ 9,710.67 |
| 002837 CHAIN LINK FENCE | | | | | | | | | |
| 000 A 700032 | | B | 1700-1620 | 06/01/01 | R SLMM | | ABLE FENCE | | 2,625.00 |
| 002940 COOL ZONE ROOM | | | | | | | | | |
| 000 A 100 | | B | 1700-1620 | 09/26/02 | R SLMM | | | | 12,804.90 |
| 002980 LOUVERS FOR BAY WINDOW | | | | | | | | | |
| 000 A 000700 | | F | 1700-1620 | 11/28/02 | P SLMM | | | | 37,655.00 |
| 003107 BUG LIGHTS | | | | | | | | | |
| 000 A 2981 | Polyflex B | B | 1700-1620 | 05/06/04 | R SLMM | | | | 8,569.90 |
| 003279 MATERIAL & LABOR TO RUN CONDUIT FOR NEW MACHINE | | | | | | | | | |
| 000 A NO TAG | POLYFLEX B | B | 1700-1620 | 05/26/06 | R SLMM | | JESS HOWA | | 2,325.21 |
| 003332 3-TON HEAT PUMP/DUCT WORK/AHV/HEAT COIL | | | | | | | | | |
| 000 A | | B | 1700-1620 | 07/31/07 | R SLMM | | TOM'S HEAT | | 6,215.96 |
| 003342 3-TON HEAT PUMP (QUALITY OFFICE) | | | | | | | | | |
| 000 A | | B | 1700-1620 | 11/10/07 | R SLMM | | TOMS HEAT | | 5,897.65 |
| 003381 Gate in back of B building | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 03/31/08 | P SLMM | | | | 6,988.00 |
| 003561 Chain Link Fencing | | | | | | | | | |
| 000 A | PolyB | B | 1700-1620 | 05/01/11 | R SLMM | | Graves Fenc | | 9,402.00 |
| 003564 Electric for New Slitting Area | | | | | | | | | |
| 000 A | PolyB | B | 1700-1620 | 05/01/11 | R SLMM | | Atlas Industri | | 51,925.70 |
| 003565 Set-up for New Slitting Area | | | | | | | | | |
| 000 A | PolyB | B | 1700-1620 | 05/01/11 | R SLMM | | Various | | 9,359.72 |
| 003573 Trash Compacter Pad | | | | | | | | | |
| 000 A | | B | 1700-1620 | 04/08/11 | R SLMM | | | | 14,800.00 |
| 003591 PolyB Lighting | | | | | | | | | |
| 000 A | PolyB | B | 1700-1620 | 03/30/12 | R SLMM | | | | 83,585.25 |
| 003678 Arc Flash Analysis | | | | | | | | | |
| 000 A | PolyB | B | 1700-1620 | 11/01/13 | R SLMM | | | | 18,050.00 |
| 003687 Shop Powerfor Maintenan | | | | | | | | | |
| 000 A | PolyB | M | 1700-1620 | 03/01/14 | R SLMM | | | | 5,073.00 |
| 003696 PolyB Maintenance Shop Power-add'l | | | | | | | | | |
| 000 A | PolyB | b | 1700-1620 | 09/01/14 | R SLMM | | | | 10,125.00 |
| 003714 PolyB Transformer Repair | | | | | | | | | |
| 000 A | PolyB | B | 1700-1620 | 10/01/15 | R SLMM | | | | 72,750.00 |
| 003727 LED lights for outdoor entryways | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/15 | R SLMM | | | | 2,612.50 |
| 003730 Parking Lot Lighting | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 02/10/17 | P SLMM | | O'Day Electri | | 9,485.00 |
| 003733 Parking Lot Refinishing | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 11/01/16 | P SLMM | | | | 64,614.50 |
| 003736 Office Renovations | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 01/01/17 | P SLMM | | | | 61,909.14 |
| 003758 HVAC Upgrade | | | | | | | | | |
| 000 A | B3 | B | 1700-1620 | 04/01/18 | R SLMM | | | | 8,206.89 |
| 003767 AC (Poly B High Bay) | | | | | | | | | |
| 000 A | | B | 1700-1620 | 06/01/18 | R SLMM | | | | 4,264.00 |
| 003777 Modular Offices | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 09/18/18 | R SLMM | | | | 122,789.28 |
| 003781 Quality Lab | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 09/18/18 | R SLMM | | | | 66,387.95 |
| 003783 Restroom Renovations | | | | | | | | | |
| 000 A | Poly B | R | 1700-1620 | 09/18/18 | R SLMM | | | | 18,965.00 |
| **G/L Asset Acct No = 1700-1620** | | | | | | | | | |
| 003784 Dock Lock Upgrades | | | | | | | | | |
| 000 A | Poly B | R | 1700-1620 | 09/13/18 | R SLMM | | | | 47,125.00 |
| 003785 HVAC for Poly B Manufacturing | | | | | | | | | |
| 000 A | Poly B | R | 1700-1620 | 09/13/18 | R SLMM | | | | 96,200.00 |
| 003788 Poly B Parking Lot Paving | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 10/12/18 | R SLMM | | AJ Ashpalt | | 33,869.00 |
| 003791 Dock Door Sheath Insulation (SQF) | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/18 | P SLMM | | | | 15,723.00 |
| 003792 Dock Seals (SQF) | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/18 | P SLMM | | | | 15,800.00 |
| 003794 Chemical Control Plumbing (SQF) | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/18 | P SLMM | | | | 20,452.95 |
| 003796 Insulation and Sheathing Phase III (SQF) | | | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/18 | R SLMM | | | | 69,233.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003797 Fast Track Doors (SQF) | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/18 | R SLMM | | 34,877.00 |
| 003798 Employee Entrance Sheath Insluation (SQF) | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/18 | R SLMM | | 14,546.00 |
| 003799 Food Safe Lighting (SQF) | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/18 | R SLMM | | 54,500.00 |
| 003800 HBE Wall Covering (SQF) | | | | | | | |
| 000 A | Poly B | R | 1700-1620 | 12/01/18 | R SLMM | | 61,610.00 |
| 003804 Sprinkler Upgrade B1-B3 (SQF) | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 01/15/19 | R SLMM | | 31,200.00 |
| 003816 Poly B Exterior Door Security (SQF) | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 03/04/19 | R SLMM | | 17,111.32 |
| 003834 Work Table Quality Lab | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 08/01/19 | R SLMM | | 2,494.00 |
| 003835 Light Table Quality Lab | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 08/01/19 | R SLMM | | 5,747.00 |
| 003846 B3 Fire Suppression SQF | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/19 | R SLMM | | 0.00 |
| 003852 Safety Enhancements - B | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 04/01/20 | R SLMM | | 6,765.00 |
| 003876 Trip Hazard Eliminations B | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 11/01/20 | R SLMM | | 10,570.62 |
| 003884 HVAC Ionizer 2 | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 12/01/20 | R SLMM | | 14,150.00 |
| 003901 B3 Fire Suppression SQF | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 03/01/21 | R SLMM | | 23,540.00 |
| 003902 Kampf Scale Pits | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 03/01/21 | R SLMM | | 0.00 |
| 003904 B Fire Water Backflow Prevention | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 04/01/21 | R SLMM | | 15,015.00 |
| 003905 B Fire Alarm Panel Upgrade | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 04/01/21 | R SLMM | | 8,800.00 |
| 003910 Upgrade Doors to High Bay | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 05/01/21 | P SLMM | | 4,596.23 |
| 003927 B Fire Alarm Planel Upgrade | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 11/01/21 | P SLMM | | 2,104.00 |
| 003942 Upgrade B Light Fixtures | | | | | | | |
| 000 A | Poly B | B | 1700-1620 | 05/01/22 | R SLMM | | 68,707.00 |

G/L Asset Acct No = 1700-1620  $ 1,401,833.34
Count = 53

---

**G/L Asset Acct No = 1700-1630**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 001440 LABOR ON GA 80" SLITTER (IN ADD TO SYS# 1872) | | | | | | | |
| 000 A  020003A | | M | 1700-1630 | 04/30/96 | P SLMM | | $ 26,356.00 |
| 001448 UNWIND STAND | | | | | | | |
| 000 A  020001C | | M | 1700-1630 | 06/24/96 | P SLMM | HYMES MAN | 8,000.00 |
| 001453 CHAIN HOIST & CONTAINER | | | | | | | |
| 000 A  020700A | | M | 1700-1630 | 03/11/96 | P SLMM | WW GRAING | 1,648.44 |
| 001463 HOIST SYSTEM | | | | | | | |
| 000 A  21197 | | M | 1700-1630 | 07/15/96 | P SLMM | | 3,966.00 |
| 001468 TRIM BLOWER SYSTEM | | | | | | | |
| 000 A  060600 | 362510 | M | 1700-1630 | 07/15/96 | P SLMM | | 17,777.94 |
| 001479 HOIST SYSTEM | | | | | | | |
| 000 A  020703 | | M | 1700-1630 | 04/01/86 | P SLMM | | 3,373.11 |
| 001480 CORE CUTTER | | | | | | | |
| 000 A  020400 | | M | 1700-1630 | 06/01/85 | P SLMM | | 5,000.00 |
| 001481 CORE CUTTER | | | | | | | |
| 000 A  020401 | | M | 1700-1630 | 06/01/85 | P SLMM | | 5,000.00 |
| 001524 80" UNWIND STAND | | | | | | | |
| 000 A  060000B | 362510 | M | 1700-1630 | 07/15/96 | P SLMM | | 5,934.32 |
| 001593 SLITTER ACCESSORIES | | | | | | | |
| 000 A  060000D | 362510 | M | 1700-1630 | 10/25/96 | P SLMM | | 1,677.21 |
| 001598 LABOR FOR TRIM BLOWER SYSTEM | | | | | | | |
| 000 A  060600A | 362510 | M | 1700-1630 | 07/31/96 | P SLMM | | 724.00 |
| 001613 CROWN WALKIE FORKLIFT | | | | | | | |
| 000 A  010305 | 3100 | M | 1700-1630 | 12/01/96 | P SLMM | | 9,781.88 |
| 001618 TRIM BLOWER SYSTEM | | | | | | | |
| 000 A  21201 | 3100 | M | 1700-1630 | 12/26/96 | P SLMM | | 8,973.00 |
| 001621 TRIM BLOWER SYSTEM | | | | | | | |
| 000 A  21202 | 3100 | M | 1700-1630 | 12/26/96 | P SLMM | | 17,407.62 |
| 001634 CROWN WALKIE FORKLIFT | | | | | | | |
| 000 A  010304 | 3100 | M | 1700-1630 | 02/28/97 | P SLMM | SCHRADER | 10,522.13 |
| 001641 TRIM BLOWER SYSTEM | | | | | | | |
| 000 A  020602 | | M | 1700-1630 | 02/27/97 | P SLMM | BLOWER AP | 9,159.00 |
| 001642 REWIND MANDREL 80" FOR 80" SLITTER | | | | | | | |
| 000 A  020001D | | M | 1700-1630 | 03/18/97 | P SLMM | HYMES | 2,200.00 |
| 001643 HOIST | | | | | | | |
| 000 A  21205 | 3100 | M | 1700-1630 | 03/31/97 | P SLMM | | 70,509.76 |
| 001700 REBUILT SLITTER - STEPHENS & SONS (1998) | | | | | | | |

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
| 000 A 060000A | 362510 | M | 1700-1630 | 10/01/97 | P | SLMM |  | 206,913.43 |
| 001702 ALUMINIM ROLLS FOR 80" SLITTER | | | | | | | | |
| 000 A 020001E |  | M | 1700-1630 | 10/01/97 | P | SLMM | HYMES MFG | 4,400.00 |
| 001742 TRIM SYSTEM | | | | | | | | |
| 000 A 060603 | 362510 | M | 1700-1630 | 02/01/98 | P | SLMM |  | 9,283.99 |
| 001864 UNWIND STAND | | | | | | | | |
| 000 A 020003B |  | M | 1700-1630 | 06/03/91 | P | SLMM |  | 13,162.17 |
| 001866 HOIST SYSTEM | | | | | | | | |
| 000 A 020705 |  | M | 1700-1630 | 10/08/92 | P | SLMM |  | 8,578.39 |
| 001868 MANDRAL CLAMPS | | | | | | | | |
| 000 A 020001C |  | M | 1700-1630 | 01/05/93 | P | SLMM |  | 2,424.00 |
| 001869 80" REBUILT SLITTER | | | | | | | | |
| 000 A 020001 |  | M | 1700-1630 | 07/16/93 | P | SLMM |  | 56,786.52 |
| **G/L Asset Acct No = 1700-1630** | | | | | | | | |
| 001870 80" 815 REPAIR | | | | | | | | |
| 000 A 020001A |  | M | 1700-1630 | 09/21/93 | P | SLMM |  | 7,088.84 |
| 001871 PIV (90" SLITTER) | | | | | | | | |
| 000 A 020001B |  | M | 1700-1630 | 04/01/92 | P | SLMM |  | 8,764.05 |
| 001872 80" SLITTER REBUILT | | | | | | | | |
| 000 A 020003B |  | M | 1700-1630 | 07/16/93 | P | SLMM |  | 10,059.78 |
| 001876 TRIM CUTTER | | | | | | | | |
| 000 A 020601 |  | M | 1700-1630 | 03/20/96 | P | SLMM |  | 9,377.00 |
| 001899 DOBIKEN MANDRAL STAND | | | | | | | | |
| 000 A 030004A | 14 | M | 1700-1630 | 01/01/80 | P | SLMM |  | 4,725.96 |
| 001924 60" DUSENBERY SLITTER | | | | | | | | |
| 000 A 030021 | 14 | M | 1700-1630 | 10/27/88 | P | SLMM |  | 94,617.89 |
| 001932 60" CORE CUTTER | | | | | | | | |
| 000 A 030401 | 14 | M | 1700-1630 | 01/16/90 | P | SLMM |  | 15,000.00 |
| 001941 HOIST - 2 TON | | | | | | | | |
| 000 A 030709 | 14 | M | 1700-1630 | 06/13/95 | P | SLMM |  | 8,869.24 |
| 002092 RACKS | | | | | | | | |
| 000 A 16167 | 362510 | M | 1700-1630 | 09/30/84 | P | DB150 |  | 1,707.50 |
| 002100 65" HARRIS CUTTER | | | | | | | | |
| 000 A 060200 |  | M | 1700-1630 | 05/27/93 | P | SLMM |  | 47,500.00 |
| 002179 AKRON 1" EXTRUDER | | | | | | | | |
| 000 A 000702 | 362510 | M | 1700-1630 | 09/01/83 | P | DB150 |  | 10,323.00 |
| 002198 AUTOFEED CORE CUTTER | | | | | | | | |
| 000 A 000701 | 362510 | M | 1700-1630 | 08/09/90 | P | SLMM |  | 5,573.50 |
| 002278 1994 PNEUMATIC FORKLIFT | | | | | | | | |
| 000 A 000718 | 362510 | M | 1700-1630 | 12/22/94 | P | SLMM |  | 20,938.50 |
| 002564 PORTABLE WEIGHT SCALE | | | | | | | | |
| 000 A 000375 | 362510 | M | 1700-1630 | 09/01/98 | P | SLMM |  | 1,773.72 |
| 002567 NARROW SLITTER | | | | | | | | |
| 000 A 030006 |  | M | 1700-1630 | 09/01/98 | P | SLMM |  | 20,243.40 |
| 002568 HOIST SYSTEM | | | | | | | | |
| 000 A 030707 |  | M | 1700-1630 | 09/01/98 | P | SLMM |  | 17,384.91 |
| 002596 STRETCH WRAPPER | | | | | | | | |
| 000 A 021005 |  | M | 1700-1630 | 02/01/99 | P | SLMM |  | 15,588.36 |
| 002655 CORE CUTTER | | | | | | | | |
| 000 A 60402 |  | M | 1700-1630 | 09/30/99 | P | SLMM |  | 13,615.71 |
| 002669 Branch Slitter Upgrades | | | | | | | | |
| 000 A 20501 |  | M | 1700-1630 | 12/01/99 | P | SLMM |  | 34,347.89 |
| 002761 FORKLIFT | | | | | | | | |
| 000 A 20004 |  | M | 1700-1630 | 11/30/00 | P | SLMM |  | 22,739.52 |
| 002791 TRIM SYSTEM UPGRADE | | | | | | | | |
| 000 A 20005 |  | M | 1700-1630 | 03/29/01 | P | SLMM |  | 14,142.46 |
| 002792 CYCLONE UPGRADE FOR TRIM SYSTEM | | | | | | | | |
| 000 A 61005 |  | M | 1700-1630 | 03/29/01 | P | SLMM |  | 5,135.22 |
| 002798 ADD. DRIVES FOR CMS COATER | | | | | | | | |
| 000 A 700000 |  | M | 1700-1630 | 06/01/01 | P | SLMM | MACRO | 42,300.00 |
| 002799 STRIPPING RING AND DIE LIP | | | | | | | | |
| 000 A 700001 |  | M | 1700-1630 | 06/01/01 | P | SLMM | MACRO | 13,105.00 |
| 002800 FLOOR SCALES-4'X4' AND 4'X6' | | | | | | | | |
| 000 A 700002 |  | M | 1700-1630 | 06/01/01 | P | SLMM | CINTRON SC | 5,575.89 |
| 002801 HORIZONTAL BANDSAW | | | | | | | | |
| 000 A 000715 |  | M | 1700-1630 | 06/01/01 | P | SLMM | ENCO | 1,854.95 |
| 002814 WELDER | | | | | | | | |
| 000 A 000716 |  | M | 1700-1630 | 06/01/01 | P | SLMM | DELILLE | 1,870.35 |
| **G/L Asset Acct No = 1700-1630** | | | | | | | | |
| 002816 HAZE AND GLOSS METER | | | | | | | | |
| 000 A 000719 |  | M | 1700-1630 | 06/01/01 | P | SLMM | BYK GARDN | 17,897.00 |
| 002818 ANTI-STAT TESTER | | | | | | | | |
| 000 A 000720 |  | M | 1700-1630 | 06/01/01 | P | SLMM | AGILENT TE | 9,200.25 |
| 002821 DRILL PRESS | | | | | | | | |
| 000 A 000714 |  | M | 1700-1630 | 06/01/01 | P | SLMM | INTEGRA | 1,062.50 |
| 002822 25 TON HAND-HYDRAULIC PRESS | | | | | | | | |
| 000 A 000717 |  | M | 1700-1630 | 06/01/01 | P | SLMM | INTEGRA | 2,450.00 |
| 002823 60" PHIADELPHIA TRAMRAIL DOWNSTROKE BALER | | | | | | | | |
| 000 A 000721 |  | M | 1700-1630 | 06/01/01 | P | SLMM | ALAN ROSS | 5,445.00 |

| | | | | | |
|---|---|---|---|---|---|
| 002824 MFG WORKSTATION AND QUALITY TABLE | | | | | |
| 000 A 700025 | M 1700-1630 | 06/01/01 | P SLMM | HYTEK | 3,594.65 |
| 002825 BRIDGE CRANE SYSTEM-SLITTER ROOM HOIST | | | | | |
| 000 A 000707 | M 1700-1630 | 06/01/01 | P SLMM | SCHRADER | 18,065.70 |
| 002827 SHIPPING RACKS | | | | | |
| 000 A 700027 | M 1700-1630 | 06/01/01 | P SLMM | SLIP-TECH | 198,750.00 |
| 002829 VIBRATORS- QTY 2 | | | | | |
| 000 A 700028 | M 1700-1630 | 06/01/01 | P SLMM | CONAIR GR | 2,049.25 |
| 002830 METERING ROLL ASSEM-SPARE PARTS IN CRATES | | | | | |
| 000 A 700029 | M 1700-1630 | 06/01/01 | P SLMM | CMS | 16,016.00 |
| 002831 TRANSFER ROLL ASSEMBLY | | | | | |
| 000 A 700030 | M 1700-1630 | 06/01/01 | P SLMM | CMS | 14,220.00 |
| 002832 HIGH HEAT TEMPATURE CONTROL | | | | | |
| 000 A 700031 | M 1700-1630 | 06/01/01 | P SLMM | STERLING | 6,635.55 |
| 002833 AIR COMPRESSOR | | | | | |
| 000 A 000709 | M 1700-1630 | 06/01/01 | P SLMM | LORENZ | 31,127.97 |
| 002834 AIR COMPRESSOR | | | | | |
| 000 A 000710 | M 1700-1630 | 06/01/01 | P SLMM | LORENZ | 31,127.97 |
| 002835 ELECTRIC FORKLIFT | | | | | |
| 000 A 000711 | M 1700-1630 | 06/01/01 | P SLMM | HYTEK | 34,401.94 |
| 002836 TRASH COMPACTOR | | | | | |
| 000 A 000712 | M 1700-1630 | 06/01/01 | P SLMM | MCCAIN | 11,324.37 |
| 002841 SILOS/INSTALL/HOPPER DRYER/VACUUM PUMPS | | | | | |
| 000 A 700033 | M 1700-1630 | 06/01/01 | P SLMM | CONAIR | 215,061.16 |
| 002852 HOIST/TRAM SYSTEM | | | | | |
| 000 A 000705 | M 1700-1630 | 06/28/01 | P SLMM | | 18,285.23 |
| 002854 LP GAS CYLINDER ROCK | | | | | |
| 000 A 20006 | M 1700-1630 | 08/02/01 | P SLMM | CONSTRUC | 2,506.35 |
| 002857 DATA / VOICE CABLING | | | | | |
| 000 A 000037 | M 1700-1630 | 08/02/01 | P SLMM | | 27,949.00 |
| 002858 LINE B1 | | | | | |
| 000 A 700035 | M 1700-1630 | 08/02/01 | P SLMM | | 3,080,282.28 |
| 002859 LINE B2 | | | | | |
| 000 A 700036 | M 1700-1630 | 08/02/01 | P SLMM | | 2,877,727.61 |
| 002860 FLANGED ADAPTER | | | | | |
| 000 A 700034 | M 1700-1630 | 08/30/01 | P SLMM | MACRO | 4,000.00 |
| 002861 CHAIN HOIST | | | | | |
| 000 A 000706 | M 1700-1630 | 08/30/01 | P SLMM | HY-TEK MAT | 4,850.48 |
| 002863 TIP ON GLUE SYSTEM | | | | | |
| 000 A 20007 | M 1700-1630 | 09/27/01 | P SLMM | VLACO | 7,945.79 |
| 002866 VARNET SCANNER | | | | | |
| 000 A 2280 | M 1700-1630 | 09/27/01 | P SLMM | INTERMEC | 1,209.88 |
| 002877 CAPITALIZED INTEREST-EQUIPMENT LEASE | | | | | |
| 000 A 9001 | M 1700-1630 | 08/01/01 | P SLMM | | 203,608.00 |
| **G/L Asset Acct No = 1700-1630** | | | | | |
| 002885 638 SLITTER | | | | | |
| 000 A 108 | M 1700-1630 | 12/27/01 | P SLMM | | 116,569.59 |
| 002887 HOIST SYSTEM | | | | | |
| 000 A 030708 | M 1700-1630 | 01/31/02 | P SLMM | | 9,583.69 |
| 002892 RELOCATION OF SLITTER | | | | | |
| 000 A 2279 | M 1700-1630 | 02/28/02 | P SLMM | | 8,850.81 |
| 002899 DIE SYSTEM | | | | | |
| 000 A 2282 | M 1700-1630 | 02/28/02 | P SLMM | | 159,335.00 |
| 002902 TRIM SYSTEM | | | | | |
| 000 A 000731 | M 1700-1630 | 05/02/02 | P SLMM | | 13,425.53 |
| 002906 RUBBER NIP ROLLER | | | | | |
| 000 A 2283 | M 1700-1630 | 05/30/02 | P SLMM | | 7,667.00 |
| 002907 EXACT UNDERHOPPER FORCED FEEDER | | | | | |
| 000 A 000733 | M 1700-1630 | 05/30/02 | P SLMM | | 5,516.00 |
| 002910 HOIST SYSTEM | | | | | |
| 000 A 000732 | M 1700-1630 | 05/30/02 | P SLMM | | 11,985.86 |
| 002935 SLITTER ACCESSORIES AND INSTALL | | | | | |
| 000 A 2284 | M 1700-1630 | 09/26/02 | P SLMM | | 20,763.36 |
| 002978 SCREEN CHANGER FOR LINE B1 | | | | | |
| 000 A 002643 | M 1700-1630 | 11/28/02 | P SLMM | | 20,671.20 |
| 002982 MELT TRANSFER TUBE | | | | | |
| 000 A 002285 | M 1700-1630 | 11/28/02 | P SLMM | | 7,355.00 |
| 002985 STATIC BARS FOR SLITTERS | | | | | |
| 000 A 20008 | M 1700-1630 | 12/28/02 | P SLMM | | 6,175.96 |
| 003001 OSMOSIS SYSTEM | | | | | |
| 000 A 2286 | M 1700-1630 | 03/27/03 | P SLMM | | 3,618.55 |
| 003017 2 ROLLCARTS | | | | | |
| 000 A 2286 | M 1700-1630 | 06/26/03 | P SLMM | | 8,860.00 |
| 003018 EXACT THROAT FEEDER | | | | | |
| 000 A 2287 | M 1700-1630 | 06/26/03 | P SLMM | | 4,979.45 |
| 003030 VALVES & FITTINGS | | | | | |
| 000 A 2289 | M 1700-1630 | 08/28/03 | P SLMM | | 1,926.10 |
| 003031 BLOWER PACKAGE OFR AIR RINGS | | | | | |
| 000 A 2288 | M 1700-1630 | 08/28/03 | P SLMM | | 2,814.86 |
| 003032 SMX Mixer for B-2 | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 000 A 2288 | | M 1700-1630 | 09/25/03 | P SLMM | | | 9,008.24 |
| 003094 SINGE LAYER DIE - B1 | | | | | | | |
| 000 A 88 | Polyflex B1 M 1700-1630 | 01/29/04 | P SLMM | Macro Engine | | 38,320.00 |
| 003097 Tower Rollers w/Diamond Knurl | | | | | | | |
| 000 A 2289 | Polyflex B M 1700-1630 | 02/26/04 | P SLMM | Webex, Inc. | | 22,823.98 |
| 003106 KNURL ROLLER - B1 | | | | | | | |
| 000 A 2291 | Polyflex B M 1700-1630 | 05/06/04 | P SLMM | | | 29,590.47 |
| 003148 KNURL ROLLER SLITTER | | | | | | | |
| 000 A 2292 | Polyflex B M 1700-1630 | 07/01/04 | P SLMM | | | 5,326.60 |
| 003149 TOUCH ROLLER | | | | | | | |
| 000 A 2293 | Polyflex B M 1700-1630 | 07/01/04 | P SLMM | | | 3,150.00 |
| 003151 SAFETY ARMS MACHINE GUARD | | | | | | | |
| 000 A 2295 | Polyflex B M 1700-1630 | 07/01/04 | P SLMM | | | 2,028.00 |
| 003152 NIP ROLLER GEAR BOX - B1 | | | | | | | |
| 000 A 2296 | Polyflex B1 M 1700-1630 | 07/01/04 | P SLMM | | | 3,075.66 |
| 003153 AUTOTHERMS HEAT EXCHANGER | | | | | | | |
| 000 A 2297 | Polyflex B M 1700-1630 | 07/01/04 | P SLMM | | | 11,876.78 |
| 003154 DIE FLANGE | | | | | | | |
| 000 A 2298 | Polyflex B M 1700-1630 | 07/01/04 | P SLMM | | | 3,273.92 |
| **G/L Asset Acct No = 1700-1630** | | | | | | | |
| 003155 ROTATOR - B1 | | | | | | | |
| 000 A 2299 | Polyflex B1 M 1700-1630 | 07/01/04 | P SLMM | | | 8,040.40 |
| 003159 40" STRIPPING RING | | | | | | | |
| 000 A 2300 | Polyflex B M 1700-1630 | 08/05/04 | P SLMM | | | 4,785.54 |
| 003160 OVEN ROLLS | | | | | | | |
| 000 A 2301 | Polyflex B M 1700-1630 | 08/05/04 | P SLMM | | | 3,809.69 |
| 003164 Polyflex B Autotherm Housings | | | | | | | |
| 000 A 2301 | Polyflex B M 1700-1630 | 09/29/04 | P SLMM | | | 5,283.66 |
| 003167 US WINDER TOUCH ROLLER | | | | | | | |
| 000 A 000735 | POLYFLEX M 1700-1630 | 09/30/04 | P SLMM | | | 58,500.00 |
| 003168 ELECTRIC DISTRIBUTION PANEL FOR MAINTENANCE | | | | | | | |
| 000 A 000736 | POLYFLEX M 1700-1630 | 09/30/04 | P SLMM | | | 25,000.00 |
| 003172 TEMPERATURE CONTROL SHRINK FILM | | | | | | | |
| 000 A 000737 | POLYFLEX M 1700-1630 | 09/30/04 | P SLMM | | | 59,847.19 |
| 003176 Heat Exchanger Caps | | | | | | | |
| 000 A 2303 | Polyflex B M 1700-1630 | 11/04/04 | P SLMM | | | 2,550.00 |
| 003177 Spare Nip Roll | | | | | | | |
| 000 A 2304 | Polyflex B M 1700-1630 | 11/04/04 | P SLMM | | | 6,040.00 |
| 003178 Melt Pump Adaptor | | | | | | | |
| 000 A 2305 | Polyflex B M 1700-1630 | 11/04/04 | P SLMM | | | 5,285.00 |
| 003185 AIR CONDITIONER HIGH BAY | | | | | | | |
| 000 A 061006 | POLYFLEX M 1700-1630 | 01/01/05 | P SLMM | WW GRAING | | 15,648.00 |
| 003186 DIE CART WITH OSCILLATOR | | | | | | | |
| 000 A 061005 | POLYFLEX M 1700-1630 | 01/01/05 | P SLMM | MACRO | | 56,235.00 |
| 003188 DELIVERY SYSTEM | | | | | | | |
| 000 A 061010 | M 1700-1630 | 02/14/05 | P SLMM | | | 127,519.46 |
| 003191 REPAIR OF COLLAPSING FRAME | | | | | | | |
| 000 A 061011 | B 1700-1630 | 11/08/04 | P SLMM | | | 18,164.00 |
| 003202 HEAT EXCHANGER CAP | | | | | | | |
| 000 A 2306 | POLYFLEX M 1700-1630 | 04/22/05 | P SLMM | | | 3,313.50 |
| 003203 49' STRIPPING RING | | | | | | | |
| 000 A 2307 | POLYFLEX M 1700-1630 | 04/10/05 | P SLMM | | | 13,388.00 |
| 003220 AIR COMPRESSOR | | | | | | | |
| 000 A 020503 | M 1700-1630 | 05/25/05 | P SLMM | | | 10,475.57 |
| 003237 13" DIE NUT | | | | | | | |
| 000 A 2308 | POLYFLEX M 1700-1630 | 09/16/05 | P SLMM | | | 2,500.00 |
| 003244 Teflon Rollers - B1 Oven | | | | | | | |
| 000 A 081061 | POLYFLEX M 1700-1630 | 11/01/05 | P SLMM | | | 3,747.00 |
| 003245 45' Lift - B1 | | | | | | | |
| 000 A 081062 | Polyflex B M 1700-1630 | 11/01/05 | P SLMM | | | 2,775.73 |
| 003253 325MM BLOWN DIE W/CARTRIDGE HEATER AND AIR RINGS | | | | | | | |
| 000 A 2309 | POLYFLEX M 1700-1630 | 01/05/06 | P SLMM | MACRO | | 95,590.00 |
| 003254 56" RINGS-2 | | | | | | | |
| 000 A 2310 | POLYFLEX M 1700-1630 | 01/05/06 | P SLMM | HYMES MAN | | 34,931.76 |
| 003257 AUTOMATIC CORE CUTTER | | | | | | | |
| 000 A 030402 | ILLINOIS M 1700-1630 | 01/18/06 | P SLMM | APPLETON | | 30,479.42 |
| 003261 TANDOM COMPRESSOR UNIT FOR CHILLER | | | | | | | |
| 000 A 060520 | POLYFLEX M 1700-1630 | 02/08/06 | P SLMM | TOM'S HEAT | | 4,500.00 |
| 003262 TANDOM COMPRESSOR UNIT | | | | | | | |
| 000 A 060521 | POLYFLEX M 1700-1630 | 02/19/06 | P SLMM | | | 4,500.00 |
| 003263 10" Die Assembly w/Profile Adjustment | | | | | | | |
| 000 A 061007 | Polyflex B m 1700-1630 | 02/28/06 | P SLMM | Hymes Manu | | 80,000.00 |
| 003280 (5) ROLLERS FOR SLITTER | | | | | | | |
| 000 A no tag | POLYFLEX M 1700-1630 | 06/13/06 | P SLMM | WEBEX, INC | | 8,587.95 |
| **G/L Asset Acct No = 1700-1630** | | | | | | | |
| 003281 Stripping Ring Assembly | | | | | | | |
| 000 A 000738 | POLYFLEX M 1700-1630 | 06/21/06 | P SLMM | HYMES MAN | | 13,108.47 |
| 003284 SCREEN CHANGER B2 | | | | | | | |
| 000 A 081059 | POLYFLEX M 1700-1630 | 05/27/06 | P SLMM | XALOY | | 44,039.28 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003285 SCREEN CHANGER B1 | | | | | | | |
| 000 A 081060 | POLYFLEX M | 1700-1630 | 06/15/06 | P SLMM | | XALOY | 39,000.00 |
| 003286 MELT PUMP B1 | | | | | | | |
| 000 A 081061 | POLYFLEX M | 1700-1630 | 05/26/06 | P SLMM | | XALOY | 37,543.35 |
| 003287 MELT PUMP B2 | | | | | | | |
| 000 A 081062 | POLYFLEX M | 1700-1630 | 09/20/06 | P SLMM | | XALOY | 29,152.29 |
| 003291 DESICCANT HOPPER DRYER FOR PLA RESIN | | | | | | | |
| 000 A 081066 | POLYFLEX M | 1700-1630 | 05/23/06 | P SLMM | | DRI-AIR IND | 77,384.06 |
| 003293 325MM DIE 80" (B) | | | | | | | |
| 000 A 081068 | POLYFLEX M | 1700-1630 | 03/07/06 | P SLMM | | MACRO ENG | 92,010.00 |
| 003301 LINE B2 | | | | | | | |
| 000 A 700036a | M | 1700-1630 | 08/20/06 | P SLMM REPLACE | | 47,695.58 |
| 003311 Long and Short Driven Exact Shaft | | | | | | | |
| 000 A 000541 | POLYFLEX M | 1700-1630 | 05/11/07 | P SLMM | | Hymes Manu | 5,282.34 |
| 003329 ADD'L FINANCING FOR LINE B1 | | | | | | | |
| 000 A | M | 1700-1630 | 08/10/07 | P SLMM | | | 90,505.09 |
| 003330 ADD'L FINANCING FOR LINE B2 | | | | | | | |
| 000 A | M | 1700-1630 | 08/10/07 | P SLMM | | | 90,505.09 |
| 003334 BUY OUT OF CAPITAL LEASE - B1 | | | | | | | |
| 000 A 700035 | M | 1700-1630 | 08/10/07 | P SLMM | | | 0.00 |
| 003335 BUY OUT OF CAPITAL LEASE - B2 | | | | | | | |
| 000 A 700036 | M | 1700-1630 | 08/10/07 | P SLMM | | | 0.00 |
| 003341 B2 Oven Upgrade | | | | | | | |
| 000 A 061009 | Poly B | 1700-1630 | 11/15/07 | P SLMM | | | 6,562.64 |
| 003345 LAYON ARMS | | | | | | | |
| 000 A | M | 1700-1630 | 11/12/07 | P SLMM | | | 2,062.50 |
| 003356 10-TON SCROLL COPELAND COMPRESSOR | | | | | | | |
| 000 A | BERG CHIL M | 1700-1630 | 11/01/07 | P SLMM | | TOMS HEAT | 3,782.60 |
| 003358 LAY ON ROLLERS | | | | | | | |
| 000 A | M | 1700-1630 | 11/01/07 | P SLMM | | | 3,261.00 |
| 003359 2-1" FEEDER | | | | | | | |
| 000 A | M | 1700-1630 | 11/01/07 | P SLMM | | | 4,235.00 |
| 003361 LAYON ARMS | | | | | | | |
| 000 A | M | 1700-1630 | 11/01/07 | P SLMM | | | 4,262.50 |
| 003372 UPGRADE TRIM SYSTEM | | | | | | | |
| 000 A | M | 1700-1630 | 01/31/08 | P SLMM | | | 7,567.44 |
| 003392 16" Die for Poly B | | | | | | | |
| 002 A | M | 1700-1630 | 09/04/08 | P SLMM | | | 158,697.01 |
| 003393 Additional 16" Die for PolyB | | | | | | | |
| 000 A | PolyB | 1700-1630 | 06/12/08 | P SLMM | | | 123,939.75 |
| 003394 B1 Air Ring | | | | | | | |
| 000 A | PolyB | 1700-1630 | 08/22/08 | P SLMM | | | 51,805.34 |
| 003395 B2 Oven Upgrade | | | | | | | |
| 002 A | PolyB | 1700-1630 | 03/14/08 | P SLMM | | | 47,885.00 |
| 003401 Journal Repair | | | | | | | |
| 000 A 060005 | PolyB | 1700-1630 | 07/31/08 | P SLMM | | | 25,835.00 |
| 003417 DC Driver for 3 Motor Drive | | | | | | | |
| 000 A | M | 1700-1630 | 01/01/09 | P SLMM | | | 3,219.68 |
| 003440 B1 Die | | | | | | | |
| 002 A | Poly B | 1700-1630 | 01/30/09 | P SLMM | | | 21,402.31 |
| **G/L Asset Acct No = 1700-1630** | | | | | | | |
| 003441 Roller Upgrades | | | | | | | |
| 002 A | Poly B | 1700-1630 | 01/30/09 | P SLMM | | | 34,628.00 |
| 003443 Driveshafts | | | | | | | |
| 000 A | Poly B | 1700-1630 | 01/01/09 | P SLMM | | | 3,740.50 |
| 003444 Crane for Slitting Room | | | | | | | |
| 000 A | Poly B | 1700-1630 | 01/01/09 | P SLMM | | | 10,861.00 |
| 003445 Drives for Winders | | | | | | | |
| 000 A | Poly B | 1700-1630 | 01/01/09 | P SLMM | | | 37,986.40 |
| 003446 Hoist in slitting room | | | | | | | |
| 000 A | M | 1700-1630 | 01/01/09 | P SLMM | | | 5,449.00 |
| 003447 B1 AIR RING | | | | | | | |
| 000 A | M | 1700-1630 | 01/01/09 | P SLMM | | | 21,552.50 |
| 003451 Nip/Touch/Layon/Rubber Rollers | | | | | | | |
| 002 A | M | 1700-1630 | 05/31/09 | P SLMM | | | 24,892.05 |
| 003453 Exact shaft and knurl crimp wheels | | | | | | | |
| 002 A | M | 1700-1630 | 06/04/09 | P SLMM | | | 5,489.86 |
| 003466 10ton Copeland Compressor B2 | | | | | | | |
| 000 A | M | 1700-1630 | 04/03/09 | P SLMM | | | 4,502.95 |
| 003467 Busch Pump | | | | | | | |
| 000 A | M | 1700-1630 | 03/30/09 | P SLMM | | | 13,265.55 |
| 003474 PolyB Autotherms | | | | | | | |
| 000 A | m | 1700-1630 | 06/16/09 | P SLMM | | | 12,635.46 |
| 003476 Nip Roll | | | | | | | |
| 000 A | M | 1700-1630 | 05/31/09 | P SLMM | | | 4,275.00 |
| 003477 Exact Knurl Crimp Wheels | | | | | | | |
| 000 A | M | 1700-1630 | 06/18/09 | P SLMM | | | 6,132.36 |
| 003483 Spare Melt Pump | | | | | | | |
| 000 A | M | 1700-1630 | 09/17/09 | P SLMM | | | 18,806.85 |
| 003486 Core Cutter | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---:|
| 000 A | | M 1700-1630 | 06/25/09 | P SLMM | | 27,574.00 |
| 003490 Slitter Accessories | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 50,354.14 |
| 003492 New Screw | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 27,857.25 |
| 003494 PolyB Spare Screw | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 10,514.60 |
| 003495 B1 & B2 Static Bars | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 13,664.46 |
| 003502 Oscillating Neck Flange | | | | | | |
| 000 A | | M 1700-1630 | 02/12/10 | P SLMM | | 5,434.16 |
| 003503 Busch Pump Repair | | | | | | |
| 000 A | | M 1700-1630 | 01/27/10 | P SLMM | | 11,304.00 |
| 003511 Machine Rollers | | | | | | |
| 002 A | | M 1700-1630 | 01/04/10 | P SLMM | | 15,013.80 |
| 003512 PIV Unit | | | | | | |
| 000 A | | M 1700-1630 | 01/10/10 | P SLMM | | 11,533.19 |
| 003513 NIP Rolls | | | | | | |
| 000 A | | M 1700-1630 | 01/10/10 | P SLMM | | 16,820.00 |
| 003516 Mandrel Rebuild | | | | | | |
| 002 A | | M 1700-1630 | 01/04/10 | P SLMM | | 10,124.80 |
| 003517 Ionstorm XR2 Model 300 | | | | | | |
| 000 A | | M 1700-1630 | 01/04/10 | P SLMM | | 5,745.19 |
| 003519 Polyflex B Spare Slitting Parts | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 9,847.60 |
| **G/L Asset Acct No = 1700-1630** | | | | | | |
| 003522 Vac Belt Drive Fan | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 1,225.80 |
| 003523 Cooling Rack | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 1,396.70 |
| 003526 3PH Energy Star Electric | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 1,623.83 |
| 003527 Alum Shell | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 5,560.00 |
| 003528 Pressure Transducer | | | | | | |
| 000 A | | M 1700-1630 | 01/01/10 | P SLMM | | 7,734.00 |
| 003536 Roller Upgrades | | | | | | |
| 002 A | | M 1700-1630 | 01/05/10 | P SLMM | | 6,129.50 |
| 003538 56" Stripping Ring | | | | | | |
| 000 A | | M 1700-1630 | 01/07/10 | P SLMM | | 18,606.97 |
| 003540 Schneider I/O Module | | | | | | |
| 000 A | | M 1700-1630 | 01/04/10 | P SLMM | | 5,326.00 |
| 003541 Manifold | | | | | | |
| 000 A | | M 1700-1630 | 01/04/10 | P SLMM | | 2,090.00 |
| 003542 Shafts and Layon Rollers | | | | | | |
| 002 A | | M 1700-1630 | 01/04/10 | P SLMM | | 17,582.22 |
| 003543 Bearings | | | | | | |
| 000 A | | M 1700-1630 | 01/08/10 | P SLMM | | 19,672.35 |
| 003544 Cooling Tower Water Lines | | | | | | |
| 000 A | | M 1700-1630 | 05/03/10 | P SLMM | | 37,463.00 |
| 003546 4 Oil Temp Control Units | | | | | | |
| 000 A | | M 1700-1630 | 01/22/10 | P SLMM | | 29,617.00 |
| 003547 30' Ext Screw | | | | | | |
| 000 A | | M 1700-1630 | 03/11/10 | P SLMM | | 67,282.32 |
| 003548 Slitter Room - Hoist Rebuild | | | | | | |
| 000 A | | M 1700-1630 | 04/30/10 | P SLMM | | 7,275.00 |
| 003549 Slitter Accessories | | | | | | |
| 000 A | | M 1700-1630 | 05/01/10 | P SLMM | | 58,114.79 |
| 003551 B1 Winder Driver | | | | | | |
| 000 A | | M 1700-1630 | 05/01/10 | P SLMM | | 30,925.80 |
| 003555 Slitter Accessories | | | | | | |
| 000 A | | M 1700-1630 | 05/01/10 | P SLMM | | 65,381.49 |
| 003556 Oil Auto Therms | | | | | | |
| 000 A | | M 1700-1630 | 04/16/10 | P SLMM | | 32,375.52 |
| 003558 16" Oil Cooled Die | | | | | | |
| 000 A | | M 1700-1630 | 03/25/10 | P SLMM | | 100,325.00 |
| 003566 LINE B3 | | | | | | |
| 000 A | PolyB | M 1700-1630 | 05/01/11 | P SLMM | | 4,028,809.96 |
| 003578 Reconfigure Fans for Full Exhaust | | | | | | |
| 000 A | PolyB | M 1700-1630 | 11/08/11 | P SLMM | | 10,140.00 |
| 003585 B2 Upgrade | | | | | | |
| 000 A | PolyB | M 1700-1630 | 03/28/12 | P SLMM | | 222,842.75 |
| 003589 AC for Computer Cabinets | | | | | | |
| 000 A | B1 & B2 | M 1700-1630 | 04/09/12 | P SLMM | | 23,631.40 |
| 003593 Ultrasonic Silo Reader | | | | | | |
| 000 A | PolyB | M 1700-1630 | 05/15/12 | P SLMM | | 2,065.90 |
| 003594 B1 Winder ABB Tension Controller | | | | | | |
| 000 A | PolyB | M 1700-1630 | 05/14/12 | P SLMM | | 3,320.28 |
| 003606 Replacement Sensor | | | | | | |
| 000 A | B3 | M 1700-1630 | 03/23/12 | P SLMM | | 3,450.00 |

**G/L Asset Acct No = 1700-1630**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003612 Harrington Hoist Motorized End Trucks | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 09/01/12 | P SLMM | | | 4,717.49 |
| 003613 Slitter Mandrel Upgrade | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 09/01/12 | P SLMM | | | 14,225.88 |
| 003614 Nip Roll Upgrades | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 09/01/12 | P SLMM | | | 12,465.00 |
| 003619 Motor Rebuild and Relay Repair | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/12 | P SLMM | | | 5,017.00 |
| 003621 Nip Roll Replacements | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/12 | P SLMM | | | 10,010.00 |
| 003622 B1 Die Oscillator Rings | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/12 | P SLMM | | | 2,582.00 |
| 003623 Master Roll Lift Hook | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/12 | P SLMM | | | 5,423.27 |
| 003624 Ultrasonic Silo Transducer | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/12 | P SLMM | | | 1,446.55 |
| 003627 Film Measurement System #2 | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 01/03/13 | P SLMM | | | 4,016.41 |
| 003628 Hardness Tester | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 01/03/13 | P SLMM | | Proceq USA | 7,747.55 |
| 003635 Macro B3 Winder Touch Roll | | | | | | | |
| 000 A | PolyB | m 1700-1630 | 02/01/13 | P SLMM | | | 2,383.72 |
| 003636 Nip Rolls B1 & B2 | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 02/01/13 | P SLMM | | | 9,340.00 |
| 003637 Touch Rolls B1 & B2 | | | | | | | |
| 000 A | PolyB | m 1700-1630 | 02/01/13 | P SLMM | | | 2,740.00 |
| 003638 B2 Intermediate Nip Gear Reducer | | | | | | | |
| 000 A | PolyB | m 1700-1630 | 02/01/13 | P SLMM | | | 1,435.72 |
| 003644 B1 Winder Load Cell Controller | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 02/01/13 | P SLMM | | | 1,460.89 |
| 003645 B3 Roller Upgrade | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 02/01/13 | P SLMM | | | 8,860.00 |
| 003646 B1/B2 Primary Nip Gear Reducer | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 02/01/13 | P SLMM | | | 7,027.18 |
| 003647 B1/B2 Die Oscillator Sprocket | | | | | | | |
| 000 A | PolyB | m 1700-1630 | 02/01/13 | P SLMM | | | 3,079.40 |
| 003654 Forklift Battery | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 02/01/13 | P SLMM | | | 3,199.30 |
| 003658 Filmaxx Unit | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 03/01/13 | P SLMM | | | 42,810.78 |
| 003659 AC Winder Cabinets B1-B3 | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 03/01/13 | P SLMM | | | 7,947.30 |
| 003668 Parotester Unit | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 07/01/13 | P SLMM | | | 6,898.47 |
| 003672 B1 Light Idler Rollers | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/13 | P SLMM | | | 8,427.15 |
| 003673 B1-B2 Operator Platform | | | | | | | |
| 000 A | PolyB | m 1700-1630 | 10/01/13 | P SLMM | | | 9,613.56 |
| 003674 B1-B2 Inside Oven Working Plate | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/13 | P SLMM | | | 3,767.04 |
| 003676 Electric Pallet Jack - Big Joe E 3000# Capacity | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/13 | P SLMM | | | 3,370.50 |
| 003680 PolyB Temp Control Study | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 11/01/13 | P SLMM | | | 25,000.00 |

**G/L Asset Acct No = 1700-1630**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003685 Mill Roll Cart | | | | | | | |
| 000 A | PolyB | m 1700-1630 | 03/01/14 | P SLMM | | Central Ohio | 3,870.00 |
| 003689 B3 Winder Motor | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 09/01/14 | P SLMM | | | 5,771.21 |
| 003690 PolyB Cooling Tower Fan Motor | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 09/01/14 | P SLMM | | | 3,691.13 |
| 003699 Kampf Slitter | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 09/01/14 | P SLMM | | | 381,690.42 |
| 003700 Kampf Slitter | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 09/01/14 | P SLMM | | | 381,690.42 |
| 003710 Kampf Slitter Roller (new core size) | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/15 | P SLMM | | | 29,723.10 |
| 003717 B1 Addition | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 10/01/15 | P SLMM | | | 11,560.00 |
| 003720 PolyB Nip Rolls | | | | | | | |
| 000 A | Poly B | M 1700-1630 | 10/01/15 | P SLMM | | | 18,465.00 |
| 003722 B3 Winder Light Curtain | | | | | | | |
| 000 A | PolyB | M 1700-1630 | 12/01/15 | P SLMM | | | 3,430.27 |
| 003723 B3 Touch Rolls | | | | | | | |
| 000 A | Poly B | M 1700-1630 | 12/01/15 | P SLMM | | | 2,230.00 |
| 003724 K1 Brake Assembly | | | | | | | |
| 000 A | Poly B | M 1700-1630 | 12/01/15 | P SLMM | | | 2,781.69 |
| 003739 Spare Friction Elements - Kampf Slitters | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 000 A | Poly B | M | 1700-1630 | 04/28/17 | P SLMM | Kampf | 23,219.00 |
| 003745 TRIM GRINDER | | | | | | | |
| 000 A  050603 | Polyflex B | M | 1700-1630 | 07/22/96 | P SLMM | BLOWER AP | 5,619.00 |
| 003746 BLOWER | | | | | | | |
| 000 A  050602 | Polyflex B | M | 1700-1630 | 07/22/96 | P SLMM | BLOWER AP | 3,978.00 |
| 003747 TRIM GRINDER | | | | | | | |
| 000 A  050603A | Polyflex B | M | 1700-1630 | 06/13/96 | P SLMM | | 3,032.85 |
| 003748 TRIM CUTTER | | | | | | | |
| 000 A  050601 | Polyflex B | M | 1700-1630 | 05/01/82 | P DB150 | | 4,991.00 |
| 003749 FLOOR SCALE | | | | | | | |
| 000 A  051000 | Polyflex B | M | 1700-1630 | 11/25/75 | P SLMM | | 3,755.00 |
| 003750 TRIM BLOWER | | | | | | | |
| 000 A  050600 | Polyflex B | M | 1700-1630 | 01/12/93 | P SLMM | | 1,835.05 |
| 003751 STORAGE RACKS | | | | | | | |
| 000 A  70003 | Polyflex B | M | 1700-1630 | 05/01/86 | P SLMM | | 1,494.49 |
| 003752 DOCTOR MACHINE | | | | | | | |
| 000 A  051008 | Polyflex B | M | 1700-1630 | 05/01/06 | P SLMM | STANFORD | 55,483.88 |
| 003753 Pneumo Hydraulic Power Unit | | | | | | | |
| 000 A | Poly B | m | 1700-1630 | 02/01/13 | P SLMM | | 4,693.50 |
| 003755 Instron Mini-44 Tensil Tester | | | | | | | |
| 000 A | Quality Lab | M | 1700-1630 | 04/01/18 | P SLMM | | 32,800.00 |
| 003761 B1 Upgrade | | | | | | | |
| 000 A | | M | 1700-1630 | 06/01/18 | P SLMM | | 115,250.57 |
| 003762 Poly B Spare Parts | | | | | | | |
| 000 A | | M | 1700-1630 | 06/01/18 | P SLMM | | 115,960.77 |
| 003763 B2 Conversion | | | | | | | |
| 000 A | | M | 1700-1630 | 06/01/18 | P SLMM | | 93,397.95 |
| 003766 B1 Dryer | | | | | | | |
| 000 A | | M | 1700-1630 | 06/01/18 | P SLMM | | 164,361.19 |
| 003770 Additional PMI Racks | | | | | | | |
| 000 A | | M | 1700-1630 | 06/01/18 | P SLMM | | 30,000.00 |
| **G/L Asset Acct No = 1700-1630** | | | | | | | |
| 003774 Spare B3 Die and Rotator | | | | | | | |
| 000 A | B3 | M | 1700-1630 | 09/13/18 | P SLMM | | 110,409.41 |
| 003775 Kampf Slitter Lifts | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 09/13/18 | P SLMM | | 73,824.59 |
| 003776 B2 Gauging System Upgrade | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 09/18/18 | P SLMM | | 52,688.10 |
| 003778 Spare Parts | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 09/13/18 | P SLMM | | 99,889.69 |
| 003779 Kampf Spares | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 09/13/18 | P SLMM | | 43,412.54 |
| 003787 Hoists | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 09/13/18 | P SLMM | | 19,860.00 |
| 003789 B Plant Debottlenecking | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 10/12/18 | P SLMM | | 395,505.15 |
| 003790 NGR Recycling Machine | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 12/01/18 | P SLMM | | 615,131.53 |
| 003795 Eco Floor Scrubber (SQF) | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 12/01/18 | P SLMM | | 22,197.27 |
| 003801 B1 B2 Platform (SQF) | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 01/15/19 | P SLMM | | 97,340.00 |
| 003802 UL Adhesion Testing Equipment (Instron) | | | | | | | |
| 000 A | Poly B | | 1700-1630 | 01/15/19 | P SLMM | | 9,943.77 |
| 003803 B Lines Resin Feeding and Drying Phase II | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 01/15/19 | P SLMM | | 192,005.16 |
| 003806 B3 Die Repair | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 40,000.00 |
| 003807 B3 Spare Rotator | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 113,640.00 |
| 003808 B3 Roller Alignment | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 13,970.00 |
| 003809 B3 Idler Rollers | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 15,543.51 |
| 003810 B3 Air Ring Heater | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 29,721.57 |
| 003811 Poly B Hydraulic Lift Table | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 19,112.43 |
| 003812 B1 PLC Modernization | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 76,982.33 |
| 003813 B Plant Debottlenecking (Additional) | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 20,936.00 |
| 003814 FTIR Lab Instrument (Quality) | | | | | | | |
| 000 A | Quality Lab | M | 1700-1630 | 03/04/19 | P SLMM | | 23,137.78 |
| 003815 B1 HMI Upgrade | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 19,275.00 |
| 003819 Elmendorf Tear Tester (Quality Lab) | | | | | | | |
| 000 A | Quality Lab | M | 1700-1630 | 03/04/19 | P SLMM | | 10,244.63 |
| 003820 Portable Welder | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 03/04/19 | P SLMM | | 2,768.13 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 003821 B1 Screen Changer Replacement | | | | | | |
| 000 A | Poly B | M 1700-1630 | 04/10/19 | P SLMM | | 50,181.48 |
| 003822 Polarizing Metallurgical Microscope (UL Testing) | | | | | | |
| 000 A | Poly B | m 1700-1630 | 04/10/19 | P SLMM | | 1,289.99 |
| 003823 B3 Safety Platform | | | | | | |
| 000 A | Poly B | M 1700-1630 | 04/10/19 | P SLMM | | 9,200.00 |
| **G/L Asset Acct No = 1700-1630** | | | | | | |
| 003825 Poly B Maintenance Hoist (B1 B2) | | | | | | |
| 000 A | Poly B | M 1700-1630 | 05/01/19 | P SLMM | | 40,509.55 |
| 003826 Poly B Extrusion Die Re-Plating | | | | | | |
| 000 A | Poly B | M 1700-1630 | 05/01/19 | P SLMM | | 20,826.47 |
| 003827 Poly B Auto Profile Control | | | | | | |
| 000 A | Poly B | M 1700-1630 | 05/01/19 | P SLMM | | 1,055,044.63 |
| 003828 B3 HMI Upgrade | | | | | | |
| 000 A | Poly B | M 1700-1630 | 07/01/19 | P SLMM | | 27,189.82 |
| 003829 B3 Idler Rollers | | | | | | |
| 000 A | Poly B | M 1700-1630 | 07/01/19 | P SLMM | | 29,532.58 |
| 003830 Kampf Slitter Spares | | | | | | |
| 000 A | Poly B | M 1700-1630 | 07/01/19 | P SLMM | | 15,739.99 |
| 003831 B3 Round Hoppers | | | | | | |
| 000 A | Poly B | M 1700-1630 | 07/01/19 | P SLMM | | 7,089.00 |
| 003841 Instron Spare | | | | | | |
| 000 A | Poly B | M 1700-1630 | 09/01/19 | P SLMM | | 37,111.30 |
| 003843 B3 Decking Over Web Path | | | | | | |
| 000 A | Poly B | M 1700-1630 | 10/01/19 | P SLMM | | 62,000.00 |
| 003848 B Cores & Racks | | | | | | |
| 000 A | Poly B | M 1700-1630 | 02/01/20 | P SLMM | | 37,000.00 |
| 003853 Poly B Process Monitoring Camera | | | | | | |
| 000 A | Poly B | M 1700-1630 | 04/01/20 | P SLMM | | 10,750.82 |
| 003854 K2 6" Core Retro Fit | | | | | | |
| 000 A | Poly B | M 1700-1630 | 04/01/20 | P SLMM | | 20,359.50 |
| 003855 B3 Spare Melt Pump | | | | | | |
| 000 A | Poly B | M 1700-1630 | 04/01/20 | P SLMM | | 24,107.08 |
| 003857 Surge Hopper Upgrade | | | | | | |
| 000 A | Poly B | M 1700-1630 | 04/01/20 | P SLMM | | 4,755.45 |
| 003858 Poly B Spare Parts | | | | | | |
| 000 A | Poly B | M 1700-1630 | 05/01/20 | P SLMM | | 78,531.91 |
| 003859 Layon Rolls | | | | | | |
| 000 A | Poly B | M 1700-1630 | 06/01/20 | P SLMM | | 71,648.16 |
| 003860 Kampf Unwind Hoist | | | | | | |
| 000 A | Poly B | M 1700-1630 | 06/01/20 | P SLMM | | 23,644.94 |
| 003861 Spare Kampf Rewind Shaft | | | | | | |
| 000 A | Poly B | M 1700-1630 | 06/01/20 | P SLMM | | 10,835.66 |
| 003862 B Line Trim Handling Phase 1 | | | | | | |
| 000 A | Poly B | M 1700-1630 | 07/01/20 | P SLMM | | 54,089.21 |
| 003866 MUL Racks | | | | | | |
| 000 A | Poly B | M 1700-1630 | 08/01/20 | P SLMM | | 49,500.00 |
| 003867 B Slitting Critical Spares | | | | | | |
| 000 A | Poly B | M 1700-1630 | 08/01/20 | P SLMM | | 34,377.21 |
| 003868 Dryer Chiller | | | | | | |
| 000 A | Poly B | M 1700-1630 | 09/01/20 | P SLMM | | 25,013.10 |
| 003872 Kampf HMI Upgrade | | | | | | |
| 000 A | Poly B | M 1700-1630 | 09/01/20 | P SLMM | | 27,857.39 |
| 003873 B1 B2 Conair Controls Upgrade | | | | | | |
| 000 A | Poly B | M 1700-1630 | 10/01/20 | P SLMM | | 47,629.00 |
| 003875 Cooling Tower Pump Rebuild | | | | | | |
| 000 A | Poly B | M 1700-1630 | 10/01/20 | P SLMM | | 20,248.26 |
| 003877 B3 Upgrade | | | | | | |
| 000 A | Poly B | M 1700-1630 | 11/01/20 | P SLMM | | 148,273.60 |
| 003879 B Air Ring Upgrades | | | | | | |
| 000 A | Poly B | M 1700-1630 | 11/01/20 | P SLMM | | 58,299.94 |
| **G/L Asset Acct No = 1700-1630** | | | | | | |
| 003880 B1 Barrel Cooling Upgrade | | | | | | |
| 000 A | Poly B | M 1700-1630 | 11/01/20 | P SLMM | | 4,531.38 |
| 003883 Kampf Software | | | | | | |
| 000 A | Poly B | M 1700-1630 | 12/01/20 | P SLMM | | 4,025.00 |
| 003885 Pallet Jacks B Building | | | | | | |
| 000 A | Poly B | M 1700-1630 | 12/01/20 | P SLMM | | 6,287.50 |
| 003888 B Lab Sample Conditioning Chamber | | | | | | |
| 000 A | Poly B | M 1700-1630 | 01/01/21 | P SLMM | | 14,501.00 |
| 003889 Replace 1 Driver B1, B2 Extruders | | | | | | |
| 000 A | Poly B | M 1700-1630 | 02/01/21 | P SLMM | | 63,937.18 |
| 003892 Power & Ducting K-1 Pavel | | | | | | |
| 000 A | Poly B | M 1700-1630 | 02/01/21 | P SLMM | | 11,027.65 |
| 003893 Add'l B Plant Debottlenecking | | | | | | |
| 000 A | Poly B | M 1700-1630 | 03/01/21 | P SLMM | | 24,362.50 |
| 003894 B3 Winder Network Upgrade | | | | | | |
| 000 A | Poly B | M 1700-1630 | 03/01/21 | P SLMM | | 56,188.90 |
| 003897 Add'l B1 B2 Maintenance Hoists | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---:|
| | 000 A | Poly B | M | 1700-1630 | 03/01/21 | P SLMM | 19,683.08 |
| 003899 | Poly B Maintenance Storage Racking | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 03/01/21 | P SLMM | 1,850.96 |
| 003900 | Poly B Roll Hardness Tester | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 03/01/21 | P SLMM | 8,275.00 |
| 003906 | B-5 | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 04/01/21 | P SLMM | 7,931,787.75 |
| 003907 | Pilot Blown Film Line | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 05/01/21 | P SLMM | 26,561.23 |
| 003908 | B Chiller Controller Upgrade | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 05/01/21 | P SLMM | 23,230.16 |
| 003911 | Box Tilter B Resin Handling | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 05/01/21 | P SLMM | 16,508.90 |
| 003912 | Spare Kampf Lay-Ons | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 05/01/21 | P SLMM | 34,380.52 |
| 003913 | B-3 Winder Shafts | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 05/01/21 | P SLMM | 25,118.55 |
| 003915 | Extrusion Bubble Break Detection Poly B | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 08/01/21 | P SLMM | 13,658.91 |
| 003916 | Kampf Auto Packaging System | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 08/01/21 | P SLMM | 899,354.99 |
| 003919 | Replace Driver B1,B2 Extruders II | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 11/01/21 | P SLMM | 4,130.00 |
| 003921 | B Line Trim Handling Phase 1 II | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 11/01/21 | P SLMM | 166,315.68 |
| 003922 | Quality Lab UL Testing Equipment | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 11/01/21 | P SLMM | 8,009.96 |
| 003923 | B Lines Winder Safety Mats | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 11/01/21 | P SLMM | 6,541.15 |
| 003924 | B-5 II | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 11/01/21 | P SLMM | 68,396.58 |
| 003928 | B Rebuild Rotator | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 11/01/21 | P SLMM | 76,169.61 |
| 003930 | Hoist Replacement | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 11/01/21 | P SLMM | 37,676.00 |
| 003931 | B-5 Roll Cart Extension | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 11/01/21 | P SLMM | 11,971.85 |
| **G/L Asset Acct No = 1700-1630** | | | | | | | |
| 003932 | B Cores & Racks | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 02/01/22 | P SLMM | 22,964.39 |
| 003933 | NGR Water Filtration | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 02/01/22 | P SLMM | 10,382.50 |
| 003934 | Box Tilters Phase 2 | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 02/01/22 | P SLMM | 15,500.00 |
| 003935 | Chiller Remote Controls | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 02/01/22 | P SLMM | 10,407.00 |
| 003936 | Slow Puncture Test Apparatus | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 02/01/22 | P SLMM | 6,768.22 |
| 003937 | B-1/B-2 Spare Melt Pump Rebuild | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 02/01/22 | P SLMM | 45,572.40 |
| 003938 | B-5 Treater Static Dissipation | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 02/01/22 | P SLMM | 4,681.00 |
| 003940 | Barrier Testing Equipment | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 04/01/22 | P SLMM | 198,315.19 |
| 003944 | K-2 Unload Cart | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 05/01/22 | P SLMM | 23,370.28 |
| 003945 | UL Upgrades | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 07/01/22 | P SLMM | 41,865.14 |
| 003947 | Kampf Blade Shaft Assembly Replacement | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 07/01/22 | P SLMM | 15,624.28 |
| 003949 | Maintenance Forklift Engine Replacement | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 07/01/22 | P SLMM | 11,040.06 |
| 003951 | NGR Shredder Gearbox | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 09/01/22 | P SLMM | 14,742.03 |
| 003952 | B5 Inner Dip Lip | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 10/01/22 | P SLMM | 13,699.22 |
| 003955 | Syncro/MaGuire Loader Controller Spare | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 01/01/23 | P SLMM | 4,121.00 |
| 003956 | B-1 Controls Upgrade | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 03/01/23 | P SLMM | 299,125.30 |
| 003957 | B-5 Feeder Vac Pump Spares | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 03/01/23 | P SLMM | 10,141.15 |
| 003958 | B-5 Conveyance Vac Pumps | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 03/01/23 | P SLMM | 16,213.00 |
| 003959 | Metal Cores | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 05/01/23 | P SLMM | 30,870.00 |
| 003960 | BYK Gardner Haze-Gard Meter | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 07/01/23 | P SLMM | 29,624.00 |
| 003962 | B-5 Maintenance Hoist | | | | | | |
| | 000 A | Poly B | M | 1700-1630 | 08/01/23 | P SLMM | 91,633.52 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003963 B-5 Spares | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 09/01/23 | P | SLMM | 190,959.52 |
| 003964 B-5 Winder Drum Layon Rolls | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 09/01/23 | P | SLMM | 33,106.44 |
| 003970 B-5 Die Cleaning/Training | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 04/01/24 | P | SLMM | 24,125.00 |
| 003973 K-1/K-2 Spare HMI | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | | P | NoDep | 0.00 |
| 003974 K-1 Robot Spare Drives | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 10/01/24 | P | SLMM | 4,284.83 |
| 003975 K-1/K-2 Friction Elements | | | | | | | |
| 000 A | Poly B | M | 1700-1630 | 10/01/24 | P | SLMM | 11,349.48 |

G/L Asset Acct No = 1700-1630 $ 31,986,288.74
Count = 376

### G/L Asset Acct No = 1700-1660

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 001551 3400 PRINTER | | | | | | | |
| 000 A 000145 | 14 | C | 1700-1660 | 08/15/94 | P | SLMM | $ 1,933.46 |
| 001552 3400 PRINTER | | | | | | | |
| 000 A 000142 | 14 | C | 1700-1660 | 08/15/94 | P | SLMM | 1,933.46 |
| 001553 3400 PRINTER | | | | | | | |
| 000 A 000149 | 14 | C | 1700-1660 | 08/15/94 | P | SLMM | 1,933.46 |
| 001961 INTERMEC 3600 BAR CODE PRINTER | | | | | | | |
| 000 A 031014 | 14 | C | 1700-1660 | 12/14/95 | P | SLMM | 3,419.38 |
| 002550 INTERMEC 3400 PRINTER - GRAPHICS | | | | | | | |
| 000 A 000364 | | C | 1700-1660 | 08/01/98 | P | SLMM | DAVIS BUSIN | 1,957.30 |
| 002788 LASER JET PRINTER | | | | | | | |
| 000 A 000703 | | F | 1700-1660 | 03/01/01 | P | SLMM | 1,055.23 |
| 002868 DELL COMPUTER - HOWELL | | | | | | | |
| 000 A 000880 | | C | 1700-1660 | 11/01/01 | P | SLMM | DELL | 707.47 |
| 002880 COMPUTER BLOW LINE BACKUP | | | | | | | |
| 000 A 000886 | | C | 1700-1660 | 11/29/01 | P | SLMM | 1,932.04 |
| 002962 DELL MINI TOWER - GILLENWATER | | | | | | | |
| 000 A 000893 | | C | 1700-1660 | 09/26/02 | P | SLMM | 1,206.53 |
| 003074 DELL DIMENSION - CLEMENS | | | | | | | |
| 000 A 850 | | C | 1700-1660 | 08/03/00 | P | SLMM | 0.00 |
| 003078 INTERMEC 3400 PRINTER - MANUFACTURING | | | | | | | |
| 000 A 853 | | C | 1700-1660 | 08/03/00 | P | SLMM | 0.00 |
| 003079 INTERMEC 3400 PRINTER - MANUFACTURING | | | | | | | |
| 000 A 854 | | C | 1700-1660 | 08/03/00 | P | SLMM | 0.00 |
| 003080 INTERMEC 3600 PRINTER - MANUFACTURING | | | | | | | |
| 000 A 855 | | C | 1700-1660 | 08/03/00 | P | SLMM | 0.00 |
| 003084 DELL TOWER - MALABY | | | | | | | |
| 000 A 860 | | C | 1700-1660 | 08/03/00 | P | SLMM | 0.00 |
| 003110 NETWORK HARDWARE | | | | | | | |
| 000 A | | C | 1700-1660 | 05/03/01 | P | NoDep | 0.00 |
| 003116 INVENTORY SCANNER | | | | | | | |
| 000 A | | C | 1700-1660 | 05/03/01 | P | NoDep | 0.00 |
| 003135 INVENTORY SCANNER | | | | | | | |
| 000 A | | C | 1700-1660 | 07/01/01 | P | NoDep | 0.00 |
| 003205 Desktop Computer-Stephens.N | | | | | | | |
| 000 A 447 | Polyflex B | C | 1700-1660 | 03/05/05 | P | SLMM | 1,140.09 |

G/L Asset Acct No = 1700-1660 $ 17,218.42
Count = 18

### G/L Asset Acct No = 1700-1670

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 001432 OAK TABLE,BOOKCASE,CABINET-CERNY | | | | | | | |
| 000 A 26091 | | F | 1700-1670 | 02/19/96 | P | SLMM | OFFICE FUR | $ 1,306.20 |
| 001890 TYPEWRITER 1530567 | | | | | | | |
| 000 A 000077 | | F | 1700-1670 | 05/01/84 | P | DB150 | 968.78 |
| 002397 CANON FAX MACHINE | | | | | | | |
| 000 A 000207 | | F | 1700-1670 | 11/15/91 | P | SLMM | 3,431.59 |
| 002802 CHERRY DESK/CREDENZA/DOOR HUTCH/LATERAL FILE/END TABLE | | | | | | | |
| 000 A 700004 | ROBERT | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 4,557.33 |
| 002803 2 SLED BASE GUEST CHAIRS | | | | | | | |
| 000 A 700005 | ROBERT | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 505.50 |

### G/L Asset Acct No = 1700-1670

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 002804 4 SLED BASE GUEST CHAIRS | | | | | | | |
| 000 A 700006 | WAITING AIF | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 1,010.99 |
| 002805 42" ROUND TABLE-MAHOGANY | | | | | | | |
| 000 A 700007 | WAITING AIF | 1700-1670 | 06/01/01 | P | SLMM | CONTINENA | 324.63 |
| 002806 PEDESTAL DESK/CREDENZA/HUTCH/CHAIR | | | | | | | |
| 000 A 700008 | JOHN | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 1,977.22 |
| 002807 PEDESTAL DESK/CREDENZA/CHAIR | | | | | | | |
| 000 A 700009 | DIANE | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 1,335.97 |
| 002808 4 GUEST CHAIRS WITH MAHOGANY ON WALNUT | | | | | | | |
| 000 A 700010 | MGMT OFF | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 1,011.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 002809 PEDESTAL DESK/CREDENZA/MGMT CHAIR/2 CHAIRS W/OUT ARMS | | | | | | | |
| 000 A 700011 | PRODUCT | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 1,116.80 |
| 002810 RECEPTION DESK/RETURN/UPPER DESK | | | | | | | |
| 000 A 700012 | RECEPTIO | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 1,030.22 |
| 002811 SQUARE TABLE AND CHAIRS | | | | | | | |
| 000 A 700013 | BREAKROO | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 2,192.93 |
| 002812 4 EXECUTIVE CHAIRS | | | | | | | |
| 000 A 700014 | MGMT OFF | F | 1700-1670 | 06/01/01 | P | SLMM | CONTINENT | 1,020.70 |
| 002815 INTERMEC PRINTERS | | | | | | | |
| 000 A 000864 & 865 | | F | 1700-1670 | 06/01/01 | P | SLMM | INTERMEC | 6,804.08 |
| 002817 PHONE SYSTEM | | | | | | | |
| 000 A 700018 | | F | 1700-1670 | 06/01/01 | P | SLMM | EXECUTONE | 29,527.44 |
| 002819 SECURITY SYSTEM | | | | | | | |
| 000 A 700020 | | F | 1700-1670 | 06/01/01 | P | SLMM | KTM SECUR | 13,433.20 |
| 002995 FURNITURE-H.STEPHENS | | | | | | | |
| 000 A 2200 | | F | 1700-1670 | 02/27/03 | P | SLMM | | 1,494.00 |
| 003023 COPIER | | | | | | | |
| 000 A 000102 | | F | 1700-1670 | 06/26/03 | P | SLMM | | 9,411.75 |
| 003661 Copier (High Bay Area) | | | | | | | |
| 000 A | PolyB | F | 1700-1670 | 07/01/13 | P | SLMM | Toshiba | 3,202.50 |
| 003793 Chemical Control Cage (SQF) | | | | | | | |
| 000 A | Poly B | F | 1700-1670 | 12/01/18 | P | SLMM | | 21,525.81 |

G/L Asset Acct No = 1700-1670    $ 107,188.64
Count = 21

**G/L Asset Acct No = 1800-1620**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 001684 NEW ROOF | | | | | | | |
| 000 A 16047 | 362510 | B | 1800-1620 | 08/01/97 | R | SLMM | $ 71,000.00 |
| 001725 DOCK SEALS | | | | | | | |
| 000 A 16048 | 362510 | B | 1800-1620 | 01/02/98 | R | SLMM | 4,438.33 |
| 002083 SLITTING ROOM | | | | | | | |
| 000 A 16067 | 362510 | B | 1800-1620 | 08/01/80 | P | SLMM | 7,464.00 |
| 002085 RECEPTACLES - NEW ADDITION | | | | | | | |
| 000 A 16065 | 362510 | B | 1800-1620 | 06/01/77 | P | SLMM | 2,882.00 |
| 002088 PLANT OFFICE | | | | | | | |
| 000 A 16062 | 362510 | B | 1800-1620 | 12/01/75 | P | SLMM | 3,225.00 |
| 002145 ELEC E\SIDE OF BLDG | | | | | | | |
| 000 A 16182 | 362510 | B | 1800-1620 | 10/01/84 | P | SLMM | 7,568.96 |
| 002146 FRENCH DRAINS | | | | | | | |
| 000 A 16034 | 362510 | B | 1800-1620 | 07/31/77 | P | SLMM | 4,594.00 |
| 002147 OVERHEAD DOORS | | | | | | | |
| 000 A 16036 | 362510 | B | 1800-1620 | 08/31/77 | P | SLMM | 1,350.00 |
| 002149 FIRE WALL | | | | | | | |
| G/L Asset Acct No = 1800-1620 | | | | | | | |
| 000 A 16043 | 362510 | B | 1800-1620 | 11/01/76 | P | SLMM | 8,060.00 |
| 002542 ROOF | | | | | | | |
| 000 A 16068 | 362510 | B | 1800-1620 | 07/01/98 | R | SLMM | 40,500.00 |
| 002543 BUILDING EXPANSION | | | | | | | |
| 000 A 16069 | 362510 | B | 1800-1620 | 07/01/98 | R | SLMM | 294,072.63 |
| 002592 EXTRUSION HALL LIGHTING | | | | | | | |
| 000 A 16049 | 362510 | B | 1800-1620 | 01/02/99 | R | SLMM | 21,714.00 |
| 002604 EXPAND ENTRANCE DOOR TO EXTRUSION HALL | | | | | | | |
| 000 A 16051 | | B | 1800-1620 | 02/01/99 | R | SLMM | 7,281.00 |
| 002605 400 WATT HALIDE FIXTURES-RECLAIM AREA | | | | | | | |
| 000 A 16050 | | B | 1800-1620 | 02/01/99 | R | SLMM | 12,648.00 |
| 002647 ENLARGE BULK TRUCK TRAFFIC WAY | | | | | | | |
| 000 A 16052 | | B | 1800-1620 | 09/02/99 | R | SLMM | 7,000.00 |
| 002650 ASPHALT TRASH PAD | | | | | | | |
| 000 A 11162 | | B | 1800-1620 | 09/02/99 | R | SLMM | 7,360.00 |
| 002714 RESTROOM EXHAUST FAN | | | | | | | |
| 000 A 16054 | | B | 1800-1620 | 05/04/00 | R | SLMM | 4,514.00 |
| 002722 SECURITY SYSTEM | | | | | | | |
| 000 A 16055 | | B | 1800-1620 | 06/01/00 | R | SLMM | HONEYWEL | 21,044.25 |
| 002729 TRASH COMPACTOR AWNING | | | | | | | |
| 000 A 00021 | | B | 1800-1620 | 06/29/00 | R | SLMM | CAPITAL CIT | 3,573.29 |
| 002741 MAINTENANCE & RECLAIM LIGHTING | | | | | | | |
| 000 A 16056 | | B | 1800-1620 | 09/28/00 | R | SLMM | 8,275.00 |
| 002742 UPGRADE 120V POWER PANELS | | | | | | | |
| 000 A 16057 | | B | 1800-1620 | 09/28/00 | R | SLMM | JESS HOWA | 6,157.00 |
| 002856 SPRINKLER | | | | | | | |
| 000 A 2743 | | B | 1800-1620 | 08/02/01 | R | SLMM | 5,561.95 |
| 002904 AIR CONDITIONERS | | | | | | | |
| 000 A 2744 | | B | 1800-1620 | 05/02/02 | R | SLMM | 14,025.58 |
| 002911 LOUVERS OF AIR INLETS | | | | | | | |
| 000 A 2745 | | B | 1800-1620 | 05/30/02 | R | SLMM | 25,219.23 |
| 002981 CONCRETE PAD | | | | | | | |
| 000 A 002748 | | B | 1800-1620 | 11/26/02 | R | SLMM | 9,195.00 |
| 003027 PARKING LOT RESEAL | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 000 A 2749 | | B | 1800-1620 | 08/28/03 | R | SLMM | | 18,150.00 |
| 003141 AIR CONDENTIONERS | | | | | | | | |
| 000 A 2750 | Polyflex T | B | 1800-1620 | 07/01/04 | R | SLMM | | 47,236.00 |
| 003146 SECURITY DOORS W/KEYSCAN SECURITY CARDS | | | | | | | | |
| 000 A 2751 | Polyflex T | B | 1800-1620 | 07/01/04 | R | SLMM | | 27,472.60 |
| 003276 PARKING LOT REPAVING | | | | | | | | |
| 000 A none | POLYFLEX | B | 1800-1620 | 05/22/06 | R | SLMM | ARMOR PAV | 8,175.00 |
| 003277 BLOCK REPAIRS TO DOCK DOORS, TRASH COMPACTOR AREA, & RECLAIM AREA | | | | | | | | |
| 000 A none | POLYFLEX | B | 1800-1620 | 04/28/06 | R | SLMM | RCI RE-CON | 20,470.00 |
| 003336 Poly T Concrete repair | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 11/12/07 | R | SLMM | Re-Construc | 10,205.00 |
| 003382 Renovate men's restroom in T plant | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 03/26/08 | R | SLMM | | 7,330.00 |
| 003448 DOCK LEVELER | | | | | | | | |
| 000 A | | B | 1800-1620 | 02/27/09 | R | SLMM | | 6,550.00 |
| 003449 POLY T ROOF DAMAGE | | | | | | | | |
| 000 A | | B | 1800-1620 | 01/01/09 | R | SLMM | | 25,000.00 |
| 003570 Recondition A/C unit | | | | | | | | |
| 000 A | | B | 1800-1620 | 06/01/11 | R | SLMM | | 8,166.29 |
| 003588 PolyT Lighting | | | | | | | | |
| G/L Asset Acct No = 1800-1620 | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 05/30/12 | R | SLMM | | 135,019.44 |
| 003629 High voltage capacitor and fuse | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 01/03/13 | P | SLMM | | 9,354.00 |
| 003650 Analog Phone Line Install | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 02/01/13 | P | SLMM | | 2,852.00 |
| 003665 Air Curtains (OP Area) | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 07/01/13 | R | SLMM | Mid-Ohio Ele | 10,281.05 |
| 003670 Customer Service Area Renovation | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 07/01/13 | R | SLMM | | 18,651.92 |
| 003677 PolyT Electric Upgrade | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 11/01/13 | R | SLMM | | 13,796.70 |
| 003679 Arc Flash Analysis | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 11/01/13 | R | SLMM | | 18,050.00 |
| 003686 Roof Repair | | | | | | | | |
| 000 A | Area over | B | 1800-1620 | 03/01/14 | R | SLMM | | 12,750.00 |
| 003702 PolyT Power Audit | | | | | | | | |
| 000 A | PolyT | b | 1800-1620 | 09/01/14 | R | SLMM | | 30,000.00 |
| 003713 Poly T Roof Repair | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 10/01/15 | R | SLMM | | 4,873.00 |
| 003726 LED lights for outdoor entryways | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 12/01/15 | R | SLMM | | 2,612.50 |
| 003731 Dock Shelter | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 01/01/17 | P | SLMM | McCormick E | 15,585.19 |
| 003732 Move Administration to Polyflex | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 11/01/16 | P | SLMM | | 82,614.35 |
| 003734 Parking Lot Refinishing | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 11/01/16 | P | SLMM | | 64,614.50 |
| 003735 Roof | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 11/01/16 | P | SLMM | | 112,232.97 |
| 003737 Office Renovations | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 01/01/17 | P | SLMM | | 277,232.09 |
| 003756 Electrical Updates for shop floor monitors | | | | | | | | |
| 000 A | PolyT | B | 1800-1620 | 04/01/18 | R | SLMM | | 9,658.23 |
| 003759 Columbus Building Renovations (pt 2) | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 06/01/18 | R | SLMM | | 36,055.00 |
| 003769 Poly T Water Line Repair | | | | | | | | |
| 000 A | | B | 1800-1620 | 06/01/18 | R | SLMM | | 13,742.00 |
| 003780 Poly T Office Renovations | | | | | | | | |
| 000 A | Poly T Office | B | 1800-1620 | 09/18/18 | R | SLMM | | 50,355.55 |
| 003782 Employee Entrance Renovation | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 09/18/18 | R | SLMM | | 11,775.75 |
| 003805 Lighting Upgrades | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 01/15/19 | R | SLMM | | 14,700.00 |
| 003818 Poly T Rapid Roll Door (Cold Warehouse) | | | | | | | | |
| 000 A | Cold Wareh | B | 1800-1620 | 03/04/19 | R | SLMM | | 16,450.00 |
| 003836 Poly T Warehouse Fire Protection | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 09/01/19 | R | SLMM | | 48,885.00 |
| 003837 T4 Control Room Fire Upgrade | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 09/01/19 | R | SLMM | | 30,448.02 |
| 003840 Poly T Insect Control SQF | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 09/01/19 | R | SLMM | | 2,445.84 |
| 003851 T4 Die Area Lighting | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 03/01/20 | R | SLMM | | 7,593.00 |
| 003864 T Office Breakroom | | | | | | | | |
| G/L Asset Acct No = 1800-1620 | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 07/01/20 | R | SLMM | | 46,503.67 |
| 003865 T Safety Enchancements | | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 07/01/20 | R | SLMM | | 21,515.47 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003870 Regulatory Capital | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 09/01/20 | R SLMM | | 7,250.00 |
| 003871 HVAC Ionizer | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 09/01/20 | R SLMM | | 14,150.00 |
| 003878 T Production Breakroom | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 11/01/20 | R SLMM | | 18,515.56 |
| 003886 T Forklift Passage | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 01/01/21 | R SLMM | | 40,765.00 |
| 003887 T Fire Alarm Panel Upgrade | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 01/01/21 | R SLMM | | 8,200.00 |
| 003895 Add'l T4 Control Room Fire Upgrade | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 03/01/21 | R SLMM | | 2,275.00 |
| 003898 T4 Die Area Lighting | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 03/01/21 | R SLMM | | 6,680.00 |
| 003903 Trip Hazard Elimination T | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 04/01/21 | R SLMM | | 17,442.00 |
| 003941 T Tower Water Filter | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 04/01/22 | R SLMM | | 25,981.42 |
| 003943 Upgrade T Light Fixtures | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 05/01/22 | R SLMM | | 49,964.00 |
| 003953 T Safety Capital | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 01/01/23 | R SLMM | | 22,990.60 |
| 003961 Forklift Pedestrian Safety | | | | | | | |
| 000 A | Poly T | B | 1800-1620 | 07/01/23 | R SLMM | | 2,475.10 |

G/L Asset Acct No = 1800-1620  $ 2,114,814.03
Count = 76

**G/L Asset Acct No = 1800-1630**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 001431 80in AMERICAN TURNMASTER LATHE | | | | | | | |
| 000 A 702 | 362510 | M | 1800-1630 | 04/24/96 | P SLMM | THE DO ALL | $ 26,880.00 |
| 001441 McCLAIN MAG 4 COMPACTOR | | | | | | | |
| 000 A 081005 | 362510 | M | 1800-1630 | 06/06/96 | P SLMM | JOHNSON D | 24,368.99 |
| 001442 INSECT-O-CUTOR ELECTRONICS | | | | | | | |
| 000 A 704 | 362510 | M | 1800-1630 | 05/20/96 | P SLMM | | 9,338.49 |
| 001461 AIR DRYER/AIR COMPRESSOR | | | | | | | |
| 000 K 050502 | 455701 | M | 1800-1630 | 08/01/96 | P SLMM | WW GRAING | 5,927.22 |
| 001518 SEPARATOR/WATER TREATMENT | | | | | | | |
| 000 K 050503 | 455701 | M | 1800-1630 | 06/03/85 | P SLMM | | 1,500.00 |
| 001523 C500-50 FORKLIFT | | | | | | | |
| 000 A 080302 | 362510 | M | 1800-1630 | 07/15/96 | P SLMM | | 16,279.64 |
| 001627 LINE 4 GEAR BOXES | | | | | | | |
| 000 A 080803 | 362510 | M | 1800-1630 | 02/28/97 | P SLMM | MOTION IND | 45,661.33 |
| 001648 TIME CLOCK | | | | | | | |
| 000 A 710 | 362510 | M | 1800-1630 | 03/28/97 | P SLMM | | 2,050.00 |
| 001658 PFX 700 TENTER GEAR REDUCER | | | | | | | |
| 000 A 080803 | 362510 | M | 1800-1630 | 05/01/97 | P SLMM | | 8,983.84 |
| 001674 SCRAP RECLAIM SYSTEM | | | | | | | |
| 000 A 080600 | 362510 | M | 1800-1630 | 07/01/97 | P SLMM | | 9,050.50 |
| 001690 DUCT & BLOWER | | | | | | | |
| 000 A 714 | 362510 | M | 1800-1630 | 09/01/97 | P SLMM | | 36,780.60 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | |
| 001708 HORIZONTAL BAND SAW | | | | | | | |
| 000 A 081030 | 362510 | M | 1800-1630 | 05/01/87 | P SLMM | | 3,500.00 |
| 001712 BALDOR BENCH GRINDER | | | | | | | |
| 000 A 081032 | 362510 | M | 1800-1630 | 07/31/74 | P SLMM | | 1,520.00 |
| 001714 WEKO COMPACT II SPRAYER LINE 4 | | | | | | | |
| 000 A 080803 | 362510 | M | 1800-1630 | 11/01/97 | P SLMM | | 29,036.75 |
| 001723 LINE 2 GRIPPERS | | | | | | | |
| 000 A 080801E | 362510 | M | 1800-1630 | 01/02/98 | P SLMM | | 4,630.00 |
| 001738 REZNOR SPACE HEATER | | | | | | | |
| 000 A 000341 | 362510 | M | 1800-1630 | 02/01/98 | P SLMM | UNITED REF | 2,873.00 |
| 001739 REZNOR HEATER | | | | | | | |
| 000 A 000342 | 362510 | M | 1800-1630 | 02/01/98 | P SLMM | UNITED REF | 2,623.00 |
| 001743 LINE 4 DUST COLLECTOR | | | | | | | |
| 000 A 080803A | 362510 | M | 1800-1630 | 02/01/98 | P SLMM | | 2,840.07 |
| 001744 LINE 3 WINDER | | | | | | | |
| 000 A 080802A | 362510 | M | 1800-1630 | 02/01/98 | P SLMM | | 40,420.00 |
| 001753 LANTECH STRETCH WRAPPER | | | | | | | |
| 000 A 000344 | 362517 | M | 1800-1630 | 03/01/98 | P SLMM | ZELLERBAC | 12,558.40 |
| 001754 ABSCO SCALE | | | | | | | |
| 000 A 000345 | 362517 | M | 1800-1630 | 03/01/98 | P SLMM | ZELLERBAC | 5,300.00 |
| 001926 70" DUSENBERY SLITTER | | | | | | | |
| 000 A 030014 | 14 | M | 1800-1630 | 10/27/88 | P SLMM | | 33,843.05 |
| 002089 84" AUTO SLITTER | | | | | | | |
| 000 A 060001 | 362510 | M | 1800-1630 | 09/01/87 | P SLMM | | 138,089.14 |
| 002093 HOIST | | | | | | | |
| 000 A 16151 | 362510 | M | 1800-1630 | 05/01/82 | P DB150 | | 7,356.00 |
| 002098 FLOOR SCALE | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 000 A 061001 | 362510 | M 1800-1630 | 11/29/88 | P SLMM | | 3,522.00 |
| 002099 TOLEDO SCALE | | | | | | |
| 000 A 061002 | 362510 | M 1800-1630 | 12/09/92 | P SLMM | | 2,289.48 |
| 002161 CORE CUTTER | | | | | | |
| 000 A 080401 | 362510 | M 1800-1630 | 12/18/86 | P SLMM | | 12,759.30 |
| 002162 LINE 3 INSTALLATION | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 140,935.37 |
| 002163 LINE 3 INSTALLATION | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 7,568.96 |
| 002164 LINE 3 | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 33,715.18 |
| 002165 LINE 3 FEED SYSTEM | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 41,274.54 |
| 002166 LINE 3 EXTRUDER | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 16,756.66 |
| 002167 LINE 3 ROLL STRETCH | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 582,511.82 |
| 002169 LINE 2 TDO ADDITION | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 316.27 |
| 002170 LINE 3 WINDER | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 12,749.26 |
| 002172 LINE 3 TRIM SYSTEM | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 12,180.80 |
| 002173 LINE 3 EXTRUDER | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/30/85 | P SLMM | | 90,000.00 |
| 002174 80 MTL STORAGE RACK | | | | | | |
| 000 A 16165 | 362510 | M 1800-1630 | 05/01/84 | P DB150 | | 6,000.00 |
| **G/L Asset Acct No = 1800-1630** | | | | | | |
| 002175 RACKS | | | | | | |
| 000 A 16170 | 362510 | M 1800-1630 | 09/30/84 | P DB150 | | 1,707.50 |
| 002176 SILO FOUNDATION | | | | | | |
| 000 A 081022 | 362510 | M 1800-1630 | 09/30/84 | P DB150 | | 9,201.25 |
| 002177 HOIST SYSTEM | | | | | | |
| 000 A 080701 | 362510 | M 1800-1630 | 09/01/84 | P DB150 | | 9,551.66 |
| 002178 DRILL STAND | | | | | | |
| 000 A 081029 | 362510 | M 1800-1630 | 10/01/84 | P DB150 | | 1,449.00 |
| 002180 SHIPPING RACK | | | | | | |
| 000 A 16158 | 362510 | M 1800-1630 | 07/01/83 | P DB150 | | 11,250.00 |
| 002181 12'60 SILO | | | | | | |
| 000 A 081017 | 362510 | M 1800-1630 | 09/01/83 | P DB150 | | 3,600.00 |
| 002182 MILLPORT DRILL PRESS | | | | | | |
| 000 A 081027 | 362510 | M 1800-1630 | 09/01/83 | P DB150 | | 9,000.00 |
| 002183 MICROSCOPE | | | | | | |
| 000 A 16157 | 362510 | M 1800-1630 | 06/01/83 | P DB150 | | 3,000.00 |
| 002184 SCALE METER | | | | | | |
| 000 A 081000 | 362510 | M 1800-1630 | 11/01/82 | P DB150 | | 5,350.00 |
| 002185 HOIST | | | | | | |
| 000 A 080701 | 362510 | M 1800-1630 | 05/01/82 | P DB150 | | 11,033.00 |
| 002187 12'60 SILO | | | | | | |
| 000 A 081018 | 362510 | M 1800-1630 | 01/01/79 | P DB200 | | 19,145.32 |
| 002190 EXTRUDER LINE 2 | | | | | | |
| 000 A 080801 | 362510 | M 1800-1630 | 05/01/77 | P DB200 | | 100,000.00 |
| 002191 BLNDR LEVEL IND PUMP | | | | | | |
| 091 A 081013 | 362510 | M 1800-1630 | 04/01/77 | P DB200 | | 9,880.00 |
| 002192 3 COOLING TOWERS | | | | | | |
| 000 A 081016 | 362510 | M 1800-1630 | 06/01/77 | P DB200 | | 17,943.27 |
| 002193 MTL FOR PUMP STATION | | | | | | |
| 000 A 081013 | 362510 | M 1800-1630 | 07/01/77 | P DB200 | | 7,661.78 |
| 002194 TRANSFORMERS | | | | | | |
| 000 A 80037 | 362510 | M 1800-1630 | 02/06/88 | P SLMM | | 36,338.74 |
| 002195 ROLL MDO UNIT LINE 3 | | | | | | |
| 000 A 80037 | 362510 | M 1800-1630 | 06/30/89 | P SLMM | | 34,559.89 |
| 002196 OSCILLATING WINDER LINE 3 | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 11/03/88 | P SLMM | | 216,371.60 |
| 002200 NARDINI LATHE | | | | | | |
| 000 A 081024 | 362510 | M 1800-1630 | 02/13/90 | P SLMM | | 22,535.00 |
| 002201 CORONA TREATER | | | | | | |
| 000 A 081007 | 362510 | M 1800-1630 | 08/31/90 | P SLMM | | 92,155.24 |
| 002202 RESIN BLENDER | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 07/26/90 | P SLMM | | 22,283.39 |
| 002204 LINE 3 | | | | | | |
| 000 A 080802 | 362510 | M 1800-1630 | 10/03/90 | P SLMM | | 395,680.53 |
| 002205 SCALES | | | | | | |
| 000 A 081000 | 362510 | M 1800-1630 | 07/13/90 | P SLMM | | 4,067.40 |
| 002206 SCALES | | | | | | |
| 000 A 081002 | 362510 | M 1800-1630 | 07/13/90 | P SLMM | | 4,601.40 |
| 002207 PROFILER 140 | | | | | | |
| 000 A 000303 | 362510 | M 1800-1630 | 12/14/90 | P SLMM | | 14,087.00 |
| 002208 COOLING TOWERS | | | | | | |
| 000 A 081016 | 362510 | M 1800-1630 | 01/03/91 | P SLMM | | 39,413.52 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 002209 OIL AUTO THERMS | | | | | | | | |
| | 000 A 080802 | 362510 | M 1800-1630 | 01/31/91 | P SLMM | | | 41,280.00 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | | |
| 002210 PFX SILOS | | | | | | | | |
| | 000 A 081011 | | | 05/17/91 | P SLMM | | | 87,408.76 |
| 002211 SCALES | | | | | | | | |
| | 000 A 081004 | 362510 | M 1800-1630 | 01/22/92 | P SLMM | | | 3,939.00 |
| 002212 460 ET SLITTER BELGIUM | | | | | | | | |
| | 000 A 080001 | 362510 | M 1800-1630 | 11/01/91 | P SLMM | | | 223,704.64 |
| 002213 44 PC RACK ROLLSTANDS | | | | | | | | |
| | 000 A 80057 | | | 03/16/92 | P SLMM | | | 8,040.66 |
| 002214 DUSTEX UNITS | | | | | | | | |
| | 000 A 081012 | 362510 | M 1800-1630 | 10/29/92 | P SLMM | | | 40,000.00 |
| 002215 DUSTEX UNIT (CONT) | | | | | | | | |
| | 000 A 081012 | 362510 | M 1800-1630 | 11/24/92 | P SLMM | | | 2,175.00 |
| 002216 LINE 3 TENNER FRAMES | | | | | | | | |
| | 000 A 080802 | 362510 | M 1800-1630 | 03/22/93 | P SLMM | | | 17,059.27 |
| 002217 HOIST SYSTEM | | | | | | | | |
| | 000 A 080700 | 362510 | M 1800-1630 | 09/21/93 | P SLMM | | | 11,617.46 |
| 002220 HYSTER FORK TRUCK | | | | | | | | |
| | 000 A 080300 | 362510 | M 1800-1630 | 02/07/94 | P SLMM | | | 12,000.00 |
| 002223 UPRIGHT SCISSORS LIFT | | | | | | | | |
| | 000 A 080307 | 362510 | M 1800-1630 | 11/01/94 | P SLMM | | | 14,499.38 |
| 002224 TWO SILOS | | | | | | | | |
| | 000 A 081010 & 081011 | 362510 | M 1800-1630 | 12/28/94 | P SLMM | | | 99,237.60 |
| 002225 GEAR BOX | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 12/20/94 | P SLMM | | | 25,434.00 |
| 002226 DRAKE VERTICAL BAND SAW | | | | | | | | |
| | 000 A 081025 | 362510 | M 1800-1630 | 01/31/95 | P SLMM | | | 8,100.00 |
| 002227 LINE 4 | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 04/01/95 | P SLMM | | | 7,321,044.28 |
| 002228 LINE 4 ADDITION - WR CONTROL | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 01/01/96 | P SLMM | | | 40,500.00 |
| 002229 LINE 4 ADDITION | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 12/31/95 | P SLMM | | | 28,386.57 |
| 002230 HAZE METER | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 12/27/95 | P SLMM | | | 14,954.13 |
| 002231 SAND FILTER | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 11/01/95 | P SLMM | | | 12,207.78 |
| 002233 SCRAP RECLAIM SYSTEM FOR IN-LINE OPS EDGE TRIM RECOVERY | | | | | | | | |
| | 000 A 080600 | 362510 | M 1800-1630 | 03/29/96 | P SLMM | | | 12,518.00 |
| 002518 UNWIND STAND - HOG GRINDER | | | | | | | | |
| | 000 A 081003 | 362510 | M 1800-1630 | 06/01/98 | P SLMM | | | 68,395.97 |
| 002528 LINE 3 CASTING | | | | | | | | |
| | 000 A 080802 | 362510 | M 1800-1630 | 06/01/98 | P SLMM | | | 13,280.00 |
| 002532 HOIST SYSTEM | | | | | | | | |
| | 000 A 060704 | 362510 | M 1800-1630 | 06/01/98 | P SLMM | | | 41,188.03 |
| 002536 SIEMENS COMPUTER ACCESSORIES FOR LINE 4 | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 06/01/98 | P SLMM | | | 52,000.00 |
| 002537 BUSCH VACUUM PUMP - LINE 4 | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 06/01/98 | P SLMM | | | 17,000.00 |
| 002538 SPARE FEEDERS - LINE 4 | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 06/01/98 | P SLMM | | | 26,000.00 |
| 002541 T4 EXTRUDER AND SCREW | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 07/01/98 | P SLMM | | | 366,560.44 |
| 002552 LINE 4 GEAR REDUCER | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 09/01/98 | P SLMM | | | 8,811.06 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | | |
| 002563 FLOOR SCALE - LINE 2 | | | | | | | | |
| | 000 A 000374 | 362510 | M 1800-1630 | 09/01/98 | P SLMM | | | 4,870.24 |
| 002569 TCM FORKLIFT | | | | | | | | |
| | 000 A 010308 | | M 1800-1630 | 10/05/98 | P SLMM | SCHRADER | | 22,243.76 |
| 002575 T4 BUSCH VACUUM PUMP | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 10/01/98 | P SLMM | | | 39,590.87 |
| 002579 48" CONVERTING LINE ROLLER - LN 4 | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 10/30/98 | P SLMM | AMERICAN R | | 10,077.00 |
| 002590 SPARE MELT PUMP - LN 4 | | | | | | | | |
| | 000 A 080803 | 362510 | M 1800-1630 | 01/02/99 | P SLMM | | | 23,755.10 |
| 002601 STRETCH WRAPPER | | | | | | | | |
| | 000 A 061003 | | M 1800-1630 | 02/01/99 | P SLMM | | | 15,588.36 |
| 002603 LINE 4 TRENCH VENTILATION | | | | | | | | |
| | 000 A 080803 | | M 1800-1630 | 02/01/99 | P SLMM | | | 8,345.00 |
| 002607 PRESSURE WASHER | | | | | | | | |
| | 000 A 081040 | | M 1800-1630 | 02/01/99 | P SLMM | | | 2,631.06 |
| 002608 CUTTING HEAD FOR SPARE TRIM SYSTEM | | | | | | | | |
| | 000 A 080601 | | M 1800-1630 | 02/01/99 | P SLMM | | | 4,745.28 |
| 002612 GRINDER/PELLETIZER | | | | | | | | |
| | 000 A 080901 | | M 1800-1630 | 03/31/99 | P SLMM | | | 734,782.06 |
| 002619 OIL THERMOLATOR | | | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 000 A 080800 | M 1800-1630 | 06/02/99 | P SLMM | | 6,612.99 |
| 002621 LINE 3 BETA GAUGE | | | | | | |
| 000 A 80053 | M 1800-1630 | 06/30/99 | P SLMM | | 146,601.96 |
| 002622 LINE 4 DIE | | | | | | |
| 000 A 080803 | M 1800-1630 | 06/30/99 | P SLMM | | 53,550.88 |
| 002623 LINE 4 FENDER GEAR | | | | | | |
| 000 A 080803 | M 1800-1630 | 06/30/99 | P SLMM | | 3,082.00 |
| 002627 INSECTOCUTORS | | | | | | |
| 000 A 081041 | M 1800-1630 | 06/30/99 | P SLMM | | 2,094.87 |
| 002629 BUG ROLL UP SCREEN | | | | | | |
| 000 A 081038 | M 1800-1630 | 07/01/99 | P SLMM | OHID03 | 5,600.00 |
| 002630 LINE 4 WEKO ROTOR COATER | | | | | | |
| 000 A 080803 | M 1800-1630 | 07/01/99 | P MF200 | | 32,681.00 |
| 002631 PLC UPGRADE FOR LINE3 WINDER | | | | | | |
| 000 A 080053 | M 1800-1630 | 07/01/99 | P SLMM | | 5,806.00 |
| 002632 EXHAUST FANS FOR LINE 4 EXTRUSION | | | | | | |
| 000 A 080803 | M 1800-1630 | 07/01/99 | P SLMM | | 8,893.40 |
| 002640 INSTRON LAB EQUIPMENT | | | | | | |
| 000 A 81039 | M 1800-1630 | 09/02/99 | P SLMM | INST02 | 21,528.59 |
| 002643 CORE CUTTER | | | | | | |
| 000 A 81045 | M 1800-1630 | 09/02/99 | P SLMM | | 12,987.94 |
| 002645 SPARE SCREW | | | | | | |
| 000 A 715 | M 1800-1630 | 09/02/99 | P SLMM | | 65,000.00 |
| 002646 MDO GEAR BOX LINE 4 | | | | | | |
| 000 A 080803 | M 1800-1630 | 09/02/99 | P SLMM | | 12,123.39 |
| 002648 WATER TOWER PUMP | | | | | | |
| 000 A 81043 | M 1800-1630 | 09/02/99 | P SLMM | | 3,026.00 |
| 002649 LINE 3 CASTING ROLL | | | | | | |
| 000 A 80053 | M 1800-1630 | 09/02/99 | P SLMM | | 14,703.45 |
| 002651 LINE 4 EXHAUST SYSTEM | | | | | | |
| 000 A 080803 | M 1800-1630 | 09/30/99 | P SLMM | COXB00 | 15,721.85 |
| 002657 REPAIR ON LINE 3 DYE | | | | | | |
| 000 A 80053 | M 1800-1630 | 09/30/99 | P SLMM | | 13,570.00 |
| **G/L Asset Acct No = 1800-1630** | | | | | | |
| 002660 LINE 4 MELT PUMP | | | | | | |
| 000 A 80803 | M 1800-1630 | 09/30/99 | P SLMM | | 5,655.30 |
| 002662 LINE 4 CASTING ROLL HEAT EXCHANGE | | | | | | |
| 000 A 80803 | M 1800-1630 | 09/30/99 | P SLMM | | 7,310.08 |
| 002665 SWITCH GEAR | | | | | | |
| 000 A 080803 | M 1800-1630 | 09/30/99 | P SLMM | | 35,399.29 |
| 002673 Branch Slitter Upgrades | | | | | | |
| 000 A 60001 | M 1800-1630 | 12/01/99 | P SLMM | | 34,347.87 |
| 002674 Slitterline upgrades | | | | | | |
| 000 A 716 | M 1800-1630 | 12/01/99 | P SLMM | | 472,719.28 |
| 002679 LINE 4 ALUMINUM CORE ROLLERS | | | | | | |
| 000 A 080803 | M 1800-1630 | 01/01/00 | P SLMM | HYMES | 23,255.91 |
| 002687 LINE 4 TOWER PUMP | | | | | | |
| 000 A 80803 | M 1800-1630 | 02/03/00 | P SLMM | | 5,430.75 |
| 002691 DUST COLLECTOR RECLAIM AREA | | | | | | |
| 000 A 81042 | M 1800-1630 | 02/03/00 | P SLMM | | 54,765.48 |
| 002692 HEAT SEALER | | | | | | |
| 000 A 081043 | M 1800-1630 | 03/02/00 | P SLMM | | 9,057.61 |
| 002693 LINE 4 PLC COMPUTER UPGRADE | | | | | | |
| 000 A 80073 | C 1800-1630 | 03/02/00 | P SLMM | | 333,694.90 |
| 002713 LINE 2 CONAIR GRAVA BLEND | | | | | | |
| 000 A 80070 | M 1800-1630 | 05/04/00 | P SLMM | | 25,131.88 |
| 002717 POLYFLEX EXTRUDER DRIVE MOTOR | | | | | | |
| 000 A 719 | M 1800-1630 | 05/04/00 | P SLMM | | 11,226.30 |
| 002718 SHEET LAB EXTRUDER | | | | | | |
| 000 A 080805 | M 1800-1630 | 05/04/00 | P SLMM | PLASTIC RE | 10,000.00 |
| 002732 70" SLITTER | | | | | | |
| 000 A 080003 | M 1800-1630 | 08/03/00 | P SLMM | | 82,352.76 |
| 002735 CORONA TREATER FOR SLITTER | | | | | | |
| 000 A 723 | M 1800-1630 | 08/03/00 | P SLMM | | 96,648.95 |
| 002738 FLAKE LOADER FOR LINE 4 | | | | | | |
| 000 A 080803 | M 1800-1630 | 08/31/00 | P SLMM | INTEC SALE | 11,980.00 |
| 002740 WINDER UPGRADE FOR LINE 2 | | | | | | |
| 000 A 80070 | M 1800-1630 | 08/31/00 | P SLMM | | 263,460.35 |
| 002762 TCM Forklift | | | | | | |
| 000 A 80312 | M 1800-1630 | 11/30/00 | P SLMM | | 22,739.52 |
| 002763 BELGIUM SLITTER | | | | | | |
| 000 A 80004 | M 1800-1630 | 12/28/00 | P SLMM | | 37,040.87 |
| 002774 DUSTEX RETURN AIR DUCTING | | | | | | |
| 000 A 724 | M 1800-1630 | 02/01/01 | P SLMM | | 25,252.04 |
| 002775 CINTRON WEIGHT SCALE | | | | | | |
| 000 A 81044 | M 1800-1630 | 02/01/01 | P SLMM | | 6,989.96 |
| 002776 PARTS CLEANER | | | | | | |
| 000 A 81046 | M 1800-1630 | 02/01/01 | P SLMM | | 20,107.33 |
| 002777 ALUMINUM WINDER SHAFTS | | | | | | |
| 000 A 725 | M 1800-1630 | 02/01/01 | P SLMM | | 46,600.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 002790 | 20 INCH DIE FOR T-MOPS | | | | | | |
| | 000 A 726 | | M 1800-1630 | 03/29/01 | P SLMM | | 37,324.57 |
| 002882 | COVERED ROLLER | | | | | | |
| | 000 A 727 | | M 1800-1630 | 11/29/01 | P SLMM | | 10,077.00 |
| 002893 | RE-CHROMED DIE | | | | | | |
| | 000 A 728 | | M 1800-1630 | 02/28/02 | P SLMM | | 11,873.29 |
| 002900 | RE-CHROMED DIE | | | | | | |
| | 000 A 729 | | M 1800-1630 | 05/02/02 | P SLMM | | 14,180.47 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | |
| 002903 | AIR COMPRESSORS (2) | | | | | | |
| | 000 A 080502 & 03 | | M 1800-1630 | 05/02/02 | P SLMM | | 85,475.34 |
| 002932 | SCREEN CHANGER LINE 4 | | | | | | |
| | 000 A 730 | EXCHANG | M 1800-1630 | 09/26/02 | P SLMM | HIGH-TECHN | 18,786.37 |
| 002936 | WINDER SAFETY UPGRADE - T3 | | | | | | |
| | 000 A 2746 | | M 1800-1630 | 09/26/02 | P SLMM | | 12,500.00 |
| 002937 | SCREW | | | | | | |
| | 000 A 731 | | M 1800-1630 | 09/26/02 | P SLMM | | 30,337.85 |
| 002938 | SLITTER RELOCATION | | | | | | |
| | 000 A 732 | | M 1800-1630 | 09/26/02 | P SLMM | | 48,276.32 |
| 002939 | GEAR BOX | | | | | | |
| | 000 A 733 | | M 1800-1630 | 09/26/02 | P SLMM | | 53,925.00 |
| 002972 | CUTTING STATION AND ACCURAY STAND | | | | | | |
| | 000 A 000735 | | M 1800-1630 | 11/28/02 | P SLMM | | 76,680.68 |
| 002973 | SHEET GRIPPERS | | | | | | |
| | 000 A 000734 | | M 1800-1630 | 11/28/02 | P SLMM | | 13,900.00 |
| 002974 | EXTRUDER GEAR BOX | | | | | | |
| | 000 A 000737 | | M 1800-1630 | 11/28/02 | P SLMM | | 65,685.14 |
| 002977 | REPAIR TO PIV DRIVE | | | | | | |
| | 000 A 002747 | | B 1800-1630 | 11/28/02 | P SLMM | | 8,579.33 |
| 002979 | CORONA TREATER | | | | | | |
| | 000 A 000738 | | M 1800-1630 | 11/28/02 | P SLMM | | 52,520.13 |
| 003013 | T3 GEARBOX | | | | | | |
| | 000 A 000741 | | C 1800-1630 | 05/01/03 | P SLMM | | 71,422.54 |
| 003021 | T3 DIE | | | | | | |
| | 000 A 000744 | | M 1800-1630 | 06/26/03 | P SLMM | | 11,210.00 |
| 003026 | WATER COOLER PELLETIZER | | | | | | |
| | 000 A 000744 | | M 1800-1630 | 08/28/03 | P SLMM | | 6,860.36 |
| 003086 | TDO UPGRADE - T3 | | | | | | |
| | 000 A 000745 | | M 1800-1630 | 11/27/03 | P SLMM | | 87,647.37 |
| 003087 | CLIMATE CONTROL | | | | | | |
| | 000 A 2749 | | B 1800-1630 | 11/27/03 | R SLMM | | 273,779.39 |
| 003089 | BUSCH PUMPS | | | | | | |
| | 000 A 000746 | | M 1800-1630 | 11/27/03 | P SLMM | | 114,314.50 |
| 003090 | AUTOTHERMS - T3 | | | | | | |
| | 000 A 000747 | | M 1800-1630 | 11/27/03 | P SLMM | | 83,728.14 |
| 003093 | Center Surface Winder | | | | | | |
| | 000 A 749 | Polyflex T | M 1800-1630 | 01/29/04 | P SLMM | John Dusenb | 534,758.21 |
| 003100 | Polyflex T - Corona Treater | | | | | | |
| | 000 A 750 | Polyflex T | M 1800-1630 | 04/01/04 | P SLMM | | 138,524.90 |
| 003102 | Pelletizer Extruder Motor | | | | | | |
| | 000 A 752 | Polyflex T | M 1800-1630 | 05/06/04 | P SLMM | | 10,297.42 |
| 003104 | TMOPS DIE - T3 | | | | | | |
| | 000 A 753 | Polyflex T | M 1800-1630 | 05/06/04 | P SLMM | | 38,202.02 |
| 003105 | RESIN HANDLING INTERFACE PANEL - T4 | | | | | | |
| | 000 A 754 | Polyflex T | M 1800-1630 | 05/06/04 | P SLMM | | 8,861.00 |
| 003140 | BLACK IONIZED WINDER SHAFTS - T3 | | | | | | |
| | 000 A 758 | Polyflex T3 | M 1800-1630 | 07/01/04 | P SLMM | | 6,715.00 |
| 003143 | AIR CURTAIN SLITTING WAREHOUSE | | | | | | |
| | 000 A 760 | Polyflex T | M 1800-1630 | 07/01/04 | P SLMM | | 2,214.07 |
| 003144 | POWER SUPPLY - T4 | | | | | | |
| | 000 A 761 | Polyflex T | M 1800-1630 | 07/01/04 | P SLMM | | 4,668.35 |
| 003145 | COOLING TOWERS FILLER | | | | | | |
| | 000 A 762 | Polyflex T | M 1800-1630 | 07/01/04 | P SLMM | | 5,280.00 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | |
| 003158 | SPREADER ROLLS - T3 | | | | | | |
| | 000 A 764 | Polyflex T | M 1800-1630 | 08/05/04 | P SLMM | | 16,735.65 |
| 003163 | BAC COOLING TOWERS - POLYFLEX T | | | | | | |
| | 000 A 765 | POLYFLEX | M 1800-1630 | 09/30/04 | P SLMM | | 7,119.60 |
| 003166 | BUSCH VACUUM PUMP | | | | | | |
| | 000 A 081051 | POLYFLEX | M 1800-1630 | 09/30/04 | P SLMM | | 9,373.75 |
| 003171 | ANTIFOG | | | | | | |
| | 000 A 000011 | POLYFLEX | M 1800-1630 | 09/30/04 | P SLMM | | 14,193.94 |
| 003182 | AIR COMPRESSOR | | | | | | |
| | 000 K 050504 | | M 1800-1630 | 01/01/05 | P SLMM | TANK MTD | 7,622.03 |
| 003183 | REBUILT HOG GRINDER | | | | | | |
| | 000 A | | M 1800-1630 | 01/01/05 | P SLMM | | 38,910.75 |
| 003184 | SCREEN CHANGER LINE 3 | | | | | | |
| | 000 A | | M 1800-1630 | 01/01/05 | P SLMM | DIAMOND A | 61,747.50 |
| 003214 | Labor Hours Line 4 Conversion | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 000 A 081050 | POLYFLEX M | 1800-1630 | 04/29/05 | P | SLMM | | | 104,273.83 |
| 003215 Winder line 4 | | | | | | | | |
| 000 A 081051 | POLYFLEX M | 1800-1630 | 04/29/05 | P | SLMM | | | 612,252.43 |
| 003216 Trim System Line 4 | | | | | | | | |
| 000 A 081052 | POLYFLEX M | 1800-1630 | 04/29/05 | P | SLMM | | | 119,225.75 |
| 003217 Auto Die Line 4 | | | | | | | | |
| 000 A 081053 | POLYFLEX M | 1800-1630 | 04/29/05 | P | SLMM | | | 49,530.45 |
| 003218 ROLLERS LINE 4 MOD | | | | | | | | |
| 000 A 081054 | POLYFLEX M | 1800-1630 | 04/29/05 | P | SLMM | | | 25,260.07 |
| 003219 SLITTER CHANGES LINE 4 MOD | | | | | | | | |
| 000 A 081055 | POLYFLEX M | 1800-1630 | 04/29/05 | P | SLMM | | | 23,183.08 |
| 003221 LINE 4 BRUCKNER MODIFICATIONS | | | | | | | | |
| 000 A 081056 | POLYFLEX M | 1800-1630 | 04/29/05 | P | SLMM | | | 891,706.33 |
| 003225 LINE 4 WINDER AND SLITTER | | | | | | | | |
| 000 A 081060 | POLYFLEX M | 1800-1630 | 07/21/05 | P | SLMM | | | 232,432.66 |
| 003229 LINE 4 TMOPS | | | | | | | | |
| 000 A 081057 | POLYFLEX M | 1800-1630 | 06/01/05 | P | SLMM | | | 279,915.73 |
| 003232 T4 Casting Roll | | | | | | | | |
| 000 A 081061 | POLYFLEX M | 1800-1630 | 08/15/05 | P | SLMM | | | 7,418.76 |
| 003247 T4-Casting Roll | | | | | | | | |
| 000 A 081063 | Polyflex T | M 1800-1630 | 11/01/05 | P | SLMM | | | 7,411.50 |
| 003248 T4 -Casting Roll | | | | | | | | |
| 000 A 081064 | POLYFLEX M | 1800-1630 | 11/01/05 | P | SLMM | | | 7,446.85 |
| 003249 T2 MDO BEARINGS | | | | | | | | |
| 000 A 081065 | POLYFLEX M | 1800-1630 | 11/30/05 | P | SLMM | | | 25,020.68 |
| 003250 T2 MDO CONVERSION | | | | | | | | |
| 000 A 081066 | POLYFLEX M | 1800-1630 | 11/30/05 | P | SLMM | | | 11,119.30 |
| 003251 GEAR PUMP REBUILD | | | | | | | | |
| 000 A 81067 | POLYFLEX M | 1800-1630 | 01/05/06 | P | SLMM | MAAG PUMP | | 15,514.36 |
| 003252 T4 CASTING ROLL | | | | | | | | |
| 000 A 81038 | POLYFLEX M | 1800-1630 | 01/05/06 | P | SLMM | AMERICAN R | | 8,513.67 |
| 003258 RESIN HANDLING SYSTEM | | | | | | | | |
| 000 A 081052 | POLYFLEX M | 1800-1630 | 01/13/06 | P | SLMM | KTRON | | 111,838.92 |
| 003259 T4 CASTING ROLL | | | | | | | | |
| 000 A 081053 | POLYFLEX M | 1800-1630 | 02/08/06 | P | SLMM | AMERICAN R | | 7,432.35 |
| 003265 Power Max Hydraulic Dumper with 6" support stand | | | | | | | | |
| 000 A 081054 | | m 1800-1630 | 03/14/06 | P | SLMM | Nat'l Bulk Eq | | 4,891.00 |
| 003266 Install Glastic Board | | | | | | | | |
| 000 A no tag | Polyflex T | m 1800-1630 | 03/07/06 | P | SLMM | Jess Howard | | 6,496.88 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | | |
| 003271 STATIC MIXER | | | | | | | | |
| 000 A 081055 | POLYFLEX M | 1800-1630 | 04/29/06 | P | SLMM | K-TRON AM | | 17,572.00 |
| 003272 CASTING ROLL | | | | | | | | |
| 000 A 081056 | POLYFLEX M | 1800-1630 | 04/25/06 | P | SLMM | AMERICAN R | | 13,100.25 |
| 003274 RADIOACTIVE SOURCE GAUGING SYSTEM T4 | | | | | | | | |
| 000 A 081057 | POLYFLEX M | 1800-1630 | 05/03/06 | P | SLMM | EGS GAUGIN | | 23,180.00 |
| 003282 Galvanized Chilled Water Pipe | | | | | | | | |
| 000 A na | POLYFLEX M | 1800-1630 | 08/15/06 | P | SLMM | NEWKIRK II | | 13,079.40 |
| 003283 SCREEN CHANGER T4 | | | | | | | | |
| 000 A 081058 | POLYFLEX M | 1800-1630 | 08/25/06 | P | SLMM | XALOY | | 73,431.47 |
| 003290 SINGLE STAGE BARRIER SCREW T4 | | | | | | | | |
| 000 A 081065 | POLYFLEX M | 1800-1630 | 08/24/06 | P | SLMM | DAVIS-STAN | | 86,813.94 |
| 003292 28" DIE (T3) OR (T4) | | | | | | | | |
| 000 A 081067 | POLYFLEX M | 1800-1630 | 06/02/06 | P | SLMM | EXTRSUION | | 46,286.57 |
| 003297 WINDER ELECTRIC UPGRADE T4 | | | | | | | | |
| 000 A NA | POLYFLEX M | 1800-1630 | 08/17/06 | P | SLMM | DAVIS STAN | | 8,376.72 |
| 003302 Appleton Corecutter | | | | | | | | |
| 000 A 080402 | POLYFLEX M | 1800-1630 | 03/01/07 | P | SLMM | Appleton Pro | | 44,415.00 |
| 003303 Xaloy Screen Changer | | | | | | | | |
| 000 A 081063 | POLYFLEX M | 1800-1630 | 03/01/07 | P | SLMM | Xaloy | | 47,004.80 |
| 003304 T3 Extruder Gearbox | | | | | | | | |
| 000 A 080806 | POLYFLEX M | 1800-1630 | 03/27/07 | P | SLMM | American Ex | | 9,722.00 |
| 003305 Baldor DC Motor | | | | | | | | |
| 000 A 081064 | POLYFLEX M | 1800-1630 | 03/26/07 | P | SLMM | Shoemaker I | | 4,034.41 |
| 003306 Idler Roll | | | | | | | | |
| 000 A 081070 | POLYFLEX M | 1800-1630 | 04/03/07 | P | SLMM | Epoch Indust | | 5,280.00 |
| 003307 T3 Idler Rolls | | | | | | | | |
| 000 A 081071 | POLYFLEX M | 1800-1630 | 02/19/07 | P | SLMM | Epoch Indust | | 4,932.00 |
| 003312 Granulator and Screen | | | | | | | | |
| 000 A 080902 | POLYFLEX M | 1800-1630 | 11/29/06 | P | SLMM | PAC - Precis | | 11,616.52 |
| 003314 T4 Casting Roll | | | | | | | | |
| 000 A 081050 | Poly T | M 1800-1630 | 05/17/07 | P | SLMM | Roll Technolo | | 23,475.00 |
| 003321 T2 Gearbox Repair | | | | | | | | |
| 000 A 081074 | Poly T | M 1800-1630 | 08/24/07 | P | SLMM | American Ex | | 5,217.16 |
| 003322 LINE 4 Motor Rebuild | | | | | | | | |
| 000 A 081075 | Poly T | M 1800-1630 | 08/08/07 | P | SLMM | Shoemaker I | | 10,137.00 |
| 003323 T4 Dessicant Drier | | | | | | | | |
| 000 A 081076 | Poly T | M 1800-1630 | 06/30/07 | P | SLMM | | | 48,432.48 |
| 003324 Rebuild Vacuum Pump | | | | | | | | |
| 000 A 081077 | Poly T | M 1800-1630 | 08/28/07 | P | SLMM | Shoemaker I | | 13,500.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003338 Poly T Haze Gard Plus | | | | | | | |
| 000 A  060807 | Poly T | M | 1800-1630 | 11/14/07 | P | SLMM | BYK Additive | 21,960.51 |
| 003339 T3 Pull Roll Stand | | | | | | | |
| 000 A  081078 | Poly T | M | 1800-1630 | 11/10/07 | P | SLMM | Magnat Fairv | 6,630.00 |
| 003340 Poly T Switchgear | | | | | | | |
| 000 A  081079 | Poly T | M | 1800-1630 | 11/01/07 | P | SLMM | | 200,404.00 |
| 003343 REBUILT 8" KOELLMANN GEARBOX | | | | | | | |
| 000 A | | M | 1800-1630 | 11/10/07 | P | SLMM | AMERICAN E | 5,602.82 |
| 003348 2-TON HOIST LINE 4 | | | | | | | |
| 000 A | | M | 1800-1630 | 11/10/07 | P | SLMM | | 4,079.00 |
| 003349 DIE REBUILD LINE 4 | | | | | | | |
| 000 A | | M | 1800-1630 | 11/10/07 | P | SLMM | | 3,400.00 |
| 003350 TOWER PUMP LINE 3 | | | | | | | |
| 000 A | | M | 1800-1630 | 11/10/07 | P | SLMM | | 2,617.58 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | |
| 003351 WINDER LINE 4 | | | | | | | |
| 000 A | | M | 1800-1630 | 11/10/07 | P | SLMM | | 2,960.02 |
| 003352 FEED SYSTEM DRIVE LINE 4 | | | | | | | |
| 000 A | | M | 1800-1630 | 11/10/07 | P | SLMM | | 4,690.00 |
| 003353 DIP TANK ROLL | | | | | | | |
| 000 A | | M | 1800-1630 | 11/10/07 | P | SLMM | | 2,250.00 |
| 003355 PELLETIZER MOTOR | | | | | | | |
| 000 A | | M | 1800-1630 | 11/10/07 | P | SLMM | | 11,520.25 |
| 003365 2 CERAMIC COATED ROLLERS | | | | | | | |
| 000 A | | M | 1800-1630 | 11/30/07 | P | SLMM | MAGNAT FA | 36,515.00 |
| 003366 ARCOTHERM -FILM COATING CHILL | | | | | | | |
| 000 A | | M | 1800-1630 | 11/30/07 | P | SLMM | | 9,474.00 |
| 003367 CERAMIC COATED ROLL (EXTRA LINE) | | | | | | | |
| 000 A | | M | 1800-1630 | 11/01/07 | P | SLMM | | 6,500.00 |
| 003368 FAN BLOWER | | | | | | | |
| 000 A | | M | 1800-1630 | 11/02/07 | P | SLMM | | 2,255.26 |
| 003369 ARCOTHERM - FILM COATING CHILL | | | | | | | |
| 000 A | | M | 1800-1630 | 01/16/08 | P | SLMM | | 7,276.96 |
| 003370 ALUMINUM CORES-LINE 4 | | | | | | | |
| 000 A | | M | 1800-1630 | 01/17/08 | P | SLMM | | 30,000.00 |
| 003371 2-CAST FILM EXTRUDING CHILL NIP | | | | | | | |
| 000 A | | M | 1800-1630 | 01/22/08 | P | SLMM | | 14,845.74 |
| 003380 T4 winder shaft aluminum | | | | | | | |
| 000 A | | M | 1800-1630 | 10/11/07 | P | SLMM | | 10,000.00 |
| 003386 Busch Vacuum Pump Rebuild Parts | | | | | | | |
| 000 A  081080 | Poly T | M | 1800-1630 | 04/16/08 | P | SLMM | | 9,950.48 |
| 003389 T4 Roller Upgrade | | | | | | | |
| 000 A  080005 | Poly T | M | 1800-1630 | 04/08/08 | P | SLMM | | 57,171.00 |
| 003390 Chiller Casting | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 07/25/08 | P | SLMM | | 44,059.30 |
| 003391 T4 Extruder | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 08/06/08 | P | SLMM | | 18,994.96 |
| 003396 PIV Valve | | | | | | | |
| 000 A  081081 | PolyT | M | 1800-1630 | 10/01/08 | P | SLMM | | 27,000.00 |
| 003397 T4 Casting Roll Modification | | | | | | | |
| 000 A  081050A | PolyT | M | 1800-1630 | 06/03/08 | P | SLMM | | 4,170.00 |
| 003410 T1 Emergency Gearbox Repair | | | | | | | |
| 000 A | | M | 1800-1630 | 01/01/09 | P | SLMM | | 42,099.69 |
| 003429 Layon Rollers | | | | | | | |
| 000 K | TX | M | 1800-1630 | 01/01/09 | P | SLMM | | 23,469.55 |
| 003430 Layon Rollers | | | | | | | |
| 000 K | Poly T | M | 1800-1630 | 01/01/09 | P | SLMM | | 7,918.75 |
| 003436 Roll Replacements | | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 01/01/09 | P | SLMM | | 22,577.00 |
| 003437 Transfer pump parts | | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 01/01/09 | P | SLMM | | 3,350.00 |
| 003438 Linkbelt Reducer | | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 01/01/09 | P | SLMM | | 2,587.45 |
| 003439 Arcotherm Cast Film Chill Nip | | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 02/18/09 | P | SLMM | | 45,068.00 |
| 003450 Oil Auto Therms for T1/T2 | | | | | | | |
| 000 A | | m | 1800-1630 | 03/13/09 | P | SLMM | | 16,272.82 |
| 003470 T2 Squeege Roll | | | | | | | |
| 000 A | | M | 1800-1630 | 05/31/09 | P | SLMM | | 2,825.00 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | |
| 003471 Roll Face Knurled | | | | | | | |
| 000 A | | M | 1800-1630 | 05/31/09 | P | SLMM | | 2,516.00 |
| 003473 T2 gearbox Koellmann UNIX 9.13 Gearcase | | | | | | | |
| 000 A | | M | 1800-1630 | 05/26/09 | P | SLMM | | 37,056.10 |
| 003475 Squeegeee anf Flex Rolls | | | | | | | |
| 000 A | | M | 1800-1630 | 06/09/09 | P | SLMM | | 4,575.00 |
| 003482 Pactor Q Millenium Motor Rebuild | | | | | | | |
| 000 A | | M | 1800-1630 | 09/11/09 | P | SLMM | | 19,008.60 |
| 003484 T4 Busch Pump | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 000 A | | M 1800-1630 | 06/30/09 | P SLMM | | | 19,462.21 |
| 003485 Maguire Blender | | | | | | | |
| 000 A | | M 1800-1630 | 06/29/09 | P SLMM | | | 13,388.53 |
| 003487 Spare Extruder Gearbox T4 | | | | | | | |
| 000 A | | M 1800-1630 | 01/01/10 | P SLMM | | | 153,538.00 |
| 003488 Cooling Tower T4 | | | | | | | |
| 000 A | | M 1800-1630 | 01/01/10 | P SLMM | | | 64,857.00 |
| 003491 30.5" Die | | | | | | | |
| 000 A | | M 1800-1630 | 01/01/10 | P SLMM | | | 51,176.42 |
| 003501 Micro Gloss 60 Glossmeter | | | | | | | |
| 000 A | | M 1800-1630 | 01/26/10 | P SLMM | | | 2,551.57 |
| 003505 Flex, Squeege, Nip and Pressure Rolls | | | | | | | |
| 000 A | | M 1800-1630 | 01/04/10 | P SLMM | | | 10,425.00 |
| 003506 Busch Pump Rebuild | | | | | | | |
| 000 A | | M 1800-1630 | 01/04/10 | P SLMM | | | 10,721.05 |
| 003507 Rotors | | | | | | | |
| 000 A | | M 1800-1630 | 01/04/10 | P SLMM | | | 9,942.74 |
| 003508 Journal Repair | | | | | | | |
| 000 A | | M 1800-1630 | 01/04/10 | P SLMM | | | 4,350.53 |
| 003509 Rewinder Nip T4 | | | | | | | |
| 000 A | | M 1800-1630 | 01/04/10 | P SLMM | | | 2,060.00 |
| 003532 Roller Upgrades | | | | | | | |
| 000 A | | M 1800-1630 | 01/14/10 | P SLMM | | | 12,335.00 |
| 003533 Recover Sherman Roll | | | | | | | |
| 000 A | | M 1800-1630 | 01/06/10 | P SLMM | | | 6,698.00 |
| 003534 460V AC Drivers | | | | | | | |
| 000 A | | M 1800-1630 | 01/05/10 | P SLMM | | | 14,686.55 |
| 003535 Cooling Rolls | | | | | | | |
| 000 A | | M 1800-1630 | 01/05/10 | P SLMM | | | 5,480.03 |
| 003545 T4 Power Supply Board | | | | | | | |
| 000 A | | M 1800-1630 | 03/09/10 | P SLMM | | | 9,606.78 |
| 003550 T1/T2 Oil Auto Therms | | | | | | | |
| 000 A | | M 1800-1630 | 03/11/10 | P SLMM | | | 16,275.26 |
| 003557 T3 Blending System | | | | | | | |
| 000 A | | M 1800-1630 | 06/28/10 | P SLMM | | | 22,885.00 |
| 003560 Planetary Gearbox MDO casting unit | | | | | | | |
| 000 A | PolyT | M 1800-1630 | 05/01/11 | P SLMM | Motion Indus | | 6,955.31 |
| 003563 Gearbox with Drive Motor | | | | | | | |
| 000 A | T4 | M 1800-1630 | 05/01/11 | P SLMM | Mid-Ohio Ele | | 15,045.00 |
| 003568 Upgrade to T-2 | | | | | | | |
| 000 A | | M 1800-1630 | 06/01/11 | P SLMM | | | 10,472.78 |
| 003569 Upgrade to T-3 | | | | | | | |
| 000 A | | M 1800-1630 | 06/01/11 | P SLMM | | | 1,940.00 |
| 003574 T4 Screw | | | | | | | |
| 000 A | | M 1800-1630 | 07/06/11 | P SLMM | | | 74,910.00 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | |
| 003583 Blowline (Trasferred from Belgium) | | | | | | | |
| 000 A | PolyT | M 1800-1630 | 05/22/12 | P SLMM | | | 29,856.00 |
| 003586 28" Die Rebuild | | | | | | | |
| 000 A | T4 | M 1800-1630 | 06/11/12 | P SLMM | | | 14,832.00 |
| 003587 Gearbox | | | | | | | |
| 000 A | T3 | M 1800-1630 | 04/12/12 | P SLMM | | | 8,584.78 |
| 003590 28" Die Rebuild | | | | | | | |
| 000 A | T4 | M 1800-1630 | 03/30/12 | P SLMM | | | 15,820.00 |
| 003592 Extruder Drive Motor | | | | | | | |
| 000 A | T2 | M 1800-1630 | 06/05/12 | P SLMM | | | 23,045.00 |
| 003595 T4 Winder Drives | | | | | | | |
| 000 A | PolyT | M 1800-1630 | 04/27/12 | P SLMM | | | 3,609.66 |
| 003596 T4 Cast Film Rollers | | | | | | | |
| 000 A | PolyT | M 1800-1630 | 05/23/12 | P SLMM | | | 9,140.00 |
| 003598 Roller Replacements | | | | | | | |
| 000 A | T2-T4 | M 1800-1630 | 04/11/12 | P SLMM | | | 11,985.00 |
| 003599 Barrell Heaters | | | | | | | |
| 000 A | T3 | M 1800-1630 | 03/15/12 | P SLMM | | | 5,120.00 |
| 003600 Barrell Heaters | | | | | | | |
| 000 A | T2 | M 1800-1630 | 02/29/12 | P SLMM | | | 5,377.70 |
| 003601 Barrell Heaters | | | | | | | |
| 000 A | T1 | M 1800-1630 | 04/11/12 | P SLMM | | | 11,240.00 |
| 003602 Burk Pump | | | | | | | |
| 000 A | T1 | M 1800-1630 | 04/03/12 | P SLMM | | | 3,196.62 |
| 003603 A/C Computer Cabinet | | | | | | | |
| 000 A | T1 | M 1800-1630 | 04/04/12 | P SLMM | | | 2,001.13 |
| 003604 Switchgear | | | | | | | |
| 000 A | T2 | M 1800-1630 | 03/29/12 | P SLMM | | | 5,145.55 |
| 003605 Ceramic Coated Roll for Roll Stack | | | | | | | |
| 000 A | T4 | M 1800-1630 | 03/22/12 | P SLMM | | | 13,297.34 |
| 003608 Upgrade to T4 | | | | | | | |
| 000 A | PolyT | M 1800-1630 | 09/01/12 | P SLMM | | | 18,901.00 |
| 003609 Yaskawa Vector Drive | | | | | | | |
| 000 A | PolyT | M 1800-1630 | 09/01/12 | P SLMM | | | 13,829.40 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 003610 Fife Edge Guide Power Unit | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 09/01/12 | P | SLMM | | 7,258.45 |
| 003611 Fluke Thermal Imager | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 09/01/12 | P | SLMM | | 5,450.30 |
| 003615 Flex & Squeege Roll Upgrade | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 09/01/12 | P | SLMM | | 7,255.00 |
| 003616 Exact Machine (from Belgium) | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 10/01/12 | P | SLMM | | 2,714.54 |
| 003617 Blowline Parts and Pieces (from Belgium) | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 10/01/12 | P | SLMM | | 19,791.50 |
| 003618 Transportation on Blowline from Belgium (Asset 3563) | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 10/01/12 | P | SLMM | | 5,556.69 |
| 003620 Squeege and Nip Roll Replacement | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 10/01/12 | P | SLMM | | 3,820.00 |
| 003625 T4 Roller Upgrade | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 10/01/12 | P | SLMM | | 9,971.16 |
| 003626 T4 Supply Duct Extension | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 01/03/13 | P | SLMM | | 8,590.00 |
| 003630 Arcotherm Chill Roller | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 01/03/13 | P | SLMM | | 7,093.00 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | | |
| 003631 T1 Extruder Motor | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 01/03/13 | P | SLMM | | 9,672.00 |
| 003632 T4 Winder Touch Screen | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 01/03/13 | P | SLMM | | 5,406.10 |
| 003639 1000 lb Capacity Roll Lifter | | | | | | | | |
| 000 A | PolyT | m | 1800-1630 | 02/01/13 | P | SLMM | | 1,694.15 |
| 003640 T4 Winder Touch and Nip Rolls | | | | | | | | |
| 000 A | PolyT | m | 1800-1630 | 02/01/13 | P | SLMM | | 4,850.00 |
| 003642 Freight in on Machinery from Belgium | | | | | | | | |
| 000 A | PolyT | m | 1800-1630 | 02/01/13 | P | SLMM | | 4,490.00 |
| 003648 PolyT Roller Upgrades | | | | | | | | |
| 000 A | PolyT | m | 1800-1630 | 02/01/13 | P | SLMM | | 14,935.00 |
| 003649 High Voltage Switch Gear | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 02/01/13 | P | SLMM | | 2,174.00 |
| 003651 T4 Roll Stack Planetary Gearbox | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 02/01/13 | P | SLMM | | 3,586.06 |
| 003652 Extruder Motor T1-T3 | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 02/01/13 | P | SLMM | | 12,631.45 |
| 003653 T4 Busch Pump | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 02/01/13 | P | SLMM | | 13,555.00 |
| 003655 Blue Giant Hydraulic Dock Leveler | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 02/01/13 | P | SLMM | | 8,255.51 |
| 003656 T4 Arcotherm Chill Roll | | | | | | | | |
| 000 A | polyT | M | 1800-1630 | 02/01/13 | P | SLMM | | 10,626.00 |
| 003657 T4 High Shear Mixing Elements | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 02/01/13 | P | SLMM | | 12,816.56 |
| 003662 28" Die Rework | | | | | | | | |
| 000 A | PolyT | m | 1800-1630 | 07/01/13 | P | SLMM | | 9,531.00 |
| 003664 T4 Server Upgrades | | | | | | | | |
| 000 A | PolyT Line 4M | | 1800-1630 | 07/01/13 | P | SLMM | | 32,510.79 |
| 003667 T4 PLA Chiller | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 07/01/13 | P | SLMM | | 12,449.44 |
| 003669 Parotester Unit | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 07/01/13 | P | SLMM | | 6,898.46 |
| 003671 Automated Strapping Sealers | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 07/01/13 | P | SLMM | | 8,085.00 |
| 003675 T4 PLA Run Improvements | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 10/01/13 | P | SLMM | | 11,426.26 |
| 003681 T4 Control Spares | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 11/01/13 | P | SLMM | | 5,929.84 |
| 003682 T4 Cast Roll Coating PLA | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 11/01/13 | P | SLMM | | 33,353.00 |
| 003684 T4 Melt Pump | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 03/01/14 | P | SLMM | maag group | 21,212.00 |
| 003688 T4 Die 28" | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 03/01/14 | P | SLMM | | 35,012.80 |
| 003691 T3 Rollstack Pump & Parts | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 09/01/14 | P | SLMM | | 3,551.60 |
| 003692 T4 Feeders & CPU Board | | | | | | | | |
| 000 A | PolyT | M | 1800-1630 | 09/01/14 | P | SLMM | | 3,547.00 |
| 003693 T1/T2 Cooling Pump and tower | | | | | | | | |
| 000 A | PolyT | m | 1800-1630 | 09/01/14 | P | SLMM | | 134,928.38 |
| 003694 T3 Coater | | | | | | | | |
| 000 A | PolyT | m | 1800-1630 | 09/01/14 | P | SLMM | | 169,451.22 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | | |
| 003695 T4 Gearbox & Drive Motor | | | | | | | | |
| 000 A | PolyT | m | 1800-1630 | 09/01/14 | P | SLMM | | 35,643.32 |
| 003698 T4 Winder Drive - Spare | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 000  A | PolyT | M | 1800-1630 | 09/01/14 | P | SLMM | | 16,596.50 |
| 003701 T4 Chain | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 09/01/14 | P | SLMM | | 134,086.47 |
| 003703 PWF Edge Trim | | | | | | | | |
| 000  A | PolyT | m | 1800-1630 | 09/01/14 | P | SLMM | | 25,000.00 |
| 003705 PolyT Busch Overhaul Kits | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 3,969.28 |
| 003706 Poly T Siemens DC motor Rebuild | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 4,947.00 |
| 003707 T4 Dust Collector Replace | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 2,660.64 |
| 003708 T2 Squeegee Rolls | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 8,705.00 |
| 003709 T4 Static Mixer | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 14,088.25 |
| 003711 T4 Rollers | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 15,570.00 |
| 003715 T1/T2 Uptime Improvements | | | | | | | | |
| 002  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 144,478.91 |
| 003716 T4 Carbon Fiber Core | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 6,910.00 |
| 003718 PolyT Die Rebuild | | | | | | | | |
| 000  A | PolyT | M | 1800-1630 | 10/01/15 | P | SLMM | | 12,430.00 |
| 003721 T4 Cooling Towers | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 10/01/15 | P | SLMM | | 3,840.00 |
| 003728 Copeland Tandem Scroll Compressor | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 11/01/16 | P | SLMM  T4 Big Chille  OTP Industria | | 5,135.55 |
| 003738 T3 Upgrade | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 01/01/17 | P | SLMM | | 107,798.50 |
| 003740 AIR DRYER/AIR COMPRESSOR | | | | | | | | |
| 000  A  050502 | Poly T | M | 1800-1630 | 08/01/96 | P | SLMM | WW GRAING | 5,927.22 |
| 003741 SEPARATOR/WATER TREATMENT | | | | | | | | |
| 000  A  050503 | Poly T | M | 1800-1630 | 06/03/85 | P | SLMM | | 1,500.00 |
| 003742 AIR COMPRESSOR | | | | | | | | |
| 000  A  050504 | Poly T | M | 1800-1630 | 01/01/05 | P | SLMM | TANK MTD | 7,622.03 |
| 003743 Layon Rollers | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 01/01/09 | P | SLMM | | 23,469.55 |
| 003744 Layon Rollers | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 01/01/09 | P | SLMM | | 7,918.75 |
| 003757 In-Running Nip Guard (801 & 802) | | | | | | | | |
| 000  A | Poly T 801 & | M | 1800-1630 | 04/01/18 | P | SLMM | | 21,889.91 |
| 003760 804 Slitter Upgrade | | | | | | | | |
| 000  A | | M | 1800-1630 | 06/01/18 | P | SLMM | | 116,298.97 |
| 003764 T4 Mill Roll Racks | | | | | | | | |
| 000  A | | M | 1800-1630 | 06/01/18 | P | SLMM | | 23,139.12 |
| 003765 T4 Gauging System Upgrade | | | | | | | | |
| 000  A | | M | 1800-1630 | 06/01/18 | P | SLMM | | 126,450.25 |
| 003768 T4 Winder Repair | | | | | | | | |
| 000  A | | M | 1800-1630 | 06/01/18 | P | SLMM | | 59,893.87 |
| 003771 804 Slitter Idler Roll Upgrade | | | | | | | | |
| 000  A | | M | 1800-1630 | 06/01/18 | P | SLMM | | 25,015.64 |
| **G/L Asset Acct No = 1800-1630** | | | | | | | | |
| 003772 30 Ton Chiller | | | | | | | | |
| 000  A | | M | 1800-1630 | 06/01/18 | P | SLMM | | 29,115.00 |
| 003773 T4 Spares | | | | | | | | |
| 000  A | | M | 1800-1630 | 06/01/18 | P | SLMM | | 126,768.59 |
| 003786 Lay-On Rollers | | | | | | | | |
| 000  A | 804 Slitter | M | 1800-1630 | 09/26/18 | P | SLMM | | 20,900.00 |
| 003817 T4 Upgrades | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 03/04/19 | P | SLMM | | 97,612.81 |
| 003824 T4 Melt Pump Rebuild | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 04/10/19 | P | SLMM | | 9,931.64 |
| 003832 T3 Winder Upgrade | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 07/01/19 | P | SLMM | | 67,550.36 |
| 003833 T4 Die Repair | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 07/01/19 | P | SLMM | | 15,071.00 |
| 003838 T4 Upgrade Grippers | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 09/01/19 | P | SLMM | | 78,106.01 |
| 003839 804 Hoist Attachment | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 09/01/19 | P | SLMM | | 3,035.48 |
| 003842 T2/T3 Spare TDO Gearbox | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 09/01/19 | P | SLMM | | 27,337.92 |
| 003844 T4 Resin Hopper Platform | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 11/01/19 | P | SLMM | | 37,832.00 |
| 003845 Light Weight Layon Rollers T | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 11/01/19 | P | SLMM | | 21,240.00 |
| 003847 T4 Cores | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 01/01/20 | P | SLMM | | 16,950.00 |
| 003849 804 Unwind Stand Upgrade | | | | | | | | |
| 000  A | Poly T | M | 1800-1630 | 02/01/20 | P | SLMM | | 33,923.26 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 003850 T4 Controls Upgrade | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 03/01/20 | P SLMM | 480,596.43 |
| 003856 802 Drive Upgrade | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 04/01/20 | P SLMM | 2,161.52 |
| 003863 T4 Tower Water Filtration Upgrade | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 07/01/20 | P SLMM | 30,323.96 |
| 003869 Flake Diverter | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 09/01/20 | P SLMM | 67,498.03 |
| 003874 T Transformer Upgrades | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 10/01/20 | P SLMM | 33,745.00 |
| 003881 T4 Trim Grinder Upgrade | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 11/01/20 | P SLMM | 9,335.29 |
| 003882 Rebuild Burn Off T Oven | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 11/01/20 | P SLMM | 15,571.00 |
| 003890 Hot Oil Splace Protection | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 02/01/21 | P SLMM | 4,117.00 |
| 003891 T-4 Winder Controls Upgrade | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 02/01/21 | P SLMM | 79,249.40 |
| 003896 T4 Feed System Control Upgrade | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 03/01/21 | P SLMM | 88,639.50 |
| 003909 803 Lay-Ons | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 05/01/21 | P SLMM | 8,470.00 |
| 003914 803 Pavel Trim | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 07/01/21 | P SLMM | 102,985.15 |
| 003917 Spare 803/804 Motor | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 09/01/21 | P SLMM | 13,100.00 |
| **G/L Asset Acct No = 1800-1630** | | | | | | |
| 003920 In-Running NIP Guard Phase 2 | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 11/01/21 | P SLMM | 42,266.60 |
| 003926 T-4 Spare MDO Motor | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 11/01/21 | P SLMM | 43,127.24 |
| 003929 T-4 Spare TDO Motor | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 11/01/21 | P SLMM | 28,477.25 |
| 003939 803/804 Roll Cradles | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 04/01/22 | P SLMM | 7,013.00 |
| 003946 T Cooling Tower Cells | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 07/01/22 | P SLMM | 73,932.34 |
| 003948 T4 Critical Gearbox Spares | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 07/01/22 | P SLMM | 31,199.65 |
| 003950 T4 Extruder Cooling System Spares | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 07/01/22 | P SLMM | 7,614.81 |
| 003954 T-4 Roll Stack Rebuild | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 01/01/23 | P SLMM | 74,151.07 |
| 003965 803 Rail Modification | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 10/01/23 | P SLMM | 5,300.00 |
| 003966 T-4 Gauging System iBox Controller | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 10/01/23 | P SLMM | 20,058.16 |
| 003967 T Building Cooling Pump and Motor | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 11/01/23 | P SLMM | 20,770.88 |
| 003968 T-2 Chiller Piping Replacement | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 03/01/24 | P SLMM | 12,600.00 |
| 003969 T-4 Roll Stack Replacement | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 03/01/24 | P SLMM | 9,300.00 |
| 003971 803/804 Rotary Blades | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 04/01/24 | P SLMM | 23,205.56 |
| 003972 Mechanical Guarding Poly T | | | | | | |
| 000 A | Poly T | M | 1800-1630 | 10/01/24 | P SLMM | 76,995.53 |
| | | | | | **G/L Asset Acct No = 1800-1630** | **$ 24,376,014.17** |
| | | | | | Count = 404 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **G/L Asset Acct No = 1800-1640** | | | | | | |
| 002778 2001 GREAT DANE TRAILER | | | | | | |
| 000 A 80050 | OH | P | 1800-1640 | 02/01/01 | P SLMM | $ 26,165.04 |
| | | | | | **G/L Asset Acct No = 1800-1640** | **$ 26,165.04** |
| | | | | | Count = 1 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **G/L Asset Acct No = 1800-1660** | | | | | | |
| 002104 POSTAGE METER | | | | | | |
| 000 A 000724 | 362510 | C | 1800-1660 | 01/05/89 | P SLMM | $ 2,511.02 |
| 002105 BAR CODE SYSTEM | | | | | | |
| 000 A 000271,000272 | 362510 | C | 1800-1660 | 09/24/90 | P SLMM | 17,238.55 |
| 002110 HP LASERJET | | | | | | |
| 000 A 000291 | 362510 | C | 1800-1660 | 12/01/93 | P SLMM | 832.04 |
| 002111 WYSE MODEL 160W | | | | | | |
| 000 A 000269 | 362510 | C | 1800-1660 | 12/09/93 | P SLMM | 559.15 |
| 002112 WYSE MODEL 160W | | | | | | |
| 000 A 000270 | 362510 | C | 1800-1660 | 12/09/93 | P SLMM | 559.15 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 002115 WYSE TERM/KEYBOARD | | | | | | | | |
| 000 A 000274 | 362510 | C | 1800-1660 | 06/06/94 | P | SLMM | | 548.84 |
| **G/L Asset Acct No = 1800-1660** | | | | | | | | |
| 002116 3600 BAR CODE PRINTER | | | | | | | | |
| 000 A 000268 | 362510 | C | 1800-1660 | 06/21/94 | P | SLMM | | 7,592.85 |
| 002117 3400 PRINTER | | | | | | | | |
| 000 A 000267 | 362510 | C | 1800-1660 | 08/15/94 | P | SLMM | | 1,898.21 |
| 002246 WYSE 160 TERMINAL | | | | | | | | |
| 000 A 000296 | 362510 | C | 1800-1660 | 09/12/94 | P | SLMM | | 2,167.87 |
| 002247 WYSE TERM/KWYBOARD | | | | | | | | |
| 000 A 000320 | 362510 | C | 1800-1660 | 09/30/94 | P | SLMM | | 926.51 |
| 002249 3400 BAR CODE PRINTER | | | | | | | | |
| 000 A 000319 | 362510 | C | 1800-1660 | 10/31/94 | P | SLMM | | 1,911.61 |
| 002591 PRINTER PLOTTER | | | | | | | | |
| 000 A 000386 | 362510 | C | 1800-1660 | 01/02/99 | P | SLMM | | 2,935.41 |
| 002701 SPC HARDWARE & COMPUTER | | | | | | | | |
| 000 A 836 | | C | 1800-1660 | 03/30/00 | P | SLMM | | 1,574.76 |
| 002789 MONITOR CM813PLUS-HENRY STEPHENS | | | | | | | | |
| 000 A 080010 | | F | 1800-1660 | 03/01/01 | P | SLMM | | 1,015.83 |
| 002869 DELL COMPUTER-EHRMAN | | | | | | | | |
| 000 A 000882 | | C | 1800-1660 | 11/01/01 | P | SLMM | DELL | 707.47 |
| 002870 DELL COMPUTER | | | | | | | | |
| 000 A 000883 | | C | 1800-1660 | 11/01/01 | P | SLMM | DELL | 707.47 |
| 002872 DELL COMPUTER-J MOSS | | | | | | | | |
| 000 A 000885 | | C | 1800-1660 | 11/01/01 | P | SLMM | DELL | 707.49 |
| 003060 INTERMEC PRINTER - LINE 3 | | | | | | | | |
| 000 A 833 | | C | 1800-1660 | 12/20/99 | P | SLMM | | 0.00 |
| 003117 INVENTORY SCANNER | | | | | | | | |
| 000 A | | C | 1800-1660 | 05/03/01 | P | NoDep | | 0.00 |
| 003118 INVENTORY SCANNER | | | | | | | | |
| 000 A | | C | 1800-1660 | 05/03/01 | P | NoDep | | 0.00 |
| 003136 INVENTORY SCANNER | | | | | | | | |
| 000 A | | C | 1800-1660 | 07/01/01 | P | NoDep | | 0.00 |
| 003309 Pkion Sintegra S 10 Firewall | | | | | | | | |
| 000 A 081072 | POLYFLEX M | | 1800-1660 | 04/27/07 | P | SLMM | Bruckner Gro | 4,974.04 |
| 003310 Quantium 3 DC drive 3 Phase | | | | | | | | |
| 000 A 081073 | POLYFLEX M | | 1800-1660 | 05/03/07 | P | SLMM | Shoemaker I | 3,994.36 |
| | | | | | | **G/L Asset Acct No = 1800-1660** | | **$ 53,362.63** |
| | | | | | | | Count = 23 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **G/L Asset Acct No = 1800-1670** | | | | | | | | |
| 001469 2 DESK, 4 CHAIRS | | | | | | | | |
| 000 A 60026 | 362510 | F | 1800-1670 | 07/15/96 | P | SLMM | | $ 2,721.94 |
| 001604 PAPER SHREDDER | | | | | | | | |
| 000 A 000726 | 362510 | F | 1800-1670 | 08/16/96 | P | SLMM | | 1,480.50 |
| 001616 PLANT EMERGENCY TONES | | | | | | | | |
| 000 A 80058 | 362510 | F | 1800-1670 | 12/26/96 | P | SLMM | | 3,538.40 |
| 001619 CANON FAX | | | | | | | | |
| 000 A 000285 | 362510 | F | 1800-1670 | 12/26/96 | P | SLMM | | 3,695.96 |
| 002122 PAPER SHREDDER | | | | | | | | |
| 000 A 16186 | 362510 | F | 1800-1670 | 05/01/85 | P | SLMM | | 324.68 |
| 002142 CANON FAX | | | | | | | | |
| 000 A 000277 | 362510 | F | 1800-1670 | 11/15/91 | P | SLMM | | 1,016.39 |
| 002143 ROYAL COPIER 2030 | | | | | | | | |
| 000 A 000299 | 362510 | F | 1800-1670 | 02/01/94 | P | SLMM | | 4,494.38 |
| 002250 PAPER SHREDDER | | | | | | | | |
| **G/L Asset Acct No = 1800-1670** | | | | | | | | |
| 000 A 000294 | 362510 | F | 1800-1670 | 05/01/85 | P | SLMM | | 324.68 |
| 002251 SIGN COMPANY NAME | | | | | | | | |
| 000 A 80003 | 362510 | F | 1800-1670 | 10/30/85 | P | SLMM | | 443.75 |
| 002252 MAIL MACHINE-SPLIT | | | | | | | | |
| 000 A 000724 | 362510 | F | 1800-1670 | 01/05/89 | P | SLMM | | 2,511.03 |
| 002253 HP LASERJET PRINTER | | | | | | | | |
| 000 A 000305 | 362510 | F | 1800-1670 | 11/09/94 | P | SLMM | | 1,342.95 |
| 002254 CANON LASER FAX | | | | | | | | |
| 000 A 000300 | 362510 | F | 1800-1670 | 12/20/94 | P | SLMM | | 3,079.44 |
| 002256 WYSE TERMINAL & KEYBOARD | | | | | | | | |
| 000 A 000311 | 362510 | F | 1800-1670 | 12/14/95 | P | SLMM | | 657.29 |
| 002257 WYSE TERMINAL & KEYBOARD | | | | | | | | |
| 000 A 000314 | 362510 | F | 1800-1670 | 12/14/95 | P | SLMM | | 657.29 |
| 002258 WYSE TERMINAL & KEYBOARD | | | | | | | | |
| 000 A 000316 | 362510 | F | 1800-1670 | 12/14/95 | P | SLMM | | 657.29 |
| 002259 WYSE TERMINAL & KEYBOARD | | | | | | | | |
| 000 A 000275 | 362510 | F | 1800-1670 | 12/14/95 | P | SLMM | | 657.29 |
| 002260 WYSE TERMINAL & KEYBOARD | | | | | | | | |
| 000 A 000318 | 362510 | F | 1800-1670 | 12/14/95 | P | SLMM | | 657.29 |
| 002264 INTERMEC 3400 BAR CODE PRINTER | | | | | | | | |
| 000 A 000310 | 362510 | F | 1800-1670 | 12/14/95 | P | SLMM | | 1,695.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 002265 INTERMEC 3400 BAR CODE PRINTER | | | | | | | | |
| 000 A 000312 | 362510 | F | 1800-1670 | 12/14/95 | P | SLMM | | 1,695.00 |
| 002266 INTERMEC 3400 BAR CODE PRINTER | | | | | | | | |
| 000 A 000315 | 362510 | F | 1800-1670 | 12/14/95 | P | SLMM | | 1,695.00 |
| 002275 RICOH 6750 COPIER | | | | | | | | |
| 000 A 80055 | 362510 | F | 1800-1670 | 02/15/96 | P | SLMM | | 5,287.50 |
| 002398 CANNON COPIER-TOM MOORES AREA | | | | | | | | |
| 000 A 000205 | 362510 | F | 1800-1670 | 03/31/92 | P | SLMM | | 6,719.36 |
| 002530 FURNITURE-CONTINENTAL | | | | | | | | |
| 000 A 60028 | 362510 | F | 1800-1670 | 06/01/98 | P | SLMM | | 12,586.05 |
| 002531 FURNITURE | | | | | | | | |
| 000 A 80060 | 362510 | F | 1800-1670 | 06/01/98 | P | SLMM | | 25,873.88 |
| 002653 LAB CABINETS | | | | | | | | |
| 000 A 80061 | | F | 1800-1670 | 09/30/99 | P | SLMM | BIG800 | 10,872.00 |
| 002656 RICOH COPIER | | | | | | | | |
| 000 A 000723 | | F | 1800-1670 | 09/30/99 | P | SLMM | IKON02 | 6,107.06 |
| 002689 POLYFLEX CONFERENCE ROOM FURNITURE | | | | | | | | |
| 000 A 80064 | | F | 1800-1670 | 02/03/00 | P | SLMM | | 2,525.92 |
| 002784 CANNON COPIER | | | | | | | | |
| 000 A 81047 | | F | 1800-1670 | 03/01/01 | P | SLMM | | 5,070.71 |
| 002797 OKIDATA 591 PRINTERS | | | | | | | | |
| 000 A 081048 | | F | 1800-1670 | 05/03/01 | P | SLMM | | 4,372.22 |
| 002901 TOSHIBA STUDIO 35 COPIER - CORP | | | | | | | | |
| 000 A 000896 | | F | 1800-1670 | 05/02/02 | P | SLMM | | 8,821.52 |
| 003255 CANON COPIER-IR C3170 | | | | | | | | |
| 000 A 021007 | | F | 1800-1670 | 01/26/06 | P | SLMM | COPYSERVE | 9,624.80 |
| 003729 HR Office Furniture | | | | | | | | |
| 000 A | Poly T | F | 1800-1670 | 01/11/17 | P | SLMM | Sugaman's O | 2,330.60 |
| | | | | | | G/L Asset Asset No = 1800-1670 | | $ 133,537.17 |
| | | | | | | Count = 32 | | |

---

**G/L Asset Acct No = 1900-1640**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| G/L Asset Acct No = 1900-1640 | | | | | | | | |
| 003326 2007 FORD E250 VAN | | | | | | | | |
| 000 A | OH | A | 1900-1640 | 09/17/07 | A | SLMM | KRIEGER FO | $ 25,373.30 |
| 003754 2012 Ford Fusion | | | | | | | | |
| 000 A 3580 - disposed in | Columbus | A | 1900-1640 | 04/23/12 | A | SLMM | Krieger Ford | 24,540.05 |
| | | | | | | G/L Asset Asset No = 1900-1640 | | $ 49,913.35 |
| | | | | | | Count = 2 | | |

---

**G/L Asset Acct No = 1900-1660**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 001493 3400 BAR CODE PRINTER | | | | | | | | |
| 000 A 000081 | | C | 1900-1660 | 08/19/94 | P | SLMM | | $ 2,894.33 |
| 001494 3400 BAR CODE PRINTER | | | | | | | | |
| 000 A 000082 | | C | 1900-1660 | 08/19/94 | P | SLMM | | 2,894.32 |
| 001582 (3) BAR CODE EQUIPMENT | | | | | | | | |
| 000 A 000187 | 362510 | C | 1900-1660 | 10/25/96 | P | SLMM | | 4,216.69 |
| 001587 HP 9000 E55-MIS | | | | | | | | |
| 000 A 000245 | 362510 | C | 1900-1660 | 10/25/96 | P | SLMM | | 23,954.05 |
| 001637 HP 12 GB DISK SPACE | | | | | | | | |
| 000 A 000241A | 362510 | C | 1900-1660 | 02/28/97 | P | SLMM | INFOWORLD | 10,203.82 |
| 001750 SONY PROJECTOR | | | | | | | | |
| 000 A 000336 | 362517 | C | 1900-1660 | 03/01/98 | P | SLMM | COMPUSA | 1,558.36 |
| 001884 3400 BAR CODE PRINTER | | | | | | | | |
| 000 A 000087 | | C | 1900-1660 | 08/19/94 | P | SLMM | | 7,732.20 |
| 001888 INTERMEC 3600 BAR CODE PRINTER | | | | | | | | |
| 000 A 000080 | | C | 1900-1660 | 12/14/95 | P | SLMM | | 3,204.70 |
| 001889 INTERMEC 3600 BAR CODE PRINTER | | | | | | | | |
| 000 A 000079 | | C | 1900-1660 | 12/14/95 | P | SLMM | | 3,204.70 |
| 002306 PANASONIC PRINTER | | | | | | | | |
| 000 A 00104 | 362510 | C | 1900-1660 | 11/01/91 | P | SLMM | | 467.32 |
| 002309 VARNET HARDWARE | | | | | | | | |
| 000 A 00108 | 362510 | C | 1900-1660 | 05/15/92 | P | SLMM | | 64,113.61 |
| 002325 HP900 G50-MIS | | | | | | | | |
| 000 A 000241 | 362510 | C | 1900-1660 | 07/21/94 | P | SLMM | | 65,271.57 |
| 002327 HP LASER JET - MIS | | | | | | | | |
| 000 A 000208 | 362510 | C | 1900-1660 | 11/09/94 | P | SLMM | | 1,869.57 |
| 002331 CD BURNER | | | | | | | | |
| 000 A 000232 | 362510 | C | 1900-1660 | 12/06/94 | P | SLMM | | 1,755.45 |
| 002338 VARNET UPGRADE | | | | | | | | |
| 000 A 000168 | 362510 | C | 1900-1660 | 09/28/95 | P | SLMM | | 100,606.58 |
| 002561 REMOTE ACCESS SERVER | | | | | | | | |
| 000 A 000367 | 362510 | C | 1900-1660 | 09/01/98 | P | SLMM | | 6,642.42 |
| 002572 ROUTER-MIS | | | | | | | | |
| 000 A 000377 | 362510 | C | 1900-1660 | 10/01/98 | P | SLMM | | 2,439.00 |
| 002574 FIREWALL-MIS | | | | | | | | |
| 000 A 000376 | 362510 | C | 1900-1660 | 10/01/98 | P | SLMM | | 5,373.47 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 002587 INTERMEC 3400 PRINTER | | | | | | | | |
| 000 A 000384 | 362510 | C | 1900-1660 | 12/01/98 | P SLMM | | | 1,909.10 |
| 002624 CD RE-WRITER - LAO | | | | | | | | |
| 000 A 000389 | CORP-MIS | C | 1900-1660 | 06/30/99 | P SLMM | | | 18,402.18 |
| 002745 DOCUMENT IMAGE SYSTEM WITH COMPUTERS & MONITORS | | | | | | | | |
| 000 A 409,414,415,416 | | C | 1900-1660 | 09/28/00 | P SLMM | | ASSURED M | 122,125.38 |
| 002874 GROUPWISE SERVER | | | | | | | | |
| 000 A 000879 | | C | 1900-1660 | 11/01/01 | P SLMM | | DELL | 7,646.11 |
| 002931 VOICE AND DATA CABLEING - MIS | | | | | | | | |
| **G/L Asset Acct No = 1900-1660** | | | | | | | | |
| 000 A 041004 | | C | 1900-1660 | 09/26/02 | P SLMM | | | 56,684.36 |
| 002996 DOCUMENT IMAGING SERVER-MIS | | | | | | | | |
| 000 A 000910 | | F | 1900-1660 | 02/27/03 | P SLMM | | | 28,874.67 |
| 003005 LAPTOP - TOLLFERSON | | | | | | | | |
| 000 A 000931 | | C | 1900-1660 | 05/01/03 | P SLMM | | | 1,269.76 |
| 003006 LAPTOP | | | | | | | | |
| 000 A 000934 | | C | 1900-1660 | 05/01/03 | P SLMM | | | 1,269.76 |
| 003008 LAPTOP-DUDLEY | | | | | | | | |
| 000 A 000932 | | C | 1900-1660 | 05/01/03 | P SLMM | | | 1,269.77 |
| 003010 LAPTOP | | | | | | | | |
| 000 A 000937 | | C | 1900-1660 | 05/01/03 | P SLMM | | | 1,269.77 |
| 003012 ADP SERVER | | | | | | | | |
| 000 A 000928 | | C | 1900-1660 | 05/01/03 | P SLMM | | | 2,788.70 |
| 003046 MONITOR - NOLAN | | | | | | | | |
| 000 A | | C | 1900-1660 | 12/20/99 | P SLMM | | | 0.00 |
| 003071 WEB SERVER - MIS COMPUTER ROOM | | | | | | | | |
| 000 A 847 | | C | 1900-1660 | 08/03/00 | P SLMM | | | 0.00 |
| 003081 HP9000 MAINFRAME - MIS COMPUTER ROOM | | | | | | | | |
| 000 A 857 | | C | 1900-1660 | 08/03/00 | P SLMM | | | 0.00 |
| 003092 MIS SERVER | | | | | | | | |
| 000 A 000430 | | C | 1900-1660 | 11/27/03 | P SLMM | | | 3,520.48 |
| 003098 Mainframe Printers - MIS Corporate | | | | | | | | |
| 000 A 860 | Corporate M | C | 1900-1660 | 02/26/04 | P SLMM | Corporate M | Ohmega Com | 1,601.25 |
| 003115 INVENTORY SCANNER | | | | | | | | |
| 000 A | | C | 1900-1660 | 05/03/01 | P NoDep | | | 0.00 |
| 003119 INVENTORY SCANNER | | | | | | | | |
| 000 A | | C | 1900-1660 | 05/03/01 | P NoDep | | | 0.00 |
| 003130 INVENTORY SCANNER | | | | | | | | |
| 000 A | | C | 1900-1660 | 07/01/01 | P NoDep | | | 0.00 |
| 003134 INVENTORY SCANNER | | | | | | | | |
| 000 A | | C | 1900-1660 | 07/01/01 | P NoDep | | | 0.00 |
| 003165 HP OPERATING SYSTEM | | | | | | | | |
| 000 A 861 | Corporate | C | 1900-1660 | 09/30/04 | P SLMM | | | 20,001.38 |
| 003174 GIGABYTE SWITCH - STOWERS | | | | | | | | |
| 000 A 440 | Corporate | C | 1900-1660 | 11/04/04 | P SLMM | | | 2,856.81 |
| 003201 LAPTOP - THOMAS | | | | | | | | |
| 000 A 449 | CORPORA1 | C | 1900-1660 | 04/05/05 | P SLMM | | | 1,160.60 |
| 003207 Laptop Computer-Scott Cordial | | | | | | | | |
| 000 A 452 | Corporate | C | 1900-1660 | 05/03/05 | P SLMM | | | 1,135.99 |
| 003209 Laptop Computer-Bill Noradaby | | | | | | | | |
| 000 A 453 | Corporate | C | 1900-1660 | 05/05/05 | P SLMM | | | 1,135.99 |
| 003210 LAPTOP - EICHFELD | | | | | | | | |
| 000 A 454 | Corporate | C | 1900-1660 | 05/05/05 | P SLMM | | | 1,135.99 |
| 003222 DESKTOP COMPUTER- Brad Hopper | | | | | | | | |
| 000 A 455 | | C | 1900-1660 | 05/31/05 | P SLMM | | | 624.98 |
| 003223 DESKTOP COMPUTER-CHARLOTTE | | | | | | | | |
| 000 A 456 | | C | 1900-1660 | 05/31/05 | P SLMM | | | 624.98 |
| 003230 Laptop Computer-Robert Stephens | | | | | | | | |
| 000 A 458 | Corporate | C | 1900-1660 | 09/20/05 | P SLMM | | | 2,820.00 |
| 003231 Desktop Computer -MIS Department | | | | | | | | |
| 000 A 458B | Corporate | C | 1900-1660 | 08/09/05 | P SLMM | | | 1,126.27 |
| 003235 Corporate conference room | | | | | | | | |
| 000 A 458C | CORPORA1 | C | 1900-1660 | 09/01/05 | P SLMM | | | 22,572.12 |
| 003299 32" WIDESCREEN HDTV MONITOR | | | | | | | | |
| **G/L Asset Acct No = 1900-1660** | | | | | | | | |
| 000 A 000496 | CORPORA1 | C | 1900-1660 | 10/01/06 | P SLMM | TED RIEGE | BEST BUY | 1,707.98 |
| 003333 COMPUTER /TV EQUIPMENT FOR CORPORATE LOBBY | | | | | | | | |
| 000 A | | C | 1900-1660 | 04/30/07 | P SLMM | | | 7,642.38 |
| 003374 ADTRAN DATA EQUIPMENT | | | | | | | | |
| 000 A | | C | 1900-1660 | 01/18/08 | P SLMM | | PARALLEL T | 10,617.50 |
| 003576 Disaster Recovery | | | | | | | | |
| 000 A | IT | C | 1900-1660 | 11/18/11 | P SLMM | | | 36,620.47 |
| 003577 New Servers (2) | | | | | | | | |
| 000 A | IT Server Rc | C | 1900-1660 | 11/04/11 | P SLMM | | | 60,879.53 |

|  | |
|---|---|
| **G/L Asset Acct No = 1900-1660** | $ 729,696.42 |
| Count = 54 | |

**G/L Asset Acct No = 1900-1661**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 001585 PROGRESS/VARNET SOFTWARE UPGRADE | | | | | | | |
| 000 A 000190 | 362510 | C | 1900-1661 | 10/25/96 | P | SLMM | $ 16,803.36 |
| 001717 GROUPWISE MAILBOX SOFTWARE | | | | | | | |
| 000 A 206 | 362415 | C | 1900-1661 | 12/01/97 | P | SLMM | 9,783.99 |
| 002410 VARNET SOFTWARE | | | | | | | |
| 000 A 00020 | 362510 | C | 1900-1661 | 04/16/92 | P | SLMM | 62,693.68 |
| 002633 PROGRESS/VARNET UPGRADE | | | | | | | |
| 000 A 00144 | | C | 1900-1661 | 07/01/99 | P | SLMM | 42,129.20 |
| 003704 IQMS | | | | | | | |
| 000 A | | C | 1900-1661 | 06/01/15 | P | SLMM | IQMS | 1,176,418.32 |
| 003719 IQMS - Additional | | | | | | | |
| 000 A | | C | 1900-1661 | 10/01/15 | P | SLMM | 45,586.73 |
| 003918 IT Hardware & Software Upgrade | | | | | | | |
| 000 A | | C | 1900-1661 | 11/01/21 | P | SLMM | 140,789.21 |
| 003925 EDI Ecommerce Module IQMS | | | | | | | |
| 000 A | | C | 1900-1661 | 11/01/21 | P | SLMM | 12,496.91 |

G/L Asset Acct No = 1900-1661   $ 1,506,701.40
Count = 8

**G/L Asset Acct No = 1900-1670**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 001617 MESSAGE CENTER | | | | | | | |
| 000 A 170 | 362510 | F | 1900-1670 | 12/26/96 | P | SLMM | $ 13,319.23 |
| 001622 CREDENZA-PERSHING | | | | | | | |
| 000 A 171 | 362510 | F | 1900-1670 | 12/26/96 | P | SLMM | 1,792.46 |
| 001625 MINOLTA MICROFICHE READER | | | | | | | |
| 000 A 000198 | 362510 | F | 1900-1670 | 02/28/97 | P | SLMM | ASSURED M | 6,103.64 |
| 001677 OFFICE FURNITURE - ANSTED | | | | | | | |
| 000 A 173 | 362510 | F | 1900-1670 | 07/01/97 | P | SLMM | 5,031.98 |
| 002353 SIGN COMPANY NAME | | | | | | | |
| 000 A 00001 | 362510 | F | 1900-1670 | 10/30/85 | P | SLMM | 887.50 |
| 002354 FILING CABINETS | | | | | | | |
| 000 A 00018 | 362510 | F | 1900-1670 | 07/11/88 | P | SLMM | 7,196.70 |
| 002358 CHAIRS | | | | | | | |
| 000 A 00025 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 17,916.22 |
| 002359 OFF FURN COMPONENTS | | | | | | | |
| 000 A 00026 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 22,724.69 |
| 002360 FILE CABINETS | | | | | | | |
| 000 A 00027 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 8,686.87 |
| 002361 VISUAL AID WALL CABINET | | | | | | | |
| **G/L Asset Acct No = 1900-1670** | | | | | | | |
| 000 A 00028 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 672.03 |
| 002362 FIRE PROOF FILE | | | | | | | |
| 000 A 00029 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 1,449.57 |
| 002363 OCCASIONAL TABLES | | | | | | | |
| 000 A 00034 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 3,124.77 |
| 002364 CONFERENCE TABLES | | | | | | | |
| 000 A 00030 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 2,270.74 |
| 002365 EXEC DESKS | | | | | | | |
| 000 A 00031 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 9,341.74 |
| 002367 CREDENZAS | | | | | | | |
| 000 A 00033 | 362510 | F | 1900-1670 | 05/12/88 | P | SLMM | 6,492.74 |
| 002368 DESK | | | | | | | |
| 000 A 00044 | 362510 | F | 1900-1670 | 12/06/88 | P | SLMM | 1,001.18 |
| 002369 KIMBALL EXECUTIVE CHAIR | | | | | | | |
| 000 A 00045 | 362510 | F | 1900-1670 | 01/26/89 | P | SLMM | 541.22 |
| 002370 OFFICE PANEL WORKSTATION | | | | | | | |
| 000 A 00046 | 362510 | F | 1900-1670 | 01/06/89 | P | SLMM | 1,646.85 |
| 002371 DESK - FIRST FLOOR | | | | | | | |
| 000 A 00049 | 362510 | F | 1900-1670 | 07/07/89 | P | SLMM | 1,125.48 |
| 002372 DESK - FIRST FLOOR | | | | | | | |
| 000 A 00050 | 362510 | F | 1900-1670 | 07/07/89 | P | SLMM | 1,125.48 |
| 002373 2 CABINETS | | | | | | | |
| 000 A 00051 | 362510 | F | 1900-1670 | 07/07/89 | P | SLMM | 1,101.31 |
| 002374 TABLE | | | | | | | |
| 000 A 00052 | 362510 | F | 1900-1670 | 07/07/89 | P | SLMM | 537.11 |
| 002375 DESK - THOMAS | | | | | | | |
| 000 A 00053 | 362510 | F | 1900-1670 | 07/07/89 | P | SLMM | 1,125.48 |
| 002376 OAK SHOWCASE | | | | | | | |
| 000 A 00054 | 362510 | F | 1900-1670 | 07/11/89 | P | SLMM | 1,055.00 |
| 002377 OAK SHOWCASE | | | | | | | |
| 000 A 00055 | 362510 | F | 1900-1670 | 07/11/89 | P | SLMM | 1,055.00 |
| 002379 VERTICAL BLINDS | | | | | | | |
| 000 A 00057 | 362510 | F | 1900-1670 | 08/14/89 | P | SLMM | 4,364.54 |
| 002380 DESK | | | | | | | |
| 000 A 00058 | 362510 | F | 1900-1670 | 09/13/89 | P | SLMM | 948.44 |
| 002381 WORKSTATION | | | | | | | |
| 000 A 00060 | 362510 | F | 1900-1670 | 10/03/89 | P | SLMM | 914.79 |
| 002383 CABINET | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 000 A 00067 | 362510 | F | 1900-1670 | 03/19/90 | P SLMM | | | 623.92 |
| 002384 WORKSTATION | | | | | | | | |
| 000 A 00071 | 362510 | F | 1900-1670 | 01/09/90 | P SLMM | | | 755.59 |
| 002385 PAPER SHREDDER | | | | | | | | |
| 000 A 000203 | 362510 | F | 1900-1670 | 04/20/90 | P SLMM | | | 1,496.26 |
| 002386 DESK | | | | | | | | |
| 000 A 00074 | 362510 | F | 1900-1670 | 04/12/90 | P SLMM | | | 1,230.05 |
| 002387 TILT CHAIR | | | | | | | | |
| 000 A 00075 | 362510 | F | 1900-1670 | 07/19/90 | P SLMM | | | 552.02 |
| 002388 TILT CHAIR | | | | | | | | |
| 000 A 00076 | 362510 | F | 1900-1670 | 07/19/90 | P SLMM | | | 552.01 |
| 002390 WORKSTATION | | | | | | | | |
| 000 A 00080 | 362510 | F | 1900-1670 | 07/13/90 | P SLMM | | | 3,328.95 |
| 002391 FILING CABINET (PAYABLES) | | | | | | | | |
| 000 A 00059 | 362510 | F | 1900-1670 | 12/10/90 | P SLMM | | | 1,119.89 |
| 002392 FILING CABINET (PERSONNEL) | | | | | | | | |
| **G/L Asset Acct No = 1900-1670** | | | | | | | | |
| 000 A 00065 | 362510 | F | 1900-1670 | 12/10/90 | P SLMM | | | 1,119.89 |
| 002393 FILING CABINET (SALES) | | | | | | | | |
| 000 A 00066 | 362510 | F | 1900-1670 | 12/10/90 | P SLMM | | | 1,159.03 |
| 002394 DESK | | | | | | | | |
| 000 A 00083 | 362510 | F | 1900-1670 | 07/15/91 | P SLMM | | | 649.30 |
| 002395 DESK - DUDLEY | | | | | | | | |
| 000 A 00100 | 362510 | F | 1900-1670 | 10/04/91 | P SLMM | | | 3,230.66 |
| 002396 CHAIRS | | | | | | | | |
| 000 A 00101 | 362510 | F | 1900-1670 | 10/24/91 | P SLMM | | | 1,163.25 |
| 002401 MINI BLINDS | | | | | | | | |
| 000 A 00128 | 362510 | F | 1900-1670 | 04/08/94 | P SLMM | | | 3,013.88 |
| 002402 OFFICE FURN (MIS SUPER) | | | | | | | | |
| 000 A 00129 | 362510 | F | 1900-1670 | 05/24/94 | P SLMM | | | 1,609.51 |
| 002403 CORPORATE SIGN | | | | | | | | |
| 000 A 00152 | 362510 | F | 1900-1670 | 10/26/94 | P SLMM | | | 6,886.07 |
| 002404 OFFICE FURN (PERSONNEL) | | | | | | | | |
| 000 A 00154 | 362510 | F | 1900-1670 | 11/09/94 | P SLMM | | | 1,074.42 |
| 002406 DESK (MIS) | | | | | | | | |
| 000 A 00613 | 362510 | F | 1900-1670 | 12/13/94 | P SLMM | | | 768.62 |
| 002407 FURNITURE - DUDLEY | | | | | | | | |
| 000 A 00158 | 362510 | F | 1900-1670 | 08/31/95 | P SLMM | | | 8,287.63 |
| 002408 FAX MACHINE - 3RD FLOOR | | | | | | | | |
| 000 A 00199 | 362510 | F | 1900-1670 | 09/28/95 | P SLMM | | | 4,054.46 |
| 002409 OFFICE FURNITURE-BROWN | | | | | | | | |
| 000 A 00160 | 362510 | F | 1900-1670 | 01/22/96 | P SLMM | | | 1,815.73 |
| 002527 SOFA - LOBBY | | | | | | | | |
| 000 A 000175 | 362510 | F | 1900-1670 | 06/01/98 | P SLMM | | | 884.85 |
| 002529 CORP A/P DESK UNIT | | | | | | | | |
| 000 A 000176 | 362510 | F | 1900-1670 | 06/01/98 | P SLMM | | | 4,534.23 |
| 002654 TWO CORPORATE WORKSTATIONS | | | | | | | | |
| 000 A 177 | | F | 1900-1670 | 09/30/99 | P SLMM | CONT01 | | 6,405.29 |
| 002658 3RD FLOOR CARPET- CORP | | | | | | | | |
| 000 A 178 | | F | 1900-1670 | 09/30/99 | P SLMM | LEVI02 | | 13,980.35 |
| 002666 THERMAL TRANSFER PRINTER | | | | | | | | |
| 000 A 390 | | F | 1900-1670 | 11/04/99 | P SLMM | | | 2,235.63 |
| 002676 70" COMPUTER CABINET W/ACCESSORIES | | | | | | | | |
| 000 A 179 | | F | 1900-1670 | 01/01/00 | P SLMM | MICRO WAR | | 2,526.81 |
| 002685 TWO WORKSTATIONS-CORP.-MIS | | | | | | | | |
| 000 A 180 | | F | 1900-1670 | 02/03/00 | P SLMM | CONTINENT | | 6,136.31 |
| 002725 EPSON PROJECTOR - SALES | | | | | | | | |
| 000 A 000402 | | F | 1900-1670 | 06/01/00 | P SLMM | MCSi | | 5,614.51 |
| 002744 TRADE SHOW BOOTH | | | | | | | | |
| 000 A 410 | | F | 1900-1670 | 09/28/00 | P SLMM | EXHI00 | | 33,837.68 |
| 002795 VIDEO CONFERENCING EQUIPMENT | | | | | | | | |
| 000 A 000425 | | F | 1900-1670 | 05/03/01 | P SLMM | | | 64,896.56 |
| 002845 CANNON FAX MACHINE-2ND FLOOR | | | | | | | | |
| 000 A 000421 | | F | 1900-1670 | 06/28/01 | P SLMM | | | 2,388.00 |
| 002986 WORKSTATION - MIS | | | | | | | | |
| 000 A 000100 | | F | 1900-1670 | 12/28/02 | P SLMM | | | 2,484.89 |
| 003020 COPIER CORP.-2nd FLOOR | | | | | | | | |
| 000 A 000940 | | F | 1900-1670 | 06/26/03 | P SLMM | | | 15,862.50 |
| 003022 RECEPTION FRONT DESK-CORP | | | | | | | | |
| 000 A 000101 | | F | 1900-1670 | 06/26/03 | P SLMM | | | 2,661.84 |
| 003024 ACCOUNTING SCANNER-CORP | | | | | | | | |
| **G/L Asset Acct No = 1900-1670** | | | | | | | | |
| 000 A 000429 | | F | 1900-1670 | 07/31/03 | P SLMM | | | 9,352.05 |
| 003234 CORPORATE CONFERENCE ROOM | | | | | | | | |
| 000 A 000429B | CORPORA1F | | 1900-1670 | 04/20/05 | P SLMM | | | 15,400.04 |
| 003246 Bookcase & Cabinet w/2 chairs | | | | | | | | |
| 000 A 000430 | Corporate | F | 1900-1670 | 11/22/05 | P SLMM | | | 2,251.28 |
| 003300 TED RIEGERTS OFFICE FURNITURE | | | | | | | | |
| 000 A NA | CORPORA1F | | 1900-1670 | 10/01/06 | P SLMM | RITTERS & C | | 20,137.06 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 003373 TELEPHONE SYSTEM | | | | | | | |
| 000 A | | F | 1900-1670 | 03/15/08 | P SLMM | PARALLEL T | 102,297.83 |
| 003404 Scanner | | | | | | | |
| 000 A 000008 | Customer S-F | 1900-1670 | | 07/25/08 | P SLMM | | 6,534.00 |
| 003408 Network Frame for phone system | | | | | | | |
| 000 A | corp | F | 1900-1670 | 01/01/09 | P SLMM | | 18,293.60 |
| | | | | | | **G/L Asset Acct No = 1900-1670** | $ 506,759.21 |
| | | | | | | Count = 70 | |

---

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **G/L Asset Acct No = 1917-1605** | | | | | | | |
| 002878 CAPITALIZED INTEREST-POLY B BUILDING | | | | | | | |
| 000 A 9002 | | B | 1917-1605 | 06/01/01 | R SLMM | | $ 52,560.00 |
| 002889 BUILDING - POLYFLEX B | | | | | | | |
| 000 A 700034 | | B | 1917-1605 | 06/01/01 | R SLMM | DUBLIN BUIL | 2,666,234.63 |
| 002890 BUILDING-POLYFLEX B | | | | | | | |
| 000 A 700034A | | B | 1917-1605 | 06/01/01 | R SLMM | DBS/NEWKI | 595,658.00 |
| 002891 BUILDING - POLYFLEX B | | | | | | | |
| 000 A 700034B | | B | 1917-1605 | 06/01/01 | R SLMM | DBS/NEWKI | 839,802.00 |
| | | | | | | **G/L Asset Acct No = 1917-1605** | $ 4,154,254.63 |
| | | | | | | Count = 4 | |

---

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **G/L Asset Acct No = 1918-1605** | | | | | | | |
| 002476 BUILDING | | | | | | | |
| 000 A 31076 | 362510 | B | 1918-1605 | 05/01/81 | P SLMM | | $ 377,084.44 |
| 002477 PARKING LOT | | | | | | | |
| 000 A 31078 | 362510 | B | 1918-1605 | 05/01/81 | P SLMM | | 92,792.97 |
| 002478 PLUMBING & HEATING | | | | | | | |
| 000 A 31081 | 362510 | B | 1918-1605 | 05/01/81 | R SLMM | | 28,148.61 |
| 002481 PARKING LOT LIGHTING | | | | | | | |
| 000 A 31080 | 362510 | B | 1918-1605 | 07/11/94 | R SLMM | | 11,515.18 |
| 002482 CONCRETE PAVING | | | | | | | |
| 000 A 31082 | 362510 | B | 1918-1605 | 06/27/95 | R SLMM | | 18,826.00 |
| 002483 ADDITION COLUMBUS | | | | | | | |
| 000 A 31035 | 362510 | B | 1918-1605 | 11/01/80 | R SLMM | | 246,037.94 |
| 002484 BLDG ADDITION | | | | | | | |
| 000 A 90004 | 362510 | B | 1918-1605 | 02/27/85 | R SLMM | | 155,493.23 |
| 002485 PLUMBING & HEATING | | | | | | | |
| 000 A 31036 | 362510 | B | 1918-1605 | 11/01/80 | R SLMM | | 19,443.65 |
| 002486 PARKING LOT | | | | | | | |
| 000 A 31037 | 362510 | B | 1918-1605 | 11/01/80 | P SLMM | | 15,934.76 |
| 002489 SEWER | | | | | | | |
| 000 A 31040 | 362510 | B | 1918-1605 | 11/01/80 | R SLMM | | 88,552.95 |
| 002490 SPRINKLER | | | | | | | |
| 000 A 31041 | 362510 | B | 1918-1605 | 11/01/80 | R SLMM | | 114,000.00 |
| 002491 GUTTER INSTALL | | | | | | | |
| **G/L Asset Acct No = 1918-1605** | | | | | | | |
| 000 A 31037 | 362510 | B | 1918-1605 | 02/04/91 | R SLMM | | 5,436.78 |
| 002492 STORM SEWER DRAINS | | | | | | | |
| 000 A 31038 | 362510 | B | 1918-1605 | 11/24/92 | R SLMM | | 4,481.00 |
| 002493 POLYFLEX ADDITION (LINE 4) | | | | | | | |
| 000 A 31042 | 362510 | B | 1918-1605 | 07/12/94 | R SLMM | | 128,900.00 |
| 002494 LINE 4 BLDG | | | | | | | |
| 000 A 1344 | 362510 | B | 1918-1605 | 04/01/95 | R SLMM | | 655,438.51 |
| 002495 INSTALLATION OF HIGH BAY LIGHTING | | | | | | | |
| 000 A 31043 | 362510 | B | 1918-1605 | 01/18/96 | R SLMM | | 25,610.00 |
| | | | | | | **G/L Asset Acct No = 1918-1605** | $ 1,987,696.02 |
| | | | | | | Count = 16 | |

---

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **G/L Asset Acct No = 1919-1600** | | | | | | | |
| 002496 LAND COLUMBUS | | | | | | | |
| 002 A 31070 | 362510 | L | 1919-1600 | 01/29/74 | R NoDep | | $ 79,400.00 |
| | | | | | | **G/L Asset Acct No = 1919-1600** | $ 79,400.00 |
| | | | | | | Count = 1 | |

---

**Grand Total** $ 69,230,843.21
Count = 1,159

**Report Assumptions**

Report Name: File Listing
Source Report: <Standard Report>

Calculation Assumptions:

Not applicable to this report

**Group/Sorting Criteria:**
    Group = Active Assets
    Include Assets that meet the following conditions:
        G/L Asset Acct No is between 1700-0000 and 1999-9999
        Disposal Date is blank
    Sorted by: G/L Asset Acct No (with subtotals), System No, Extension

## Schedule 1.1(a)(iv)

## Assumed Contracts

| Title/Description of Contract/Lease | Contract/ Lease Counterparties | Outstanding | Notes |
|---|---|---|---|
| Water Treatment Chemicalc, Products and | Precision Chemical | $ 9,997.53 | |
| Compressed Air system Maintenance | Air Technologies/OTC Industrial | $ 2,494.54 | |
| Natural Gas | NRG Business Marketing LLC | $ 3,414.73 | |
| Electricity | Constellation New Energy, Inc | $ - | Cure to be covered by Adequate Assurance Deposit |
| Clark Forklift | Wells Fargo Equipment Finance, Manufacturer Services Group | $ - | To the extent this forklift lease contains a "$1 buyout" or de minimis purchase option, Debtors will work with Purchaser to exercise |
| Forklift x8-010-GP050VX-LPG, Serial | HYG Financial Services, Inc. | $ - | |
| Forklift x8-011 GP050VX-LPG, Serial | HYG Financial Services, Inc. | $ - | |
| Forklift x8-011 GP050VX-LPG, Serial | HYG Financial Services, Inc. | | |
| Forklift x8-012 GC050VX, Serial | HYG Financial Services, Inc. | | |
| Data Center Services for Servers and | Expedient/ Continental Broadband LLC | $ 7,883.07 | |
| Maintenance Agreement ERP Systyem(IQMS) | Dassault Systemes Americas Corp. | $ 677.25 | |
| Finance Planning and Finacial Statement Tool | Workday (Adaptive) | $ 13,437.50 | |
| Email, Teams, One Drive,Sharpoint, for PSI. Email Security, Anti-Virus, RDP MPSA License, | CDW | $ 1,182.61 | |
| PSI Cell Phone | At&T Cell Phone Mobility | $ - | |
| Landline Phone System | AT&T | $ 1,431.80 | |
| Expense and AP Invoice Automation | Concur Technologies Inc | $ 1,182.49 | |
| Toshiba Copiers Lease | GreatAmerica Financial Services Corporation | $ 962.64 | |
| Building Door Access Control System | Silco Fire & Safety | $ - | |
| Quality Audit Software | SafetyCulture PTY LTD | $ - | |
| Account Software for Fixed Assets | Sage Software Inc. | $ - | |
| Websit Hosting | Devphase | $ 1,225.00 | |
| Security Camera Cleaning and Maintenance | Security Cameras of Columbus | $ - | |
| Domain and DNS Management | Go Daddy.com LLC | $ - | |
| Go to Assist IT Software | Goto Technologies USA, Inc | $ 414.97 | |
| Software Service for Check Printing | Wycom Systems Inc | $ - | |
| Accounting 1099 Software | 1099 Pro Inc | $ - | |
| Allen Bradley Suite - Reads Plc data IH Robot | PTC INC | $ - | |
| Reporting Software - Domo | DOMO INC | $ 50,948.70 | |
| | **Total** | **$ 95,252.83** | |

s

## Schedule 1.1(a)(v)

**IP Assets:**

| Polylactic Acid Shrink Films – 400 Series | COUNTRY | PATENT # | DESCRIPTION | DATE GRANTED | EXPIRES |
|---|---|---|---|---|---|
| 0406 | EUROPE | EP#1992468 | Polylactic acid shrink film and method of casting same | 2/27/17 | NOV 20 2026 |
| 0410 | Belgium 1992468 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0411 | Denmark 1992468 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0412 | France 1992468 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0413 | Germany 602006051326.7 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0414 | Ireland 1992468 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0415 | Italy 502017000019398 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0416 | Poland 1992468 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0417 | Spain 08158586.1 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0418 | Sweden 08158586.1 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0419 | Switzerland 1992468 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0420 | Netherlands 1992468 | 08158586.1 (APP#) | | | NOV 20 2026 |
| 0421 | Great Britain 1992468 | 08158586.1 (APP#) | | | NOV 20 2026 |
| | | | | | |
| 0404 | EUROPE (NEW) Divisional | EP#19545771 APP N0. 06838052.6 | | 5/31/07 | NOV 2026 |

|  | COUNTRY | PATENT # | EXPIRES* |
|---|---|---|---|
| Polylactic Acid Blown Film and Method of Manufacturing Same |  |  |  |
| 069889-0205 | Canada | 2578635 | AUG. 29, 2025 |
|  |  |  |  |
| 0698899-0202 | USA | 8133558 | SEPT. 03, 2026 |
| 069889-0204 | USA | 7615183 | AUG. 24, 2025 |
| 069889-0210 | Mexico | 285288 Divisional 324321 (MX/a/2011/000078) | AUG. 29, 2025 |
| 069889-0207 |  | MX/A/07/002442 |  |

| | | | | |
|---|---|---|---|---|
| 0404/CH | Switzerland 06838052.6 | 1954571 | Polylactic acid shrink film and method of casting same | NOV 2026 |
| 0422 | Poland 06838052.6 | 1954571 | | NOV 2026 |
| 0423 | Netherlands 06838052.6 | 1954571 | | NOV 2026 |
| 0424 | Belgium 06838052.6 | 1954571 | | NOV 2026 |
| 0425 | Ireland 06838052.6 | 1954571 | | NOV 2026 |
| 0426 | Great Britain 06838052.6 | 1954571 | | NOV 2026 |
| 0427 | Italy 06838052.6 | 1954571 | | NOV 2026 |
| 0428 | Denmark 06838052.6 | 1954571 | | NOV 2026 |
| 0429 | Sweden 06838052.6 | 1954571 | | NOV 2026 |
| 0430 | France 06838052.6 | 1954571 | | NOV 2026 |
| 0431 | Spain 06838052.6 | 1954571 | | NOV 2026 |
| 0432 | Germany 06838052.6 | 1954571 | | NOV 2026 |
| | | | | |

| COUNTRY* | APPLICATION # | DESCRIPTION |
|---|---|---|
| USA | 18/414,440 | A system and method for enclosing the blowing area of a biopolymer blown film production process |
| USA | 18/414,431 | A compostable blown film article produced in an enclosed blown film process that includes PHA and wax additives |
| USA | 18/414,399 | A method for producing polyhydroxalkanoate (PHA) blown film |
| USA | 18/414,380 | A method for producing home compostable biopolyester blown film |

| Polylactic Acid Shrink Films – 400 Series | COUNTRY | PATENT # | DESCRIPTION | DATE GRANTED | EXPIRES |
|---|---|---|---|---|---|
| 0403 | CANADA | 2630563 | Polylactic acid shrink films and method of casting same | 10/05/2015 | NOV 20 2026 |
| 0405 | MEXICO | MX/a/2008/006612 –Patent #306054 | | 12/13/2012 | NOV 20 2026 |
| 0401 | USA – 11/561771 | 7713601 | | 5/11/2010 | NOV 20 2026 |
| 0407 | USA – 12/776315 | 7998545 | | 8/16/2011 | NOV 20 2026 |
| 0408 | USA – 13/178367 | 8263197 | | 9/11/2012 | NOV 20 2026 |
| 0409 | USA – 13/592117 | 8551586 | | 10/08/2013 | NOV 20 2026 |

*International patents pending

| APPLICATION NUMBER | TITLE | COUNTRY | NEXT DATE VALUE | CLASS CODE | DESCRIPTION |
|---|---|---|---|---|---|
| 2182439 | EARTHFIRST | Canada | N/A | 017 | Bio-based, compostable flexible packaging films |
| 018694463 | EARTHFIRST | Europe | Renewal Due 04-28-2032 | 017 | Bio-based, compostable flexible packaging films |
| 2735389 | EARTHFIRST | Mexico | Declaration of Use Due 10-17-2025<br><br>Renewal Due 10/17/2032 | 016 | Bio-based, compostable flexible packaging films |
| 97109687 | EARTHFIRST | US | Section 8/15 Due 12-20-2028 | 016 | Bio-based, compostable flexible bioplastic packaging films |
| 78454887 | EARTHFIRST | US | Section 8/15 Due 01-31-2026 | 017 | Biodegradable polylactic acid-based film for use as packaging and wrapping material and labeling material |
| 97097112 | NATURALLY BETTER PACKAGING | US | Section 8/15 Due 11-24-2029 | 016<br><br>017 | Biodegradable biopolymer-based film for use as packaging and wrapping material and labeling material<br><br>Biodegradable biopolymer-based<br>Plastic films for use as labeling material |
| 71456431 | POLYFLEX | US | Section 8/9 Due 08-03-2033 | 017 | Plastic composition in sheet form |

## Schedule 3.6

**Litigation Claims:**   **None**

**EXHIBIT B**
**Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1(b)

Stephen M. Packman, Esquire
Douglas G. Leney, Esquire
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (215) 963-3300
Facsimile: (215) 963-9999
Email: spackman@archerlaw.com
     dleney@archerlaw.com
*Proposed Attorneys for Debtors*

Order Filed on January 10, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| In re: | Chapter 11 |
| PLASTIC SUPPLIERS, INC. *et al.*,[1] | Case No. 24-22549 (ABA)<br>(Jointly Administered) |
| Debtors. | **Hearing Date:  January 10, 2025 @ 10:00 A.M.** |

**ORDER: (A) APPROVING STALKING HORSE ASSET PURCHASE
AGREEMENT AND BIDDING PROCEDURES, INCLUDING BID
PROTECTIONS; (B) SCHEDULING AUCTION AND HEARING TO
CONSIDER FINAL APPROVAL OF SALE OF ASSETS AND ASSUMPTION
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) APPROVING FORM
AND MANNER OF NOTICE THEREOF; AND (D) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through fourteen (14) is

hereby **ORDERED.**

**DATED: January 10, 2025**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are:  Plastic Suppliers, Inc. (9518); Sidaplax, Inc. (4275); and Specialty Films, Inc. (4273).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  2400-2450 Marilyn Pk. Ln., Columbus, OH 43219.

229820163 v3

Debtors:   Plastic Suppliers, Inc.

Case No:   24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding
Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final
Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and
Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting
Related Relief*

      This matter is before the Court upon the motion (the "Motion") of the debtors and debtors

in possession (the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") for entry of

one or more orders pursuant to sections 105, 363 and 503 of title 11 of the United States Code

(the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9007 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, 6006-1, 9006-1(b),

and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the  District of New Jersey (the "Local Rules"): (i) approving the form of

asset purchase agreement (the "Stalking Horse APA") between Plastic Suppliers, Inc. ("PSI")

and API Industries, Inc. d/b/a Aluf Plastics, for itself and any designees (the "Stalking Horse

Purchaser") and proposed bidding procedures (the "Bidding Procedures") to be used in

connection with the Debtors' proposed sale (the "Sale") of the Purchased Assets, including bid

protections, (ii) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to

consider final approval of the Sale and assumption and assignment of certain executory contracts

and unexpired leases (the "Assumed Contracts") to the successful bidder, (iii) approving form

and manner of the notice thereof, including the notice of potential assumption and assignment of

the Assumed Contracts; (iv) authorizing the Debtors to sell, and approving the Debtors' Sale of,

the Purchased Assets and assumption and assignment of Assumed Contracts; and (v) granting

related relief (the relief set forth in parts (i) through (iii) of the Motion shall be referred to as the

"Bidding Procedures Motion");[2] and this Court having reviewed the Bidding Procedures Motion

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or

229820163 v3

2

Debtors:    Plastic Suppliers, Inc.

Case No:  24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding
Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final
Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and
Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting
Related Relief*

and the First Day Declaration of Michael DuFrayne (the "First Day Declaration") filed in support

thereof; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United

States District Court for the District of New Jersey, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.) (the "Standing Reference Order"); and this Court having

found that the relief requested in the Bidding Procedures Motion is in the best interests of the

Debtors' estates, creditors, and other parties in interest; and this Court having reviewed the

Bidding Procedures Motion and having heard any arguments of counsel; and this Court having

determined that just cause exists for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**

A.      Jurisdiction and Venue. This Court has jurisdiction over the Bidding Procedures

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing

Reference Order, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M)

and (O). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408

and 1409.

B.      Bases for Relief. The statutory predicates for the relief sought in the Bidding

Procedures Motion are sections 105(a), 363, and 503 of the Bankruptcy Code, Bankruptcy Rules

2002, 6004, 6006, and 9007, and Local Rules 2002-1, 6004-1, 6006-1, 9006-1(b), and 9013-1,

and the *Guidelines for the Conduct of Asset Sales* established and adopted by the Court.

---

the Bidding Procedures, as applicable.

229820163 v3

Debtors:    Plastic Suppliers, Inc.
Case No:    24-22549 (ABA) (jointly administered)
Caption:    *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding
Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final
Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and
Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting
Related Relief*

C.      Notice of the Bidding Procedures Motion. As reflected in the certificate of service

filed on December 26, 2024 [Docket No. 26], notice of the Bidding Procedures Motion and the

hearing thereon (the "Hearing") was served on the Notice Parties. Notice of the Bidding

Procedures Motion and of the Hearing is reasonable and sufficient under the circumstances and

no other or further notice of the Bidding Procedures Motion or the Hearing is necessary. A

reasonable and fair opportunity to object to the Bidding Procedures Motion and the relief granted

in this Order has been afforded to all parties in interest under the circumstances.

D.      Stalking Horse APA/Bidding Procedures. The Debtors have articulated good and

sufficient business justification and rationale for its entry into the Stalking Horse APA and for

approving the Bidding Procedures, attached hereto as **Exhibit 1,** which this Court finds are fair,

reasonable, and appropriate under the circumstances and designed to maximize value for the

benefit of the Debtors' estates, creditors, and other parties in interest.

E.      Sale Hearing Notice. The Sale Hearing Notice, attached hereto as **Exhibit 2,** is

appropriate, sufficient and reasonably calculated to provide all interested parties with timely and

proper notice of the Sale of the Purchased Assets under the circumstances and no other or further

notice is required.

G.      Assumption and Assignment Procedures. The Cure Notice, attached hereto as

**Exhibit 3,** is reasonably calculated to provide all non-Debtor counterparties (the "Contract

Parties") to the Assumed Contracts with proper notice of the potential assumption and

assignment of their Contract or Lease and any cure amounts relating thereto and will be served

4

229820163 v3

Debtors:   Plastic Suppliers, Inc.

Case No:   24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting Related Relief*

on such Contract Parties in accordance with paragraph 21 hereof and no other or further notice is required; *provided*, *however*, that the mere listing of any Contract or Lease on the Cure Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors with respect to such Contracts and Leases are reserved.

H.      Bid Protections. The breakup fee and expense reimbursement as set forth in Section 9.2(d) of the Stalking Horse APA (together, the "Bid Protections") are reasonable and appropriate, particularly in light of the size and nature of the Sale and the efforts that have been or will be expended by the Stalking Horse Purchaser, were negotiated by the parties at arm's length and in good faith, and are necessary to ensure that the Stalking Horse Purchaser will continue to pursue its proposed acquisition of the Purchased Assets as contemplated by the Stalking Horse APA. The Bid Protections are commensurate with the real and substantial post-petition benefits conferred upon the Debtors' estates by the Stalking Horse Purchaser and constitute actual and necessary costs and expenses incurred by the Debtors in preserving the value of its estate within the meaning of section 503(b) of the Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Bidding Procedures Motion is hereby granted to the extent provided in this Order.

2.      Any and all objections, if any, to entry of this Order or to the relief provided herein and requested in the Bidding Procedures Motion that have not been withdrawn, waived,

229820163 v3

Debtors:   Plastic Suppliers, Inc.

Case No:   24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting Related Relief*

resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled in their entirety.

## I.  Stalking Horse Purchaser, Breakup Fee, and Stalking Horse Agreement

3.      PSI's entry into the Stalking Horse APA is authorized and approved. The Stalking Horse APA hereby is deemed a Qualified Bid (as defined in the Bidding Procedures), subject to higher and better offers at the Auction.

4.      PSI is authorized to perform all obligations of the Seller set forth in the Stalking Horse APA that are intended to be performed prior to Sale Hearing and prior to the entry of the Sale Order (as defined herein), subject to the terms of the Bidding Procedures.

5.      The Bid Protections for the Stalking Horse Purchaser hereby are approved and authorized in their entirety. The Debtors are authorized to pay any amounts that may become due to the Stalking Horse Purchaser on account of the Bid Protections on the terms set forth in the Stalking Horse APA. The Stalking Horse Purchaser hereby is granted an allowed administrative expense claim under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code in an amount equal to the Bid Protections to the extent they become due in accordance with the terms of the Stalking Horse APA, without further order of or proceedings before this Court. Nothing in this Order shall be construed as authorizing and directing the payment of any Bid Protections to the Stalking Horse Purchaser in the event the Stalking Horse Purchaser becomes the Successful Bidder with respect to the Purchased Assets.

6

Debtors:   Plastic Suppliers, Inc.

Case No:   24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting Related Relief*

6.   In the event of a competing Qualified Bid (as defined in the Bidding Procedures) with respect to the Purchased Assets, the Stalking Horse Purchaser shall be entitled, but not obligated, to submit subsequent bids and shall be entitled, but not obligated, in any and all such bids to credit bid the full amount of the Bid Protections in lieu of cash, and for purposes of evaluating the Stalking Horse Purchaser's bid, the full amount of such Bid Protections shall be treated as equal to cash in the same amount.

7.   Except for the Stalking Horse Purchaser, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement or break-up, "topping," termination, or similar fee, or post-petition claim, including any administrative expense claim or substantial contribution claim under section 503 of the Bankruptcy Code or otherwise, and by submitting a Bid, a Bidder (other than the Stalking Horse Purchaser) shall be deemed to waive any right with respect thereto.

8.   The Debtors' obligations under the provisions of this Order, and the portions of the Stalking Horse APA, pertaining to the obligations to pay the Bid Protections shall survive termination of the Stalking Horse APA in accordance with the terms thereof, confirmation of any Chapter 11 plan or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted Debtors, as the case may be, before or after the effective date of a confirmed plan or plans in the Chapter 11 Case (including any order entered after any dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code).

229820163 v3

Debtors:   Plastic Suppliers, Inc.

Case No:   24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting Related Relief*

9.    The Stalking Horse Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to take any action necessary or required under the Stalking Horse APA. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

## II.  Approval of the Bidding Procedures

10.   The Bidding Procedures, as set forth on **Exhibit 1** and incorporated herein by reference, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Purchased Assets.

11.   The deadline for submitting bids for the Purchased Assets (the "Bid Deadline") shall be **January 21, 2025 at 5:00 p.m.** (prevailing Eastern time), unless otherwise extended by the Debtors, in consultation with the Stalking Horse Purchaser. In the event the Bid Deadline is extended, the Debtors may adjourn the dates for: (a) the Auction and (b) the Sale Hearing, provided that such adjourned dates are consistent with the Stalking Horse APA.

12.   The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

## III. The Auction

13.   The Auction, if necessary, shall be held at **10:00 A.M.** (prevailing Eastern time) on **January 27, 2025**, telephonically, via videoconference, or live at the offices of Debtor's

229820163 v3

Debtors:    Plastic Suppliers, Inc.

Case No:   24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding
Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final
Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and
Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting
Related Relief*

counsel, or such other location as may be designated by the Debtor parties; provided, however, in

the event that no Qualified Bids (other than that submitted by the Stalking Horse Purchaser) are

received by the Bid Deadline, the Debtors shall not be required to conduct an Auction, and in

such event the Debtors shall proceed with the approval of the Stalking Horse APA as the

Successful Bid.

**IV. Sale Hearing**

14.     The Sale Hearing on the sale of the Purchased Assets and assumption and

assignment of the Contracts and Leases shall be held before the Honorable Andrew B.

Altenburg, United States Bankruptcy Judge, on **January 29, 2025 at 10:00 A.M.** (prevailing

Eastern time) at the United States Bankruptcy Court, District of New Jersey, Mitchell H. Cohen

U.S. Courthouse, 400 Cooper Street, 4th Floor (Courtroom 4B), Camden, New Jersey 08101, at

which time this Court shall (i) consider approval of the Sale of the Purchased Assets free and

clear of liens, claims, encumbrances, and interests and assumption and assignment of the

Assumed Contracts to the Stalking Horse Purchaser or other Successful Bidder; (ii) consider the

entry of the proposed sale order approving the Sale (the "Sale Order"); (iii) consider any issues

or objections that are timely interposed by any parties in connection with the Sale and

assumption and assignment of Assumed Contracts; and (iv) grant such other or further relief as

this Court may deem just or proper.

15.     Except as may be limited by the Stalking Horse APA, the Sale Hearing may be

adjourned by the Debtors, after consultation with the Stalking Horse Purchaser or other

9

Debtors:   Plastic Suppliers, Inc.
Case No:  24-22549 (ABA) (jointly administered)
Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding
Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final
Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and
Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting
Related Relief*

Successful Bidder, as applicable, from time to time without further order of this Court, by filing

a notice with this Court and serving such notice on all Qualified Bidders and counsel for the

Committee and counsel for the Stalking Horse Purchaser.

### V. Notice

16. The Notice of Sale substantially in the form attached hereto as **Exhibit 2** is hereby

approved.

17. Immediately upon entry of this Order, the Debtors shall cause a copy of the

Bidding Procedures, the Notice of Sale, and this Order to be served upon the Notice Parties, all

known creditors of the Debtors, and all parties identified by the Debtors as potentially having an

interest in acquiring the Purchased Assets.

### VI. Objections to the Sale

18. Objections, if any, to the sale of the Purchased Assets, or the relief requested in

the Motion, other than with respect to the relief granted herein, shall: (a) be in writing; (b)

comply with the Bankruptcy Rules and Local Rules; (c) be filed with this Court; and (d) served

so as to be received no later than **January 28, 2025 at 4:00 p.m.** (the "Objection Deadline"), by

(i) the proposed attorneys for the Debtors, Archer & Greiner, P.C., 1025 Laurel Oak Road,

Voorhees, NJ, 08043, Attn: Stephen M. Packman (spackman@archerlaw.com); (ii) counsel to

the DIP Lender, Blank Rome LLP, 130 N 18th St., Philadelphia, PA, 19103, Attn: Regina

Kelbon (regina.kelbon@blankrome.com); (iii) the Office of the United States Trustee for Region

3, One Newark Center, Newark, NJ 07102, Attn: Jeffrey M. Sponder

Debtors:   Plastic Suppliers, Inc.
Case No:   24-22549 (ABA) (jointly administered)
Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding*
*Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final*
*Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and*
*Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting*
*Related Relief*

(jeffrey.m.sponder@usdoj.gov; (iv) counsel to the Stalking Horse Purchaser, McGrail &
Bensinger LLP, 888-C Eighth Avenue #107, New York, NY 10019, Attn: Ilana Volkov
(ivolkov@mcgrailbensinger.com); and (v) any other party entitled to notice pursuant to
Bankruptcy Rule 2002 and Local Rule 9013-5. Only timely filed and served responses,
objections, and other pleadings will be considered by this Court at the Sale Hearing.

19.     The failure of any person or entity to timely file their objection to the Motion
shall forever bar any objection to the Motion or the relief requested therein, or to the
consummation of the Sale contemplated by the Stalking Horse APA or agreement with the
Successful Bidder, if any (including the transfer of the Purchased Assets free and clear of Liens,
Claims and/or Interests).

**VII.    Contracts and Leases**

20.     The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby
approved.

21.     On or before two (2) business days after the entry of this Order, the Debtors shall
file with this Court and serve via first class mail, electronic mail, or overnight delivery, the Cure
Notice on non-Debtor Contract Parties.

22.     The Cure Notice shall notify the applicable Contract Parties that the Contracts and
Leases may be subject to assumption and assignment in connection with the Sale, and contain the
following information: (i) a list of the applicable Contracts and Leases that may be assumed and
assigned in connection with the Sale; (ii) the applicable Contract Parties; (iii) the Debtors' good

229820163 v3

Debtors:   Plastic Suppliers, Inc.
Case No:   24-22549 (ABA) (jointly administered)
Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding
Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final
Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and
Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting
Related Relief*

faith estimate of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Contract and Lease (the "Cure Amounts"); and (iv) the deadline by which any Contract Party to a Contract and Lease must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto; *provided* that service of a Cure Notice does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease or that such Contract or Lease will be assumed at any point by the Debtors or assumed and assigned to any Successful Bidder.

23.    Unless the Contract Party to any Contract or Lease files an objection to its scheduled Cure Amount or to the assumption and assignment of a Contract or Lease, and serves a copy of the such objection so as to be actually received by the Notice Parties no later than the Objection Deadline, such Contract Party shall be forever barred, estopped, and enjoined from objecting (a) to the Cure Amount and from asserting that any additional amounts are due or defaults exist, (b) that any conditions to assumption and assignment must be satisfied under such Contract or Lease before it can be assumed and assigned or that any required consent to assumption or assignment has not been given, or (c) that the Successful Bidder (including the Stalking Horse Purchaser) has not provided adequate assurance of future performance.

24.    In the event of a timely filed objection and dispute regarding: (a) any Cure Amount with respect to any of the Contracts and Leases; (b) the ability of the Successful Bidder (including the Stalking Horse Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under any of the Contracts and

12

Debtors:    Plastic Suppliers, Inc.

Case No:   24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding
Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final
Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and
Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting
Related Relief*

Leases; or (c) any other matter pertaining to assumption or assignment of any of the Contracts

and Leases, the Cure Amount shall be paid by the Debtors or the Successful Bidder, as the case

may be, as soon as reasonably practicable after the Closing, in accordance with the Successful

Bid following the entry of a final order resolving the dispute and approving the assumption and

assignment of such Contract or Lease; provided, however, that the Debtors are authorized to

consensually resolve (and, with respect to Contracts, upon the Successful Bidder's consent) with

an applicable counterparty any dispute regarding the amount of any Cure Amount or assignment

to the Successful Bidder (including the Stalking Horse Purchaser), without any further notice to

or action, order, or approval of this Court.

25.     No later than seven (7) business days after the Closing Date, the Debtors shall file

a complete list of the Assumed Contracts assumed and assigned as of the Closing Date in

connection with the sale of the Purchased Assets to the Successful Bidder.

**VIII.  Additional Provisions**

26.     The Debtors are authorized and empowered to take such steps, incur and pay such

costs and expenses, and do such things as may be reasonably necessary to fulfill the notice

requirements established by this Order.

27.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby

waived, and this Order shall be effective immediately upon its entry.

28.     All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

13

229820163 v3

Debtors:   Plastic Suppliers, Inc.

Case No:   24-22549 (ABA) (jointly administered)

Caption:   *Order (A) Approving Stalking Horse Asset Purchase Agreement and Bidding
Procedures, Including Bid Protections, (B) Scheduling Auction and Hearing to Consider Final
Approval of Sales of Assets and Assumption and Assignment of Executory Contracts and
Unexpired Leases, (C) Approving Form and Manner of Notice Thereof, and (D) Granting
Related Relief*

     29.    This Court shall retain jurisdiction over any matter or dispute arising from or

relating to the implementation, interpretation, and enforcement of this Order.

# Exhibit 1

Approved Bidding Procedures

## BIDDING PROCEDURES

By Motion dated December 24, 2024 (the "Sale Motion"),[1] Plastic Suppliers, Inc., debtor and debtor-in-possession (the "Debtor"), sought approval of, among other things, the procedures through which it will determine the highest or otherwise best offer to sell substantially all of the Debtor's assets (collectively, the "Assets") free and clear of liens, claims, encumbrances, and other interests pursuant to sections 363 of the Bankruptcy Code (other than Permitted Encumbrances) to the party that submits, in the exercise of the Debtor's reasonable business judgment, the highest or otherwise best offers for the Assets (a "Sale Transaction").

The Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on December 22, 2024 (the "Petition Date"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 24-22549 (the "Bankruptcy Case").

As referenced in the Sale Motion, the Debtor seeks a Sale Transaction which would include (i) the purchase all of the Debtor's right, title, and interests in the Assets and (ii) a transfer, assumption, and assignment of the Debtor's rights and obligations under certain contracts and leases (the "Assigned Contracts") under sections 105, 363, and 365 of the Bankruptcy Code.

The Debtor and **API Industries, Inc. d/b/a Aluf Plastics** (the "Stalking Horse Purchaser") have entered into an asset purchase agreement (the "Stalking Horse APA"). A copy of the Stalking Horse APA has been filed with the Sale Motion.

On or about January 10, 2025, the Bankruptcy Court entered an order (the "Bidding Procedures Order") which, among other things, authorized the Debtor to determine the highest or otherwise best offer for the Assets through the process and procedures set forth below (these "Bidding Procedures").

## Access to Diligence Materials

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the Debtor an executed non-disclosure agreement (an "NDA") in a form and substance acceptable to the Debtor. Parties interested in receiving access to the Diligence Materials should contact counsel to the Debtor, Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ, 08043, *Attn*: Stephen M. Packman (spackman@archerlaw.com) or Debtor's investment banker, SSG Capital Advisors, 300 Barr Harbor Dr Suite 420, Conshohocken, PA, 19428, *Attn*: J. Scott Victor (jsvictor@ssgca.com).

A party who qualifies for access to Diligence Materials shall be an "Interested Bidder." The Debtor will afford any Interested Bidder the time and opportunity to conduct reasonable due diligence under the time constraints provided herein; provided, however, that the Debtor shall not furnish any due diligence information after the Bid Deadline (as defined below). The Debtor reserves the right to withhold any Diligence Materials that the Debtor, in consultation with its advisors, determines are business-sensitive or otherwise not appropriate for disclosure to an

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

Interested Bidder. Neither the Debtor nor its representatives shall be obligated to furnish information of any kind whatsoever to any person. **Bidders shall conduct their own due diligence and shall not have any claims or causes of action against the Debtor or its representatives, professionals or agents for the accuracy or completeness of any information provided to them by the Debtor or its representatives, professionals or agents**.

Each Interested Bidder and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Interested Bidder or Qualified Bidder, as applicable, and its contemplated transaction for the Assets. Failure by an Interested Bidder or Qualified Bidders to comply with requests for additional information and due diligence access may be a basis for the Debtor to determine that any Bid (as defined below) submitted by such Interested Bidder or Qualified Bidder is not a Qualified Bid (as defined below). Bidders (as defined below) must complete all due diligence by no later than the Bid Deadline (as defined below).

## Assets to Be Sold Free and Clear

Except as otherwise provided in the asset purchase agreement submitted by a Successful Bidder (as defined below) (including any exhibits or schedules thereto), the Debtor will seek to sell all of the Debtor's right, title and interest in and to the Assets subject thereto free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens to attach to the proceeds of the sale of the Assets with the same validity and priority as such Liens applied against the Assets.

## Bidding Process

Subject to the provisions set forth below, the Debtor and its advisors shall (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Interested Bidders in conducting their due diligence investigations, (iii) receive offers from Bidders (as defined below), and (iv) negotiate any offers made to purchase the Assets.

*Key Dates For Potential Competing Bidders*

| | |
|---|---|
| **Bid Deadline:** | **January 21, 2025 at 5:00 P.M. (ET)** |
| **Auction:**[2] | **January 27, 2025 at 10:00 A.M. (ET)** |
| **Sale Hearing:** | **January 29, 2025 at 10:00 A.M. (ET)** |
| **Return of Deposits:** | **No later than five (5) business days after the Sale Hearing (other than for the Successful Bidder(s) and the Backup Bidder(s))** |

---

[2] An auction will only be held if there is one or more Qualified Bidder.

3

### Bid Submission Process

To be eligible to be considered by the Debtor in the bid submission process, each offer, solicitation or proposal (each, a Bid"), and each party submitting such a Bid (each, a "Bidder") other than MidCap, which shall be deemed a Qualified Bidder for all purposes, must be determined by the Debtor, in consultation with its advisors and the Consultation Parties, to satisfy each of the following conditions:

(a)   Good Faith Deposit:  A Bid must be accompanied by a deposit in the amount of ten percent (10%) of the total Bid (the "Good Faith Deposit") (inclusive of any amount thereof comprising any applicable Credit Bid consideration); *provided*, that no Good Faith Deposit shall be required for any Bid that solely contains Credit Bid consideration.  Each submitted Asset Purchase Agreement (as defined below) must provide a representation that the Good Faith Deposit shall be subject to all of the terms of these Bidding Procedures.

(b)   Executed Agreement:  A Bid must be based on the Stalking Horse APA[3] and must include binding, executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (an "Asset Purchase Agreement").  A Bid also must include a copy of a redline (a "Redline APA") reflecting all of the changes to the Stalking Horse APA (including all exhibits and schedules thereto) requested by the Bidder, including those changes related to purchase price and to remove any provisions that apply only to the Stalking Horse Purchaser.

(c)   Assets to be Purchased:  A Bid must identify with particularity any and all of (i) the Assets that the Bidder proposes to purchase as well as (ii) the Assets that the Bidder does not intend to be included in the Bid.

(d)   Minimum Bid Amount:  Any Bid(s) (or in the case of partial bids, the aggregate of all such partial bids received) to constitute a Qualified Bid must include cash consideration to be paid in full at closing in the amount of $13,840,000, consisting of the amount of (i) the Bid Protections payable to the Stalking Horse Purchaser, and (ii) otherwise exceed the cash and non-cash consideration to be provided by the Stalking Horse Purchaser under the APA by at least $250,000.  **For the avoidance of doubt, the cash consideration of any Bid other than the Stalking Horse Bid must be not less than $13,840,000 to be considered a Qualified Bid**.

(e)   Credit Bidding:  A Bidder holding a perfected security interest in any of the Assets ("Secured Creditor") may seek to credit bid all or a portion of the Bidder's claims for the collateral in which it holds a perfected security interest (each such bid, a "Credit Bid") in accordance with section 363(k) of the Bankruptcy Code. A Credit Bid may be applied only with respect to those Assets in which the party submitting

---

[3] To obtain a Word copy of the Stalking Horse APA, contact counsel to the Debtor, Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ, 08043, *Attn*: Stephen M. Packman (spackman@archerlaw.com).

such Credit Bid holds a perfected security interest. In order to qualify to Credit Bid, a Secured Creditor, other than MidCap, in its capacity as Pre-Petition Lender and/or DIP Lender, (i) must be a Qualified Bidder and a Credit Bid must qualify as a Qualified Bid, and (ii) that has a security interest in the assets being sold that is disputed, must have its security interest allowed prior to being able to submit a Credit Bid.

MidCap has not consented to the sale of the Assets unless (i) all of the Obligations owed to MidCap, as Pre-Petition Lender and DIP Lender (the "Secured Obligations"), are indefeasibly paid to MidCap and satisfied in full in cash at closing, and (ii) the sale is consummated by February 15, 2025, unless extended in writing by MidCap (collectively, the "Consent Requirements"). MidCap, as Pre-Petition Lender and DIP Lender, has been deemed a Qualified Bidder to the extent of the Secured Obligations, and shall be permitted to submit a Credit Bid as Pre-Petition Lender and DIP Lender (which Credit Bid may include any adequate protection liens and claims granted in favor of Pre-Petition Lender and DIP Lender), for all or any portion of the Assets at any time prior to the end of the Auction, upon such terms and conditions as it may deem acceptable in its sole discretion, and which Credit Bid shall not be subject to the Bidding Procedures, provided that any Credit Bid shall be submitted by the Bid Deadline unless such Credit Bid is submitted as a Backup Bid in the event that the sale to the Successful Bidder either does not close or the net proceeds from such sale are insufficient to indefeasibly satisfy the Secured Obligations in full in cash, which Credit Bid may be submitted any time and such Credit Bid expressly states that it is being submitted solely for such purposes (a "MidCap Backup Credit Bid"). If MidCap submits a Credit Bid or a MidCap Backup Credit Bid, it will promptly submit a form of agreement after the Auction to reflect the terms of the transaction that comprise the Credit Bid or MidCap Backup Credit Bid, as applicable. If MidCap submits a Credit Bid or MidCap Backup Credit Bid, MidCap shall not be required to take title to or ownership of, or have any obligation in connection with, the Assets or any portion of the Assets for which MidCap is the Successful Bidder, but rather MidCap shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to such Asset(s). For the avoidance of doubt, the failure of the MidCap to make a Credit Bid shall in no way be deemed consent to or acceptance of the proposed Sale Transaction(s) (other than the Stalking Horse APA in form and substance acceptable to MidCap ("Approved APA")) or otherwise impair the MidCap's rights to object to the proposed Sale Transaction(s) (other than the Approved APA); provided that, MidCap reserves its rights to withhold its consent and/or object to the Approved APA to the extent the Consent Requirements are not satisfied. If no other Qualified Bids are submitted by the Bid Deadline, MidCap will not submit or be deemed to have submitted a Credit Bid so as to prompt the Auction.

Stalking Horse Purchaser shall have the ability to submit a Credit Bid up to the aggregate amount of its Bid Protections. Any party seeking to submit a Credit Bid will need to pay cash to cover any superior lien positions above it. Waiver of unsecured claims against the Debtor will not be considered.

5

(f)    Designation of Contracts and Leases:  A Bid must identify with particularity each and every contract and lease with respect to which the Bidder seeks assignment from the Debtor.

(g)    Designation of Assumed Liabilities:  A Bid must identify with particularity any and all liabilities that the Bidder proposes to assume, including, but not limited to, (i) any cure costs associated with the assumption and assignment of the Assigned Contracts, pursuant to section 365 of the Bankruptcy Code, and (ii) post-petition ordinary course trade payables.  Additional cure costs can be added after the Sale Hearing, consistent with the Assumption and Assignment provisions of the Bid Procedures Order.

(h)    Corporate Authority:  A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the Sale Transaction by the equity holder(s) of such Bidder.

(i)    Disclosure of Identity of Bidder:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets, including any equity holders, in the case of a Bidder which is an entity specially formed for the purpose of effectuating the Sale Transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.  A Bid must also fully disclose any connections or agreements with the Debtor, or any other known, potential or prospective Bidder or Qualified Bidder, and/or any officer, director or equity holder of the Debtor.

(j)    Proof of Financial Ability to Perform:  A Bid must include written evidence that demonstrates, as determined by the Debtor in consultation with its advisors and the Consultation Parties, that the Bidder has the necessary financial ability and wherewithal to close the Sale Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in the Sale Transaction.

(k)    Contact Information and Affiliates:  The Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

(l)    Regulatory and Third-Party Approvals:  A Bid must set forth each regulatory and third-party approval, if any, required for the Bidder to consummate the Sale Transaction and the time period within which the Bidder expects to receive such regulatory and third-party approvals.  Additionally, a Bid must include evidence that the Debtor concludes, in consultation with its advisors and the Consultation Parties, demonstrates that the Bidder likely has the ability to obtain all regulatory and third-party approvals necessary to consummate the Sale Transaction.

(m)    No Contingencies:  A Bid may **not** (i) contain representations and warranties, covenants or termination rights which the Debtor, in its business judgment, determines to be more onerous than those set forth in the Stalking Horse APA (when considering all such provisions as a whole) and may **not** (ii) be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of unperformed due diligence.

(n)    No Collusion:  Each Bidder submitting a Bid must confirm in writing that it has not engaged in any collusion with respect to the bidding or the Sale.

(o)    Irrevocable:  A Bid must be irrevocable until five (5) business days after the Sale Hearing, provided that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(p)    Compliance with Diligence Requests:  A Bidder submitting a Bid must have complied with reasonable requests for additional information and due diligence access from the Debtor to the satisfaction of the Debtor.

(q)    NDA:  To the extent not already executed, the Bid must include an executed NDA in form and substance acceptable to the Debtor.

(r)    Stalking Horse Protections; No Break-Up Fees or Termination Fees:  The Bid must not entitle the Bidder to any stalking horse protections, including, without limitation, any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder further waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in the Auction.

(s)    Submission of Bids:  The following parties must receive a Bid in writing (in both PDF and Word format), on or before the Bid Deadline: (1) the Debtor, Plastic Suppliers, Inc., 2400-2450 Marilyn Pk. Ln., Columbus, OH, 43219, *Attn:* Michael DuFrayne (DuFrayne@earthfirstfilms.com); (2) the Debtor's investment banker, SSG Capital Advisors, 300 Barr Harbor Dr Suite 420, Conshohocken, PA, 19428, *Attn:* J. Scott Victor (jsvictor@ssgca.com); and (3) the Debtor's bankruptcy counsel, Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ, 08043, *Attn*: Stephen M. Packman (spackman@archerlaw.com).

(t)    To assist MidCap in complying with applicable regulatory requirements, the Successful Bidder shall disclose to MidCap at the conclusion of the Auction the identity of the person(s), entity(ies), and/or financial institution(s) that will be funding the cash portion of the Successful Bid.

**Bids must be submitted on or before January 21, 2025 at 5:00 p.m. (ET) (the "Bid Deadline").** A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of paragraphs (a) through (s) above, as determined by the Debtor after consultation with its advisors and the Consultation Parties shall constitute a "Qualified Bid," and such Bidder shall constitute a "Qualified Bidder"; provided that if the Debtor receives a Bid prior to the Bid Deadline that is not

a Qualified Bid the Debtor may provide the Bidder with the opportunity to remedy any deficiencies prior to the Bid Deadline (or, if applicable, before the Auction); provided, further, that, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtor to the satisfaction of the Debtor, the Debtor may, after consulting with its advisors and the Consultation Parties, disqualify any Qualified Bidder and Qualified Bid, in the Debtor's discretion, and such Qualified Bidder shall not be entitled to attend or participate in the Auction. Upon determination that a Bid constitutes a Qualified Bid, the Debtor shall, within one (1) business day of such determination, provide the Stalking Horse Purchaser and any other Qualified Bidder with a copy of such Qualified Bid. The Debtor shall use its best efforts to notify promptly any Bidder whether its Bid is considered a Qualified Bid.

Each Qualified Bidder (including the Stalking Horse Purchaser), by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Debtor and its agents and representatives (other than as may be set forth in a definitive agreement executed by the Debtor), regarding the Debtor, the Assets, these Bidding Procedures or any information provided in connection therewith.

Within twenty-four (24) hours of the Bid Deadline, full and complete copies of all bids received shall be provided to MidCap's professionals and the professionals of the Official Committee of Unsecured Creditors (the "Committee").

For all purposes under the Bid Procedures: (a) the Stalking Horse Purchaser shall be considered a Qualifying Bidder, and the APA shall be considered a Qualifying Bid and (b) the Stalking Horse Purchaser is, and will be deemed to be, a Qualifying Bidder for all purposes under the Bid Procedures, without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Purchaser.

## The Auction

If at least one Qualified Bid other than that of the Stalking Horse Bid is received by the Bid Deadline, the Debtor will hold an auction to determine the highest or otherwise best Qualified Bid (the "Auction") on **January 27, 2025 at 10:00 A.M. (ET)**. The Auction will be held telephonically, via videoconference, or live at the offices of Debtor's counsel, or such other location as may be designated by the Debtor parties. Bidding at the auction shall be transcribed or video recorded. Attendance at the auction shall be limited to the Debtor, the Stalking Horse Purchaser, the Office of the United States Trustee, any other Qualified Bidder, MidCap, any of their respective representatives and counsel, any of the Committee's retained professionals, and any creditor of the Debtor that has notified the Debtor's counsel of such creditor's intention to observe the Auction at least three (3) business days prior to the commencement of the Auction. The Stalking Horse Purchaser and all other Qualified Bidders at the Auction shall be deemed to have (a) consented to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, the Estate, the Bidding Procedures, the Stalking Horse APA, any Asset Purchase Agreement submitted by a Qualified Bidder, the Assets, the Auction, or the construction of any Qualified Bid or related documents and (b) waived any right to a jury trial in connection with any disputes relating to the Debtor, the Estate,

8

the Bidding Procedures, the Stalking Horse APA, any Asset Purchase Agreement submitted by a Qualified Bidder, the Assets, the Auction, or the construction of any Qualified Bid or related documents.

Each Qualified Bidder participating at the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

At the Auction in accordance with the procedures set forth below, participants will be permitted to increase their bids and improve their terms. Bidding for the Assets will start at the purchase price and terms proposed in the Baseline Bid (as defined below).

The Baseline Bid. The Debtor, after consultation with its advisors and the Consultation Parties, will select the Qualified Bid that it determines to be the highest and/or best Qualified Bid (the "Baseline Bid") to serve as the starting point at the Auction. Selection of the Baseline Bid shall take into account all relevant considerations, including the financial condition of the applicable Qualified Bidder, the assumption of any liabilities by the Qualified Bidder under the applicable Asset Purchase Agreement, and the certainty of closing.

Overbids. An "Overbid" is any bid made at the Auction, in accordance with the requirements set forth herein, subsequent to the Debtor's announcement of the Baseline Bid. All bidding at the Auction is subject to the following terms:

(a)  Initial Overbid. The initial Overbid, if any, shall provide for total consideration with a value that exceeds the value of the consideration in the Baseline Bid by an incremental amount that is not less than $100,000.

(b)  Successive Overbids. Each successive Overbid after the initial Overbid, if any, shall exceed the then-existing overbid by an incremental amount of not less than $100,000.

(c)  Non-Cash Consideration. Any Overbid may include both cash and non-cash consideration, provided that the value of any such non-cash consideration shall be determined by the Debtor in its business judgment, in consultation with its advisors and the Consultation Parties.

(d)  Description of Consideration and Changes to Asset Purchase Agreement. Qualified Bidders, in connection with any Overbid, must describe all cash and non-cash consideration as well all other changes, if any, requested to Asset Purchase Agreement the Qualified Bidder previously submitted with its Bid.

(e)  Overbids Irrevocable. Any Overbid shall be irrevocable and shall remain open and binding upon the Qualified Bidder in accordance with the terms of these Bidding Procedures.

(f)  Proof of Financial Ability to Perform. At the Debtor's discretion, and to the extent not previously provided (which shall be determined by the Debtor in consultation with its advisors and the Consultation Parties), a Qualified Bidder submitting an Overbid, must submit written evidence in a form acceptable to the Debtor,

9

demonstrating such Qualified Bidder's ability and wherewithal to consummate the Sale Transaction proposed by such Overbid.

(g)     Adjustment of Overbid Increments. The Debtor reserves the right to adjust the Overbid increments set forth herein its business judgment after consultation with its advisors and the Consultation Parties.

The Debtor, after consultation with its advisors and the Consultation Parties may at any time adopt rules for the Auction that the Debtor reasonably determines to be appropriate to promote the goals of the sale process, provided that such rules are not in conflict with these Bidding Procedures or the Bid Procedures Order and are disclosed to each Qualified Bidder participating in the Auction.

If by the Bid Deadline, the Debtor does not receive any Qualified Bids other than the Stalking Horse Bid: (a) the Debtor will not hold an Auction; (b) the Stalking Horse Bid will be the Successful Bid (as defined below) and the Stalking Horse Purchaser will be named the Successful Bidder (as defined below); and (c) the Debtor will proceed to request at the Sale Hearing (as defined below) that the Bankruptcy Court enter an order approving the Sale Transaction in accordance with the Stalking Horse APA, including that, as the Debtor and Stalking Horse Purchaser may determine in their discretion, the sale order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) of the Bankruptcy Rules.

## Selection of a Successful Bid and a Backup Bid

At the conclusion of the Auction, the Debtor, after consultation with its advisors and the Consultation Parties, will determine the highest or otherwise best Qualified Bid(s) for the Assets (the "Successful Bid(s)" and, the Bidder submitting such Successful Bid, the "Successful Bidder(s)") and the next highest or next best Qualified Bid(s) (the "Backup Bidder(s)"). This determination shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the Estate and may include, but are not limited to, the following: (a) the amount of the consideration and the resulting recovery to creditors; (b) the number, type and nature of any changes to the Stalking Horse APA requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Estate of such modifications or delay; (d) the total consideration to be received by the Estate, including the assumption of any liabilities of the Estate; (e) the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to the Estate (collectively, the "Bid Assessment Criteria"). In no event shall the Debtor select a bid as the Successful Bidder that does not meet the Minimum Bid Amount.

The Backup Bidder shall be required to keep its Bid (the "Backup Bid") open and irrevocable until the earlier of: (i) the closing of the transaction with the Successful Bidder; or (ii) 45 days after the Sale Hearing.

As soon as reasonably practicable after the Auction, the Debtor shall file with the Bankruptcy Court a notice of the Successful Bid and Successful Bidder and, once available, such Successful Bidder's Asset Purchase Agreement.

10

Following the Sale Hearing, if the Successful Bidder fails to consummate the purchase of the Assets, the Debtor may deem the Backup Bidder to have the new prevailing bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Bidder. In such case of a failure to consummate the purchase of the Assets on the part of such Successful Bidder (including any Backup Bidder designated as a Successful Bidder), the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtor for the benefit of the Estate. In addition, except as set forth in the Successful Bidder's Asset Purchase Agreement, the Debtor, on behalf of the Estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

## Sale Is As Is/Where Is

Except as otherwise set forth in the Asset Purchase Agreement of the Successful Bidder or an order of the Bankruptcy Court approving the Sale Transaction, the sale of the Assets pursuant to the Bidding Procedures shall be made free and clear of liens, claims, and other interests pursuant to section 363 of the Bankruptcy Code and in all other respects on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or the Estate. By submitting a Bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or as set forth in the Asset Purchase Agreement of a Successful Bidder or the Sale Order.

## Sale Hearing

The Successful Bid and the Backup Bid will be subject to approval by the Bankruptcy Court. A hearing to approve the Successful Bid and any Backup Bid (the "Sale Hearing") shall take place on **January 29, 2025 at 10:00 A.M. (ET)**. The Sale Hearing may be adjourned by the Debtor from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of Debtor's Bankruptcy Case.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more segregated accounts by the Debtor. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing. The Good Faith Deposit of any Backup Bidder shall be returned to such Backup Bidder the earlier of: (i) five (5) business days after the closing of the transaction with the Successful Bidder; or (ii) 45 days after the Sale Hearing. If the Successful Bidder timely closes the Sale Transaction, its Good Faith Deposit shall be credited towards the

11

purchase price, in accordance with the Successful Bidder's Asset Purchase Agreement. Notwithstanding the foregoing, the Stalking Horse Purchaser's Deposit shall be treated in accordance with the terms of the Bidding Procedures Order.

### Reservation of Rights of the Debtor

Except as otherwise provided in the Stalking Horse APA, the Bidding Procedures or the Bidding Procedures Order, the Debtor, after consultation with the Consultation Parties, reserves the right as it may reasonably determine to be in the best interest of the Estate, to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Estate; (e) waive non-compliance with any of the terms and conditions set forth herein as it determines to be in the best interests of the Estate, creditors, and other parties in interest; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Sale Hearing in open court, or by filing a notice on the docket of the Debtor's bankruptcy case, without further notice to creditors or other parties in interest; and (i) implement additional procedural rules that the Debtor determines, in its business judgment, will better promote the goals of the bidding process; provided, however, that any modification or additions to the Bidding Procedures shall not be materially inconsistent with the Bidding Procedures Order or any other order of the Court, the Bankruptcy Code, or the Bankruptcy Rules, and shall be disclosed to each Qualified Bidder.

### Consultation by the Debtors

Throughout the sale process, the Debtor and its advisors will consult with the following parties (collectively, the "Consultation Parties"), as provided in these Bidding Procedures, or as is otherwise necessary or appropriate, as determined in the Debtors' business judgment: (i) the legal and financial advisors for the Committee, and (ii) the legal and financial advisors for MidCap unless and until the MidCap submits a Credit Bid.

Notwithstanding the foregoing, the Debtors will not consult with or provide copies of any Bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtor if such party is an active or prospective bidder for the relevant Asset(s) at the applicable time. For avoidance of doubt, the Debtor will consult with and provide copies of any Bids or confidential information to MidCap, in its capacity as Pre-Petition Lender and DIP Lender, unless and until the MidCap submits a Credit Bid. If, however, a member of the Committee in these Chapter 11 Cases submits a Qualified Bid for any of the Assets, the Committee will maintain its consultation rights as a Consultation Party, provided, that the Committee excludes the bidding Committee member from any discussions or deliberations regarding a transaction involving the relevant Assets, and shall not provide any confidential information regarding the Assets or otherwise involving the sale process to the bidding Committee member.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Stephen M. Packman, Esquire
Douglas G. Leney, Esquire
ARCHER & GREINER, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (215) 963-3300
Facsimile: (215) 963-9999
Email: spackman@archerlaw.com
          dleney@archerlaw.com
*Proposed Attorneys for Debtors*

| In re: | Chapter 11 |
| --- | --- |
| PLASTIC SUPPLIERS, INC.,[1] | Case No. 24-22549 (Jointly Administered) |
| Debtor. | |

## NOTICE OF SALE HEARING

**PLEASE TAKE NOTICE THAT** on December 24, 2024, Plastic Suppliers, Inc., the above-captioned debtor and debtor in possession ("PSI" or the "Debtor") filed a *Motion for Entry of Orders (I) (A) Establishing Bid Procedures Relating to the Sale of Substantially all of the Debtor's Assets; (B) Approving Bid Protections for the Stalking Horse Purchaser, Including Break-Up Fee and Expense Reimbursement, (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Scheduling a Hearing to Consider the Proposed Sale and Approving the Form and Manner of Notice Thereof; and (II)(A) Approving the Proposed Sale; (B) Approving the Assumption and Assignment of Executory Contracts and/or Unexpired Leases; and (C) Granting Related Relief* (the "Sale Motion").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Plastic Suppliers, Inc. (9518); Sidaplax, Inc. (4275); and Specialty Films, Inc. (4273). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2400-2450 Marilyn Pk. Ln., Columbus, OH 43219.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures (defined herein).

229820302 v2

**PLEASE TAKE FURTHER NOTICE** that, by the Sale Motion, the Debtor seeks, among other things, authority to sell and assign substantially all of the Debtor's assets (the "Assets") to the successful purchaser free and clear of liens, claims, encumbrances and other interests pursuant to section 363 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, as referenced in the Sale Motion, the Debtor and API Industries, Inc. d/b/a Aluf Plastics (the "Stalking Horse Purchaser") have entered into an asset purchase agreement (collectively with all exhibits and schedules, the "Stalking Horse APA"). The Stalking Horse APA proposes a transaction which would include (i) the purchase all of the Debtor's right, title and interests in the Assets and (ii) a transfer, assumption and assignment of the Debtor's rights and obligations under certain contracts and leases (the "Assigned Contracts") to the Stalking Horse Purchaser under sections 105, 363 and 365 of the Bankruptcy Code (the "Stalking Horse Bid"). A copy of the Stalking Horse APA is attached to the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that on January 10, 2025, the Bankruptcy Court entered an Order (the "Bidding Procedures Order") approving the Bidding Procedures as set forth in the Sale Motion, which set the key dates and times related to the sale of the Assets. A copy of the Bidding Procedures Order and the Bidding Procedures can be obtained by contacting Archer & Greiner, P.C., Attn: Stephen M. Packman, Esq. (spackman@archerlaw.com), 1025 Laurel Oak Road, Voorhees, New Jersey, 08043.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, Bids for the Assets shall be accepted until **January 21, 2025 at 5:00 p.m. (ET)** (the "Bid Deadline"). A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of the Bidding Procedures shall constitute a "Qualified Bid".

**PLEASE TAKE FURTHER NOTICE** that if more than one Qualified Bid is received by the Bid Deadline, the Debtor will hold an auction on **January 27, 2025 at 10:00 A.M. (ET)**. At the Debtor's discretion, the auction will be held either (a) in person at the offices of Archer & Greiner, P.C. (1025 Laurel Oak Road, Voorhees, New Jersey, 08043) or (b) or remotely by telephone or Zoom (or similar program).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "Sale Hearing") before the Honorable Andrew B. Altenburg, Jr., at the Bankruptcy Court, Mitchell H. Cohen U.S. Courthouse, 400 Cooper Street, 4th Floor, Camden, NJ, 08101, Courtroom #4B, on **January 29, 2025 at 10:00 A.M. (ET)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by filing a notice on the Court's docket for this bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the sale of the Assets, shall: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with this Court; and (d) served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on **January 28, 2025 at 4:00 P.M. (ET)**, by (i) the proposed attorneys for the Debtors, Archer & Greiner, P.C., 1025 Laurel Oak Road, Voorhees, NJ, 08043, Attn: Stephen M. Packman

(spackman@archerlaw.com); (ii) counsel to the DIP Lender, Blank Rome LLP, 130 N 18th St., Philadelphia, PA, 19103, Attn: Regina Kelbon (regina.kelbon@blankrome.com); (iii) the Office of the United States Trustee for Region 3, One Newark Center, Newark, NJ 07102, Attn: Jeffrey M. Sponder (jeffrey.m.sponder@usdoj.gov); (iv) counsel to the Stalking Horse Purchaser, McGrail & Bensinger LLP, 888-C Eighth Avenue #107, New York, NY 10019, Attn: Ilana Volkov (ivolkov@mcgrailbensinger.com); and (v) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-5. Only timely filed and served responses, objections, and other pleadings will be considered by this Court at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** THAT ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED AND ESTOPPED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AFFECTED THEREUNDER.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order contemplates a process to transfer, assume, and assign Assigned Contracts. To the extent that the Debtor intends to transfer, assume, and assign any Assigned Contracts, affected counterparties will receive a separate notice consistent with the Bidding Procedures Order entered by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Sale Hearing is subject to the full terms and conditions of the Sale Motion, Bidding Procedures Order, and Bidding Procedures, which shall control in the event of any conflict and the Debtor encourages parties in interest to review such documents in their entirety. A copy of the Sale Motion may be obtained from Archer & Greiner, P.C., Attn: Stephen M. Packman, Esq. (spackman@archerlaw.com), 1025 Laurel Oak Road, Voorhees, New Jersey, 08043.

Dated:  January 10, 2025                 ARCHER & GREINER, P.C.

                                         */s/ Stephen M. Packman*
                                         Stephen M. Packman
                                         Douglas G. Leney
                                         1025 Laurel Oak Road
                                         Voorhees, NJ  08043
                                         (215) 963-3300
                                         (215) 963-9999 (fax)
                                         spackman@archerlaw.com
                                         dleney@archerlaw.com

                                         *Proposed Counsel to the Debtor*

3

229820302 v2

## Exhibit 3

[Form of] Cure Notice

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures or the Bidding Procedures Order shall not in any way limit the Debtor's discretion and shall not include the right to veto any decision made by the Debtor in the exercise of its business judgment nor shall such consultation rights limit in any way the rights of MidCap granted under the DIP Financing documents, the order authorizing the DIP Financing, or any other order entered by the Court in this Bankruptcy Case.

229790435 v5

13

# **Exhibit 2**

Notice of Sale Hearing

## <u>EXHIBIT 2</u>

**Assumed and Assigned Contracts**

## Schedule 1.1(a)(iv)

## Assumed Contracts

| Title/Description of Contract/Lease | Contract/Lease Counterparties | Outstanding | Notes |
|---|---|---|---|
| Water Treatment Chemicalc, Products and | Precision Chemical | $ 9,997.53 | |
| Compressed Air system Maintenance | Air Technologies/OTC Industrial | $ 2,494.54 | |
| Natural Gas | NRG Business Marketing LLC | $ 3,414.73 | |
| Electricity | Constellation New Energy, Inc | $ - | Cure to be covered by Adequate Assurance Deposit |
| Clark Forklift | Wells Fargo Equipment Finance, Manufacturer Services Group | $ - | To the extent this forklift lease contains a "$1 buyout" or de minimis purchase option, Debtors will work with Purchaser to exercise |
| Forklift x8-010-GP050VX-LPG, Serial | HYG Financial Services, Inc. | $ - | |
| Forklift x8-011 GP050VX-LPG, Serial | HYG Financial Services, Inc. | $ - | |
| Forklift x8-011 GP050VX-LPG, Serial | HYG Financial Services, Inc. | | |
| Forklift x8-012 GC050VX, Serial | HYG Financial Services, Inc. | | |
| Data Center Services for Servers and | Expedient/ Continental Broadband LLC | $ 7,883.07 | |
| Maintenance Agreement ERP Systyem(IQMS) | Dassault Systemes Americas Corp. | $ 677.25 | |
| Finance Planning and Finacial Statement Tool | Workday (Adaptive) | $ 13,437.50 | |
| Email, Teams, One Drive,Sharpoint, for PSI. Email Security, Anti-Virus, RDP MPSA License, | CDW | $ 1,182.61 | |
| PSI Cell Phone | At&T Cell Phone Mobility | $ - | |
| Landline Phone System | AT&T | $ 1,431.80 | |
| Expense and AP Invoice Automation | Concur Technologies Inc | $ 1,182.49 | |
| Toshiba Copiers Lease | GreatAmerica Financial Services Corporation | $ 962.64 | |
| Building Door Access Control System | Silco Fire & Safety | $ - | |
| Quality Audit Software | SafetyCulture PTY LTD | $ - | |
| Account Software for Fixed Assets | Sage Software Inc. | $ - | |
| Websit Hosting | Devphase | $ 1,225.00 | |
| Security Camera Cleaning and Maintenance | Security Cameras of Columbus | $ - | |
| Domain and DNS Management | Go Daddy.com LLC | $ - | |
| Go to Assist IT Software | Goto Technologies USA, Inc | $ 414.97 | |
| Software Service for Check Printing | Wycom Systems Inc | $ - | |
| Accounting 1099 Software | 1099 Pro Inc | $ - | |
| Allen Bradley Suite - Reads Plc data IH Robot | PTC INC | $ - | |
| Reporting Software - Domo | DOMO INC | $ 50,948.70 | |
| | Total | $ 95,252.83 | |

## EXHIBIT 3

**Andrew Hult**
**10 Kensington Road**
**Garden City, NY 11530**

**Dawn Riegert**
**2 Brookwood Drive**
**Medford, NJ**

**Dennis Cerny**
**207 Dunstans Pass**
**Marietta, GA 30066**

**Edward Tweed**
**214 Camrose Court**
**Gahanna, OH 43230**

**James Allen**
**132 Wake Valley Court**
**Conroe, TX 77304**

**Lisa Horvath**
**1520 Douglas Lane**
**Crete, IL 60417**

**Patricia Scholz**
**102 Wendell Road SW**
**Reynoldsburg, OH 43068**

**Philip Ludwig**
**10018 Lions Bay Court**
**Naples, FL 34120**

**Steve Dudley**
**1550 Dream Court**
**Reynoldsburg, OH 43068**

**Theodore Riegert**
**2 Brookwood Drive**
**Medford, NJ 08055**

**Walter Smith**
**351 Maple Street**
**Crown Point, IN 46307**

229822741 v7

160562.01001/152480689v.2